**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE**

-------------------------------------------------------------- x
                                                    :

In re:                                       :        **Chapter 15**
                                                    :

**THE CANNABIST COMPANY**       :        **Case No. 26– _____ ([●])**
**HOLDINGS INC.,** *et al.,*              :
                                                    :

       **Debtors in a Foreign Proceeding.**[1]    :        **(Joint Administration Requested)**
                                                    :

-------------------------------------------------------------- x

**MOTION FOR PROVISIONAL RELIEF
PURSUANT TO SECTION 1519 OF BANKRUPTCY CODE**

The Cannabist Company Holdings Inc. (the "**Parent Company**"), in its capacity as the duly-appointed foreign representative (the "**Foreign Representative**") of the Parent Company and its debtor affiliate The Cannabist Company Holdings (Canada) Inc. ("**The Cannabist Canada Company**," and together with the Parent Company, the "**Debtors**"), which are the subject of a proceeding (the "**Canadian Proceeding**") currently pending in the Ontario Superior Court of Justice (Commercial List) (the "**Canadian Court**") and initiated pursuant to the *Companies' Creditors Arrangement Act*, R.S.C. 1985, c. C-36 (as amended, the "**CCAA**"), has commenced the above-captioned chapter 15 cases (the "**Chapter 15 Cases**") ancillary to the Canadian Proceeding and respectfully represents as follows in support of this motion.[2]

---

[1]    The Debtors in the Chapter 15 Cases, together with the last four digits of their federal tax identification number or Canadian business number, as applicable, are: (i) The Cannabist Company Holdings Inc. (8978) and (ii) The Cannabist Company Holdings (Canada) Inc. (9428). The location of the Parent Company's registered office and the Debtors' service address is: 666 Burrard St #1700, Vancouver, British Columbia V6C 2X8, Canada. Additional information may be obtained on the website of the Debtors' information agent at https://www.veritaglobal.net/CCGroup.

[2]    Capitalized terms used but not otherwise defined herein shall have the respective meanings ascribed to such terms in the Recognition Motion or the Supporting Declarations (each as defined herein).

**PRELIMINARY STATEMENT**

1.       The Parent Company is a Canadian holding company, publicly traded on the Cboe Canada Inc. stock exchange in Toronto, Ontario, and an issuer of approximately $180 million of outstanding Canadian-law-governed secured debt.  It is the parent of its affiliated Debtor, The Cannabist Canada Company, and the ultimate parent of non-Debtor subsidiaries (the "**Subsidiaries**," and each, a "**Subsidiary**," and collectively with the Debtors, the "**CC Group**").  The Debtors are co-issuers of that debt and certain other Subsidiaries in the CC Group have guaranteed that debt.  The CC Group's non-Debtor Subsidiaries operate a vertically-integrated cannabis cultivation, manufacturing, and retail business in eight U.S. states where medical or adult-use cannabis is legal under state law.

2.       The CC Group has faced significant headwinds in recent years, including, competitive pressures, supply-chain challenges, and challenges gaining access to capital markets.  As a result of these challenges and their consequences, prior to the commencement of these cases, the CC Group commenced a sales process designed to maximize value for the CC Group's stakeholders and subsequently wind down its remaining operations (the "**Sale Process**" and the sales in connection therewith, the "**Sales**").

3.       On March 24, 2026, the Debtors commenced the Canadian Proceeding to complete the remaining Sales under the protection of the CCAA.  On the same day, the Canadian Court granted the Debtors protection under an initial order (as amended, supplemented, extended, restated, or otherwise modified from time to time, the "**Initial Order**").

4.       The Debtors intend subsequently to file a CCAA Plan of Compromise and Arrangement (a "**CCAA Plan**"), which will provide for the distribution of proceeds from Sales closed during the Canadian Proceeding and an orderly liquidation of the remaining assets of the CC Group.  A majority of the Debtors' Senior Noteholders (as defined below) support this value-

maximizing process and signed a support agreement (the "**Support Agreement**") prior to the commencement of the Canadian Proceeding.

5. The Debtors hereby seek provisional relief (the "**Provisional Relief**") enforcing and granting comity to the Initial Order for the limited period of time between the CCAA Commencement Date until the date the Court considers approval of the Recognition Order (as defined below).

6. The Debtors urgently require Provisional Relief to protect the value of their assets, including their cash and their equity ownership in the Subsidiaries. Without Provisional Relief, the Debtors risk losing a value-maximizing outcome for their stakeholders through the Canadian Proceeding. Moreover, the Canadian Proceeding may be frustrated from the very outset, and the Debtors would suffer irreparable harm as a result. The Initial Order provides for a stay protecting the CC Group. The CC Group has assets, operations, and contract counterparties in the United States. Without Provisional Relief of the protections granted by the Canadian Court, the CC Group's creditors and other parties in interest may be motivated to "race to the courthouse" to obtain and enforce judgments or otherwise exercise self-help remedies against the CC Group and its assets in the United States. Such actions would be value-destructive and frustrate the Canadian Proceeding, causing irreparable harm to the Debtors. Beyond financial harm to the Debtors and their creditors, business disruption poses a risk to the approximately 100,000 patients that rely on the CC Group for access to medicinal products and to the CC Group's 1,200 employees. Accordingly, Provisional Relief is necessary and appropriate in the Chapter 15 Cases.

7. Accordingly, for the reason set forth herein, the Foreign Representative respectfully submits its request for Provisional Relief should be granted.

**RELIEF REQUESTED**

8.      Pursuant to sections 105(a), 1519, and 1521 of the Bankruptcy Code, the Foreign Representative requests entry of the proposed order, substantially in the form attached hereto as **Exhibit A** (the "**Provisional Relief Order**"), granting Provisional Relief, effective as of the CCAA Commencement Date (as defined below) through the date of entry of the Recognition Order, including:

i.      enforcing the Initial Order in the United States, which provides that no proceeding or enforcement process in any court or tribunal shall be commenced or continued against or in respect of the Stay Parties[3] or any of the Stay Parties' property for the Stay Period (as defined in the Initial Order);

ii.     enjoining parties from taking any action in the United States that is otherwise inconsistent with the Canadian Proceeding or Initial Order;

iii.    finding that any and all counterparties to leases of premises to which any of the Debtors or their Subsidiaries are party or guarantor located within the United States are hereby prohibited from, as applicable, taking any steps to cancel, terminate, or modify such lease for any reason, including non-payment of rent and/or due to any provision of a contract or lease conditioned on the commencement of an insolvency proceeding (including the Canadian Proceeding and the Chapter 15 Cases) or the insolvency or financial condition of the CC Group party; enforcing any "landlord lien," possessory lien or similar lien against any property of the Debtors and their Subsidiaries; changing the locks or codes on any such premises; or commencing or continuing any eviction or similar proceedings; and

iv.     finding that notwithstanding any provision in the Bankruptcy Rules to the contrary, (i) the Provisional Relief Order shall be effective immediately and enforceable upon entry, (ii) the Foreign Representative is not subject to any stay in the implementation, enforcement, or realization of the relief granted in the Provisional Relief Order, and (iii) the Foreign Representative is authorized and empowered, and may, in its discretion and without further delay, take any action and perform any act necessary to implement and effectuate the terms of the Provisional Relief Order.

9.      In support of the requested relief, the Foreign Representative respectfully refers the Court to and incorporates the following herein by reference: the (a) *Motion for*

---

[3]    "**Stay Parties**" means the Debtors and the other parties pursuant to which the stay in the Initial Order applies, as set forth in the Initial Order at ¶¶ 15 to 20, 26.

*Recognition of Foreign Proceeding and Request for Certain Related Relief* (the "**Recognition Motion**," and together with the *Voluntary Chapter 15 Petition* for each of the Debtors, the "**Verified Petitions**"); (b) *Declaration of Curt Kroll in Support of Debtors' Motions for (I) Provisional Relief and (II) Recognition of Foreign Proceeding and Certain Related Relief* (the "**CRO Declaration**"); and (c) *Declaration of Lee Nicholson as Canadian Counsel to Debtors in Support of Motions for (I) Provisional Relief and (II) Recognition of Foreign Proceeding and Certain Related Relief* (the "**Nicholson Declaration**," and together with the CRO Declaration, the "**Supporting Declarations**"), each filed contemporaneously herewith and incorporated herein by reference.

## JURISDICTION AND VENUE

10.     The Court has jurisdiction to consider this matter pursuant to 28 U.S.C. §§ 157 and 1334 and the *Amended Standing Order of Reference* from the United States District Court for the District of Delaware, dated February 29, 2012.  The Foreign Representative properly commenced the Chapter 15 Cases pursuant to sections 1504 and 1509 of the Bankruptcy Code by filing petitions for recognition of the Canadian Proceeding pursuant to section 1515 of the Bankruptcy Code.

11.     This is a core proceeding pursuant to 28 U.S.C. § 157(b).  Pursuant to Rule 9013-1(f) of the Local Rules of the United States Bankruptcy Court for the District of Delaware (the "**Local Rules**"), the Foreign Representative consents to the entry of a final order by the Court in connection with this motion to the extent it is later determined that the Court, absent consent of the parties, cannot enter final orders or judgments consistent with Article III of the United States Constitution.

12.     Venue is proper before the Court pursuant to 28 U.S.C. § 1410, as the Debtors have assets in the United States located in Delaware.

5

**BACKGROUND**

**I.     Debtors' Insolvency Proceedings**

13.     On March 24, 2026 (the "**CCAA Commencement Date**"), the Debtors applied for protection in the Canadian Court pursuant to the CCAA.  On the same day, protection was granted under the Initial Order.  The Initial Order appointed FTI Consulting Canada Inc. ("**FTI Canada**") as the monitor of the Debtors in the Canadian Proceeding (the "**Monitor**").  A description of the relief provided in the Initial Order is set forth below.

14.     On the date hereof, the Foreign Representative filed the Recognition Motion, seeking, among other things, recognition by this Court of its status as the Debtors' foreign representative, recognition of the Canadian Proceeding as a "foreign main proceeding" or, in the alternative, a "foreign non-main proceeding" under section 1517 of the Bankruptcy Code, and certain related relief (the "**Recognition Order**").

15.     The Foreign Representative anticipates that the Canadian Court will enter an amended and restated Initial Order on or around April 2, 2026.

**II.    Events Leading to Canadian Proceeding and Chapter 15 Cases**

16.     In response to the challenges the CC Group has faced, beginning in 2023, the CC Group undertook a series of operational restructuring initiatives, including the divestitures of underperforming assets, the streamlining and reorganization of various business lines, reductions in headcount, implementation of cost-containment measures, and improvement to operational efficiencies.  The CC Group also pursued multiple capital-raising initiatives, including equity and debt financings, and conducted a number of strategic review processes with the assistance of its financial and legal advisors.  Prior to the CCAA Commencement Date, the CC Group also dissolved a number of dormant subsidiaries.

6

17.    In or around October 2024, facing the impending maturity of its then outstanding debt within 12 months, the CC Group explored options and strategic alternatives. After extensive negotiations that culminated in a support agreement with an ad hoc group of senior noteholders, the CC Group commenced proceedings in Canada to extend the maturity of its then-outstanding senior notes to December 31, 2028, through various exchange transactions with senior noteholders (the "**CBCA Restructuring Transaction**").

18.    Following the CBCA Restructuring Transaction, in June 2025, the CC Group commenced the Sale Process with the assistance of Moelis & Company LLC ("**Moelis**") to seek value-maximizing transactions for the CC Group and its stakeholders through a sale of the CC Group or multiple sales of certain strategic markets.  The Parent Company subsequently formed a special committee composed of independent directors of its board of directors to oversee the Sale Process and to make recommendations regarding the ultimate path forward.  Ultimately, the Sale Process resulted in numerous distinct sales of the CC Group's operations on state-by-state basis.  In addition to the larger Sale Process, the CC Group continued an already-ongoing sale process with respect to the CC Group's California operations (the "**California Process**").

19.    The Sale Process and the California Process has resulted thus far in three closed sales transactions (the "**Closed Transactions**") and two signed sales transactions (the "**Signed Transactions**"), summarized below:

**Closed Transactions**

- **CA Mission Bay Sale**.  On January 30, 2026, certain members of the CC Group closed an equity sale of former Subsidiary Mission Bay LLC for approximately $1 million.

- **Virginia Sale**.  On February 5, 2026, certain members of the CC Group closed a sale for the equity of former Subsidiary Green Leaf Medical of Virginia, LLC in the Virginia market for approximately $130 million (the "**Virginia Sale**").

7

- **CA Focused Health Sale**. In March 2026, certain members of the CC Group closed a sale for the equity of former Subsidiary Focused Health, LLC.

**Signed Transactions**

- **Delaware Sale**. On March 23, 2026, certain members of the CC Group entered into an agreement for the sale of certain assets of Columbia Care Delaware, LLC, in the Delaware market for approximately $16.5 million (the "**Delaware Sale**").

- **Ohio Sale**. On March 23, 2026, certain members of the CC Group entered into an agreement for the sale of the equity of six CC Group's Subsidiaries in the Ohio market for approximately $47 million (the "**Ohio Sale**").

20. In addition, prior to the CCAA Commencement Date, the Parent Company entered a non-binding memorandum of understanding for the sale of its businesses in the Colorado, Illinois, Maryland, Massachusetts, New Jersey, and West Virginia markets, which the CC Group expects to develop into multiple binding purchase agreements in the coming weeks. The CC Group has substantially completed winding down its New York operations and is in the process of winding down its Pennsylvania operations, including shutting down facilities and liquidating or disposing of stock.

21. The CC Group has consulted with Senior Noteholders throughout the Sale Process.[4] As noted above, prior to the commencement of the Canadian Proceeding, the Debtors entered into the Support Agreement with members of an ad hoc group that collectively hold approximately 60% of the Senior Notes (the "**Supporting Noteholders**"). The Support Agreement is governed by the laws of the Province of Ontario and the federal laws of Canada. The Support Agreement memorializes the Supporting Noteholders' support for the process to be

---

[4]   "**Senior Noteholders**" means those certain holders of the senior notes (the "**Senior Notes**") issued pursuant to that certain *Amended and Restated Trust Indenture*, dated May 29, 2025 as amended, supplemented, and otherwise modified from time to time, entered into between the Parent Company and The Cannabist Company Holdings (Canada) Inc., as co-issuers, and Odyssey Trust Company, acting as trustee on behalf of the holders of Senior Notes.

8

implemented through the Canadian Proceeding and recognized in the Chapter 15 Cases, including effectuating the Sales and ultimately a CCAA Plan to wind down the Debtors' estates.

22.     The Debtors intend to implement a CCAA Plan following the Sale Process. The CCAA Plan will provide an efficient mechanism to distribute remaining cash and any non-cash consideration to creditors, as well as effectuate an orderly wind-down of the Debtors' estates.

## III.    Initial Order

23.     As set forth above, the Debtors now seek the Provisional Relief giving immediate effect to the Initial Order and the protections granted thereunder, including the stay protecting the CC Group, in order to preserve the value of the Debtors' estates and prevent irreparable harm to the Debtors and their estates.  A certified copy of the Initial Order is attached to the Provisional Relief Order as Exhibit 1.  The Initial Order (among other things):

(a)     recognizes that the Debtors are companies to which the CCAA applies;

(b)     appoints FTI Canada to act as the Monitor of the Debtors in the Canadian Proceeding;

(c)     grants the Monitor full and complete access to the Debtors' property, including their premises, books, records, electronic data, and other financial documents;

(d)     orders a stay of proceedings, for an initial period of ten days in accordance with the CCAA, to protect the Stay Parties;

(e)     orders the Debtors to indemnify their directors and officers against obligations and liabilities incurred after commencement of the proceedings, except to the extent that the obligation or liability was a result of the director's or officer's gross negligence or willful misconduct;

(f)     authorizes a charge on the Debtors' assets as security for the indemnity provided to the Debtors' directors and officers;

(g)     authorizes a charge on the Debtors' assets as security for the professional fees and disbursements of the Debtors' counsel, the Monitor, and the Monitor's counsel;

(h)     approves the Parent Company to act as the foreign representative of the Debtors; and

9

(i)     authorizes the Foreign Representative to apply for foreign recognition and approval of the Canadian Proceeding and to seek related relief, as necessary, including, in this Court pursuant to chapter 15 of title 11 of the Bankruptcy Code.

24.     The provisions of the Initial Order that provide for "stay" protections are as

follows:

**THIS COURT ORDERS** that until and including April 2, 2026, or such later date as this Court may order (the "**Stay Period**"), no proceeding or enforcement process in any court or tribunal (each, a "Proceeding") shall be commenced or continued against or in respect of the Applicants or the Monitor or affecting the Business or the Property, except with the written consent of the Applicants and the Monitor, or with leave of this Court, and any and all Proceedings currently under way against or in respect of the Applicants or affecting the Business or the Property are hereby stayed and suspended pending further Order of this Court.

**THIS COURT ORDERS** that during the Stay Period, except with the written consent of the Applicants and the Monitor, or with leave of this Court, no Proceeding shall be commenced or continued against or in respect of the Subsidiaries, or any of their current and future assets, undertakings and properties of every nature and kind whatsoever, and wherever situate, and including all proceeds thereof (the "**Subsidiaries' Property**") and business (the "**Subsidiaries' Business**" and together with the Subsidiaries' Property, the "**Subsidiaries' Property and Business**"), including, without limitation, terminating, making any demand, accelerating, amending, or declaring in default or taking any enforcement steps under any agreement with respect to which any of the Applicants or the Subsidiaries is a party, borrower, principal obligor or guarantor.

**THIS COURT ORDERS** that during the Stay Period, all rights and remedies of any individual, firm, corporation, governmental body or agency, or any other entities (all of the foregoing, collectively being "**Persons**" and each being a "**Person**") against or in respect of the Applicants, or the Monitor, or affecting the Business or the Property, are hereby stayed and suspended except with the written consent of the Applicants and the Monitor, or leave of this Court, provided that nothing in this Order shall (a) empower the Applicants to carry on any business which the Applicants are not lawfully entitled to carry on, (b) affect such investigations, actions, suits or Proceedings by a regulatory body as are permitted by Section 11.1 of the CCAA, (c) prevent the filing of any registration to preserve or perfect a security interest, (d) prevent the registration of a claim for lien, or (e) prohibit the Supporting Noteholders (as defined in the Support Agreement) from exercising their rights to terminate the Support Agreement in accordance with the Support Agreement.

**THIS COURT ORDERS** that during the Stay Period, all rights and remedies of any Person against or in respect of the Subsidiaries, or affecting the Subsidiaries' Property and Business, are hereby stayed and suspended except with the prior

10

RLF1 35570878v.1

written consent of the Applicants and the Monitor, or leave of this Court, provided that nothing in this Order shall: (a) empower the Subsidiaries to carry on any business which they are not lawfully entitled to carry on; (b) affect such investigations, actions, suits or proceedings by regulatory body are permitted by Section 11.1 of the CCAA; (c) prevent the filing of any registration to preserve or perfect a security interest; (d) prevent the registration of a claim for lien; or (e) prohibit the Supporting Noteholders from exercising their rights to terminate the Support Agreement in accordance with the Support Agreement.

**THIS COURT ORDERS** that during the Stay Period, no Person shall accelerate, suspend, discontinue, fail to honour, alter, interfere with, repudiate, rescind, terminate or cease to perform any right, renewal right, contract, agreement, lease, sublease, licence or permit in favour of or held by the Applicants or Subsidiaries, except with the written consent of the Applicants and the Monitor, or leave of this Court.

**THIS COURT ORDERS** that during the Stay Period, all Persons having oral or written agreements with the Applicants or the Subsidiaries or statutory or regulatory mandates for the supply of goods and/or services, including without limitation all computer software, communication and other data services, centralized banking services, cash management services, payment processing services, payroll services, insurance, transportation services, utility or other services to the Business or the Applicants are hereby restrained until further Order of this Court from discontinuing, altering, interfering with, suspending or terminating the supply of such goods or services as may be required by the Applicants and that the Applicants shall be entitled to the continued use of their current premises, telephone numbers, facsimile numbers, internet addresses, email addresses and domain names, provided in each case that the normal prices or charges for all such goods or services received after the date of this Order are paid by the Applicants or the Subsidiaries, as applicable, in accordance with normal payment practices of the Applicants or the Subsidiaries, as applicable, or such other practices as may be agreed upon by the supplier or service provider and each of the Applicants, the applicable Subsidiaries and the Monitor, or as may be ordered by this Court. . . .

**THIS COURT ORDERS** that during the Stay Period, and except as permitted by subsection 11.03(2) of the CCAA, no Proceeding may be commenced or continued against any of the former, current or future directors, officers or managers of the Applicants or the Subsidiaries with respect to any claim against the directors, officers or managers that arose before the date hereof and that relates to any obligations of the Applicants or the Subsidiaries whereby the directors or officers are alleged under any law to be liable in their capacity as directors, officers or managers for the payment or performance of such obligations, until a compromise

11

RLF1 35570878v.1

or arrangement in respect of the Applicants, if one is filed, is sanctioned by this Court or is refused by the creditors of the Applicants or this Court.

Initial Order ¶¶ 15–20, 22.[5]

## BASIS FOR RELIEF REQUESTED

25.    The Foreign Representative has contemporaneously filed the Verified Petition, seeking recognition of the Canadian Proceeding as a "foreign main proceeding" (or, in the alternative, a "foreign non-main proceeding") under section 1517 of the Bankruptcy Code. Section 1519 of the Bankruptcy Code permits the Court "from the time of filing a petition for recognition until [it] rules on the petition" to grant provisional relief pending recognition of the foreign proceeding where such relief is "urgently needed to protect the assets of the debtor or the interests of the creditors." 11 U.S.C. § 1519(a). Sections 1519(a)(1)–(3) of the Bankruptcy Code provide the scope of available provisional relief, which includes:

1. staying execution of the debtor's assets;

2. entrusting the administration or realization of all or part of the debtor's assets located in the United States to the foreign representative or another person authorized by the court, including an examiner, in order to protect and preserve the value of assets that, by their nature or because of other circumstances, are perishable, susceptible to devaluation or otherwise in jeopardy; and

3. any relief referred to in paragraph (3), (4), or (7) of section 1521(a).

11 U.S.C. § 1519(a).

26.    By this motion, as part of the Provisional Relief, the Foreign Representative seeks imposition of sections 362 and 365(e) of the Bankruptcy Code with respect to the Stay Parties, which will maintain the status quo until the Court rules on the Recognition Motion and will ensure the Debtors realize the protections of the Initial Order in respect of their property in

---

[5]    Capitalized terms used but not defined in this section have the meanings ascribed to such terms in the Initial Order.

12

the United States.  As recognized by the Canadian Court when it entered the Initial Order, absent immediate Provisional Relief, creditors, litigants, and other parties in interest could seek to exercise remedies against the Stay Parties at a time when the Debtors are seeking to stabilize their business and maximize value in the Canadian Proceeding.  The Canadian Court found in its endorsement:

> [P]rotection of the Subsidiaries is critical to the success of the Applicants' restructuring efforts and these CCAA Proceedings. None of the Applicants are operating companies – all of the Company's cannabis operating companies are Subsidiaries and to preserve the value-maximizing Sale Transactions, the Subsidiaries need the protection of the Stay to operate in the ordinary course. Further, extending the Stay to the Subsidiaries will also mitigate against the risk of uncoordinated enforcement attempts in different jurisdictions, all of which would be counterproductive to the maximization and protection of value for the Company and its stakeholders.

*In re The Cannabist Co. Holdings Inc. and The Cannabist Co. Holdings (Canada) Inc.*, No. CL-00000122-0000 (Can. Ont. Sup. Ct. J. (Comm. List) Mar. 24, 2026), ¶ 33.

27.    Such adverse actions would cause irreparable harm to the Debtors and the value of their property to the detriment of creditors.  It would also affect third parties, including patients and employees, that rely on the CC Group's business continuity.  Accordingly, the Foreign Representative seeks the Provisional Relief pursuant to sections 105(a) and 1519 of the Bankruptcy Code.

**IV.    Provisional Relief is Urgently Needed to Protect Debtors' Assets**

28.    The Debtors urgently need the Provisional Relief.  In a chapter 15 case, prior to recognition, a debtor is not automatically entitled to the automatic stay or any other provisions of the Bankruptcy Code.  Although the Bankruptcy Code requires that a "petition for recognition of a foreign proceeding shall be decided upon at the earliest possible time," there is necessarily a gap between the time the petition for recognition is filed and the time the court

13

decides a recognition request. 11 U.S.C. § 1517(c). Thus, to protect a debtor during the gap period, chapter 15 allows a debtor to receive provisional relief "where relief is urgently needed to protect the assets of the debtor or the interests of the creditors." 11 U.S.C. § 1519(a).

29. Here, without the Provisional Relief, there is a real and significant risk that the underlying value of the Debtors' estates, including the Debtors' property interests (i.e., the Debtors' cash and equity ownership of Subsidiaries) will be harmed (notwithstanding the Canadian Proceeding and the stay set forth in the Initial Order). Indeed, in the absence of the Provisional Relief, the CC Group's creditors may take actions against the Stay Parties during the pendency of the Canadian Proceeding that would interfere with the closing of Sales, the orderly wind-down of the CC Group, and the ability of the Debtors to maximize distributions to their creditors. For example, without the Provisional Relief (and ultimate recognition of the Foreign Proceeding), parties asserting claims (such as the IRS or mortgagees) might pursue the Stay Parties for such claims. Further, absent the Provisional Relief, if the Support Agreement were terminated, Senior Noteholders in the United States might seek to exercise remedies against the property of the Debtors and their Subsidiaries that guarantee the Senior Notes. Moreover, if any of the approximately 70 leases that entities in the CC Group are party to are terminated (a number of which the Parent Company guaranties), there will be a significant risk of disruption to the CC Group's operations and value-destruction. Any disruption of operations will put at risk the CC Group's relationship with the hundreds of vendors it transacts with in the ordinary course of business, including, among others, goods suppliers, software providers, pest control providers, and logistics providers. The Debtors are concerned that, without the Provisional Relief, those creditors would act to thwart a value-maximizing result for all stakeholders of the CC Group. Specifically, the CC Group's vendors, landlords, and suppliers could terminate certain material contracts and

14

refuse to honor existing obligations under critical contracts.  Accordingly, there is a significant risk that value destruction could occur between now and the entry of the Recognition Order if the Provisional Relief Order is not granted.

30.    Further, certain of the Stay Parties are party to contracts or leases that contain provisions allowing a counterparty to terminate upon the commencement of the Canadian Proceeding.  Without the relief sought by this motion, those counterparties may attempt to terminate such agreements and jeopardize the Sales.

31.    The Provisional Relief will stay adverse actions by the Debtors' creditors and other parties until the Court can consider the Recognition Motion.  Indeed, provisional relief under section 1519 of the Bankruptcy Code is specifically intended to mitigate these risks.  *See* 11 U.S.C. § 1519(a) ("[T]he court may, at the request of the foreign representative, where relief is urgently needed to protect the assets of the debtor or the interests of the creditors, grant relief of a provisional nature . . .").

A.    **Requested Relief Meets Standard for Preliminary Injunction**

32.    Provisional relief under chapter 15 of the Bankruptcy Code is conditioned on a foreign representative demonstrating that a debtor meets the standards applicable to an injunction.  *See* 11 U.S.C. § 1519(e).  In the Third Circuit, that requires a movant to show that: (a) it has a likelihood of success on the merits; (b) it will suffer irreparable harm if the requested injunction is denied; (c) granting preliminary relief will not result in greater harm to the nonmoving party; and (d) the public interest favors such relief.  *United States v. Bell*, 414 F.3d 474, 478 n.4 (3d Cir. 2005) (citing *ACLU of N.J. v. Black Horse Pike Reg'l Bd. of Educ.*, 84 F.3d 1471, 1477 n.2 (3d Cir. 1996)); *In re Nortel Networks UK Ltd.*, 538 B.R. 699, 704–05 (Bankr. D. Del. 2015) (citations omitted); *see also Rogers v. Corbett*, 468 F.3d 188, 192 (3d Cir. 2006) (citations

omitted); *Kos Pharm., Inc. v. Andrx Corp.*, 369 F.3d 700, 708 (3d Cir. 2004) (citations omitted). The Debtors satisfy the applicable standard.

### i.    There Is Substantial Likelihood of Success on Merits.

33.    The Foreign Representative is likely to succeed on the merits of its Recognition Motion.  In the Third Circuit, this standard "requires a showing significantly better than negligible but not necessarily more likely than not . . . ." *See Reilly v. City of Harrisburg*, 858 F.3d 173, 179 (2017).  For the reasons set forth in greater detail in paragraphs 48–95 of the Recognition Motion, this standard is met.  First, the Canadian Proceeding satisfies the requirements of a foreign main proceeding, or in the alternative, a foreign non-main proceeding. The Canadian Proceeding is a "foreign main proceeding," as defined in section 1502(4) of the Bankruptcy Code, because each of the Debtors' "center of its main interests" is in Canada.[6] Further, as set forth in the Recognition Motion, the Foreign Representative is a proper "foreign representative" as defined under section 101(24) of the Bankruptcy Code.  Additionally, the Verified Petition was filed in accordance with, and satisfies all of the applicable requirements of chapter 15 of the Bankruptcy Code.

34.    Finally, there is no valid basis to decline recognition of the Canadian Proceeding under section 1506 of the Bankruptcy Code.  Specifically, the Third Circuit has held that section 1506 applies in only two narrow circumstances: "where [1] the procedural fairness of the foreign proceeding is in doubt or cannot be cured by the adoption of additional protections or where [2] recognition would impinge severely a U.S. constitutional or statutory right."  *ABC*

---

[6]    Alternatively, even if the Canadian Proceeding is not a "foreign main proceeding," it qualifies as a "foreign nonmain proceeding" because each of the Debtors has shown establishment in Canada, as further described in the Recognition Motion.

RLF1 35570878v.1

*Learning Centres*, 728 F.3d 301, 309 (3d Cir. 2013) (internal quotation marks omitted).  As set forth in greater detail in the Recognition Motion, neither circumstance is present here.

35.    Accordingly, the Recognition Motion likely will be granted at the hearing to consider such relief.  Until such time, however, the Debtors require the Provisional Relief to prevent against irreparable harm.

### ii.    Debtors Will Suffer Irreparable Harm Absent Provisional Relief

36.    The Provisional Relief requested pursuant to sections 362 and 365(e) of the Bankruptcy Code is critical to prevent irreparable damage to Debtors and resulting disruption to the administration of the Canadian Proceeding.  "In order to demonstrate irreparable harm the plaintiff must demonstrate potential harm which cannot be redressed by a legal or an equitable remedy following a trial."  *Siemens USA Holdings Inc v. Geisenberger*, 17 F.4th 393, 408 (3d Cir. 2021) (quoting *Campbell Soup Co. v. ConAgra, Inc.*, 977 F.2d 86, 91 (3d Cir. 1992)).  Courts have found "irreparable harm" exists when creditors could take enforcement actions against a debtor's assets.  *See, e.g.*, *In re Pride Group Holdings, Inc.*, No. 24-10632 (CTG) (Bankr. D. Del. Apr. 3, 2024) (Docket No. 49) (finding that irreparable harm to the debtors would be caused by allowing parties to (i) initiate or prosecute lawsuits or (ii) exercise remedies under debt obligations, executory contracts, or unexpired leases against the debtors and certain non-debtor affiliates); *In re CDS U.S. Holdings, Inc.*, No. 20-11719 (CSS) (Bankr. D. Del. July 2, 2020) (Docket No. 37) (finding that irreparable injury would be present where, unless a preliminary injunction is issued, creditors of the debtors and non-debtor affiliates could exercise certain remedies or terminate executory contracts or unexpired leases); Provisional Relief Hr'g Tr. 71:23-72:3, *In re NewSat Limited*, No. 15-10810, (LSS) (Bankr. D. Del. May 1, 2015) (Docket No. 82) ("[A] 'race to the courthouse' situation or a seizure of assets would be irreparable harm" and "the termination of critical contracts could constitute irreparable harm."); *In re Energy Coal S.P.A.*, 582 B.R. 619,

17

626–27 (Bankr. D. Del. 2018) (stating that harm to an estate exists where orderly determination of claims and fair distribution of assets are disrupted); *In re Lines*, 81 B.R. 267, 270 (Bankr. S.D.N.Y. 1988) ("[T]he premature piecing out of property involved in a foreign liquidation proceeding constitutes irreparable injury.")  Allowing some creditors to take such actions while other creditors are stayed in the Canadian Proceeding is improper and exactly why chapter 15 allows a court to issue the equivalent of a preliminary injunction through provisional relief.  *See In re Banco Nacional de Obras y Servicios Publicos, S.N.C.*, 91 B.R. 661, 664 (Bankr. S.D.N.Y. 1988) (stating that injunctive relief is necessary "to prevent individual American creditors from arrogating to themselves property belonging to the creditors as a group.").

37.    Courts also regularly recognize the need to provide provisional or injunctive relief to ensure the orderly distribution of a debtor's assets in a single proceeding and prevent piecemeal enforcement against a debtor's assets across multiple jurisdictions.  *See, e.g.*, *In re Acerus Pharm. Corp.*, No. 23-10111 (TMH) (Bankr. D. Del. Jan. 31, 2023) (Docket No. 25) (granting a preliminary injunction on the basis that absent such relief for the Debtors, creditors or other parties-in-interest in the United States could act to "undermine the Debtors' efforts to achieve an equitable result for the benefit of all of the Debtors' creditors"); Provisional Relief Hr'g Tr. 71:23-72:1, *In re NewSat Limited*, No. 15-10810, (LSS) (Bankr. D. Del. May 1, 2015) (Docket No. 82); *In re Energy Coal S.P.A.* 582 B.R. 619, 626–27 (Bankr. D. Del. 2018) (stating that harm to an estate exists where orderly determination of claims and fair distribution of assets are disrupted); *Victrix S.S. Co., S.A. v. Salen Dry Cargo, A.B.*, 825 F.2d 709, 713–14 (2d Cir. 1987) (same).

38.    Here, the Provisional Relief would prevent such irreparable harm.  The Chapter 15 Cases were commenced for the purpose of obtaining the assistance of the Court in

18

RLF1 35570878v.1

respect of the Canadian Proceeding to give effect in the United States to the Initial Order of the Canadian Court. As discussed above and further explained in the CRO Declaration and in paragraphs 39–45 of the Recognition Motion, the Debtors intend to complete value-maximizing sales of their assets, make distributions in accordance with Canadian law, and wind down their affairs in an orderly fashion pursuant to the CCAA Plan contemplated by the Support Agreement. Absent the Provisional Relief, there is a substantial risk that creditors may take enforcement actions to recover against Debtors' U.S. assets at a critical juncture in this process. Allowing creditors to pursue collection or enforcement against the Debtors or their Subsidiaries in the United States would disrupt the CC Group's ability to consummate the value-maximizing Sales and would diminish the value of the Debtors' assets. In addition, without the Provisional Relief, contract and lease counterparties may attempt to invoke insolvency default provisions in those agreements to terminate the contracts and leases with the Stay Parties. A number of those contracts and leases are being transferred as part of the Sales. Such actions also pose a significant risk to the Debtors ability to assist the approximately 100,000 patients who rely on the CC Group's stores for medicinal relief, its approximately 1,200 employees, and the hundreds of vendors with whom the CC Group interacts in the ordinary course of business.

39. The Provisional Relief is necessary to protect against those risks while the Debtors wait for the Court to hold a hearing to consider the Recognition Motion. Otherwise, by the time the Debtors receive the benefit of recognition, they could be dispossessed of their cash on hand, among other things.

### iii.    Provisional Relief Will Benefit Creditors

40. Preservation of the status quo through imposition of the stay and prevention of contract termination will not prejudice creditors. To the contrary, the Provisional Relief prevents the proverbial race to the courthouse, which would allow some creditors to improve their

positions vis-à-vis other creditors.  That form of jockeying undermines the purpose of the CCAA and chapter 15.

41.    The Provisional Relief Order further balances the interests of the Debtors and those of creditors to the extent they diverge.  In the Provisional Relief Order, there is an "escape valve" that allows creditors to seek relief therefrom.

42.    Granting the request for Provisional Relief will benefit the Debtors' creditors because it will ensure the value of the Debtors' assets is preserved, protected, and maximized for the benefit of creditors.

### iv.    Public Interest Favors Granting Provisional Relief

43.    The Provisional Relief is an "effective mechanism" to implement the chapter 15 policies of promoting cooperation between courts of the United States and courts of foreign countries involved in cross-border restructuring cases.  Specifically, chapter 15 seeks to promote the "fair and efficient administration" of cross-border cases that safeguard creditors' interests and ensure the "protection and maximization of the value of the [debtor's] assets." 11 U.S.C. § 1501(a).  Enjoining parties from taking adverse action against a debtor's assets, thereby preventing some from gaining an unfair advantage over others, is consistent with that mandate.

44.    The Provisional Relief provides the Debtors and their related parties with a breathing spell at the critical early stages of the Canadian Proceeding.  Recognizing the relief granted by the Canadian Court will facilitate the Debtors' efforts to complete a court-supervised sale process and subsequent wind-down.  This inures to the benefit of the Debtors' creditors and other stakeholders—including those in the United States. *See In re Tribune Co.*, 477 B.R. 465, 475 (Bankr. D. Del. 2012) ("[T]here is also a strong public interest in the swift and efficient resolution of bankruptcy proceedings.") (internal citations omitted); *Moore v. Paladini (In re CD*

20

*Liquidation Co., LLC)*, 462 B.R. 124, 135 (Bankr. D. Del. 2011) ("The last element, public interest, clearly favors the [moving party], given the Bankruptcy Code's overriding policy of promoting an orderly distribution and preventing a 'race to the courthouse' among creditors."); *Ball v. Soundview Composite Ltd. (In re Soundview Elite Ltd.)*, 543 B.R. 78, 118 n. 210 (Bankr. S.D.N.Y. 2016) ("There is a strong public interest in avoiding the dissipation of corporate assets that rightfully should go to creditors or other stakeholders.").

45.    Courts also recognize the strong interest of providing comity to a foreign proceeding under chapter 15 when the foreign court has entered the relief requested in the foreign proceeding.  *See* Hr'g Tr. 36:17-37:6, *In re Pride Grp. Holdings, Inc.*, No. 24-10632 (CTG) (Bankr. D. Del. Apr. 3, 2024) (Docket No. 57) ("I think it's really, really, really clear that if I've got jurisdiction by the filing of a Chapter 15, just like I would by the filing of a Chapter 11, you have jurisdiction to enjoin entities who aren't—enjoin the pursuit of actions against entities who aren't debtors, where in a U.S. Chapter 11 case it would have an effect on the estate or interfere with the reorganization or in a Chapter 15 where doing so is simply, essentially recognizing—not recognizing because that gets to a different point, but is giving effect to an order that already has been entered in some other—in a different foreign proceeding."); *See also* Hr'g Tr. 28:9-15, *In re Sandvine Corp.*, No. 24-33617 (SGJ) (Bankr. N.D. Tex. Nov. 7, 2024) (Docket. No. 53) ("Obviously under 105 and Rule of Procedure 65, we do sometimes extend the automatic stay or stay-like relief to non-debtor third parties in U.S. proceedings if we think it's necessary to preserve value and avoid irreparable harm.  But even better, if we have actually an order from Canada, I would be obliged to, in the notion of comity, honor that provision or aspect of the order.").  Finally, in the interest of public health, enforcing the Initial Order through the Provisional Relief will allow the CC Group's approximately 100,000 patients who rely on their stores to continue to obtain their

21

prescribed medications without disruption while the sales are completed.

46. For these reasons, courts have frequently granted requests for similar provisional relief in chapter 15 cases to maintain the status quo pending recognition or disposition of foreign proceedings. Indeed, courts have also granted provisional relief extending the stay to non-debtor affiliates, pending recognition of a CCAA proceeding.[7]

47. Accordingly, for the reasons set forth above, the Debtors' request for Provisional Relief is warranted and the Debtors respectfully submit the Court should immediately give effect and enforce the Initial Order.

## NOTICE

48. The Foreign Representative will provide notice of this motion consistent with Local Rule 9013-1(m). The Foreign Representative proposes to notify all creditors and parties in interest of the filing of the Verified Petition and the Foreign Representative's request for entry of an order granting the relief sought in the Verified Petition consistent with Local Rule 2002-1(g) in the form and manner set forth in the *Motion for Order (I) Scheduling Recognition Hearing, (II) Specifying Form and Manner of Service of Notice, and (III) Granting Related Relief,*

---

[7] *See In re Sandvine Corp.*, No. 24-33617 (SGJ) (Bankr. N.D. Tex. Nov. 7, 2024) (Docket. No. 26) (granting a preliminary injunction to non-debtor affiliate entities given the risk that the debtors' Canadian proceeding could be used to enforce remedies on such affiliates to the detriment of all stakeholders); *In re Pride Grp. Holdings, Inc.*, No. 24-10632 (CTG) (Bankr. D. Del. Apr. 3, 2024) (Docket No. 49) (granting a preliminary injunction to non-debtor affiliate entities and the directors and officers of such entities given the risk that the debtors' Canadian proceeding could be relied upon to enforce remedies on such affiliates to the detriment of all stakeholders); *In re CDS U.S. Holdings, Inc.*, No. 20-11719 (CSS) (Bankr. D. Del. July 2, 2020) (Docket No. 37) (granting a preliminary injunction to certain non-debtor affiliate entities in line with the protections afforded to such entities in the Canadian proceeding); *In re The Aldo Grp., Inc.*, No. 20-11060 (KBO) (Bankr. D. Del. May 8, 2020) (Docket No. 29) (order granting provisional relief, including recognition and enforcement of the initial order entered in the Canadian proceeding and conditional recognition and enforcement of the amended and restated initial order, and application of sections 362, 364(e), and 365(e)); *In re Energy Coal S.p.A*, No. 15-12048 (LSS) (Bankr. D. Del. Oct. 7, 2015) (Docket No. 22) (order granting provisional relief, including application of section 362); *In re Lone Pine Res. Inc.*, No. 13-12487 (BLS) (Bankr. D. Del. Sept. 26, 2013) (Docket No. 18) (order granting provisional relief, including recognition and enforcement of the initial order entered in the Canadian proceeding, and application of section 362).

RLF1 35570878v.1

filed contemporaneously herewith.   The Foreign Representative submits that such notice is sufficient in view of the facts and circumstances, and no other or further notice need be provided.

## RESERVATION OF RIGHTS

49.   The relief requested in this motion is without prejudice to any additional relief the Foreign Representative may request.

## NO PRIOR REQUEST

50.   No previous request for the relief sought herein has been made by the Foreign Representative to this or any other court.

## WAIVER OF FEDERAL RULE OF CIVIL PROCEDURE 65(c)

51.   Bankruptcy Rule 7065 expressly provides that "on application of a debtor, trustee, or debtor in possession, the court may issue a temporary restraining order or preliminary injunction without complying with [Federal Rule of Civil Procedure 65(c)]."  Fed. R. Bankr. P. 7065.  To the extent Rule 65(c) applies, the Foreign Representative believes that the security requirements imposed by such rule are not warranted under the circumstances and, accordingly, respectfully requests a waiver of such requirements pursuant to Bankruptcy Rule 7065.

## CONCLUSION

52.   For the reasons set forth herein, and on the record set forth in the CRO Declaration and in the Nicholson Declaration, the Foreign Representative respectfully requests that the Court enter the form of proposed Provisional Relief Order attached hereto as **Exhibit A**.

23

WHEREFORE the Foreign Representative respectfully requests entry of the proposed Provisional Relief Order attached hereto as **Exhibit A** granting the relief requested herein and such other and further relief as the Court may deem just and appropriate.

Dated: March 25, 2026
      Wilmington, Delaware

    /s/ Zachary I. Shapiro

RICHARDS, LAYTON & FINGER, P.A.
Zachary I. Shapiro (No. 5103)
Brendan J. Schlauch (No. 6115)
Zachary J. Javorsky (No. 7069)
920 North King Street
Wilmington, Delaware 19801
Telephone: (302) 651-7700
Email: shapiro@rlf.com
      schlauch@rlf.com
      javorsky@rlf.com

-and-

WEIL, GOTSHAL & MANGES LLP
David J. Cohen (*pro hac vice* pending)
1395 Brickell Avenue, Suite 1200
Miami, Florida 33131
Telephone: (305) 577-3100
Email: davidj.cohen@weil.com

-and-

WEIL, GOTSHAL & MANGES LLP
Garrett A. Fail (*pro hac vice* pending)
Alexander P. Cohen (*pro hac vice* pending)
Andrew J. Clarke (*pro hac vice* pending)
767 Fifth Avenue
New York, New York 10153
Telephone: (212) 310-8000
Facsimile: (212) 310-8007
Email: garrett.fail@weil.com
      alexander.cohen@weil.com
      andrew.clarke@weil.com

*Attorneys for the Foreign Representative*

24