**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE DISTRICT OF DELAWARE**

------------------------------------------------------------- x
         :

**In re:**            :         **Chapter 15**
         :

**THE CANNABIST COMPANY**         :         **Case No. 26– _____ ([●])**
**HOLDINGS INC.,** *et al.*,         :
         :

**Debtors in a Foreign Proceeding.[1]**      :         **(Joint Administration Requested)**
         :

------------------------------------------------------------- x

**DECLARATION OF LEE NICHOLSON**
**AS CANADIAN COUNSEL TO THE DEBTORS IN**
**SUPPORT OF DEBTORS' MOTIONS FOR (I) PROVISIONAL RELIEF AND**
**(II) RECOGNITION OF FOREIGN PROCEEDING AND CERTAIN RELATED RELIEF**

I, Lee Nicholson, to the best of my information and belief, declare as follows:

1.      If I were called upon to testify, I could and would testify competently to the statements set forth herein. I am authorized to submit this declaration on behalf of the Debtors.

2.      I am a Partner of the Canadian law firm of Stikeman Elliot LLP, 5300 Commerce Court West 199 Bay Street, Toronto, Ontario M5L 1B9, Canada.  I am counsel to The Cannabist Company Holdings Inc. (the "**Parent Company**," and together with its subsidiaries (the "**Subsidiaries**," and each, a "**Subsidiary**"), the "**CC Group**") and its debtor affiliate, The Cannabist Company Holdings (Canada) Inc. ("**The Cannabist Canada Company**," and together with the Parent Company, the "**Debtors**").  The Debtors are the subject of a proceeding (the "**Canadian Proceeding**") currently pending in the Ontario Superior Court of Justice

---

[1]    The Debtors in the Chapter 15 Cases, together with the last four digits of their federal tax identification number or Canadian business number, as applicable, are: (i) The Cannabist Company Holdings Inc. (8978) and (ii) The Cannabist Company Holdings (Canada) Inc. (9428).  The location of the Parent Company's registered office and the Debtors' service address is: 666 Burrard St #1700, Vancouver, British Columbia V6C 2X8, Canada. Additional information may be obtained on the website of the Debtors' information agent at https://www.veritaglobal.net/CCGroup.

(Commercial List) (the "**Canadian Court**"), initiated pursuant to the *Companies' Creditors Arrangement Act*, R.S.C. 1985, c. C-36 (as amended, the "**CCAA**").

3.      I attended Western University, from which I graduated with a juris doctorate, and was admitted to the Ontario Bar in 2014.

4.      I submit this declaration in connection with the relief the Parent Company is requesting in these chapter 15 cases (the "**Chapter 15 Cases**") and to aid the Court in understanding Canadian law pursuant to the CCAA.

5.      I have extensive experience in the field of Canadian corporate reorganization and insolvency law, advising debtors and creditors in work-out, receivership, bankruptcy, and CCAA proceedings in both Canadian and international contexts.  Over the years, I have been involved in numerous cross-border insolvency matters, including the chapter 11 proceeding of Kumtor Gold Company, the CCAA and chapter 15 proceedings of Acerus Pharmaceutical Corporation and Essar Steel Algoma Inc., the chapter 11 and CCAA parallel proceedings of Country Fresh Holding Company Inc. and Performance Sports Group Ltd., and the chapter 11 and CCAA recognition proceedings of Purdue Pharma LP, Pier 1 Imports Inc., Payless Holdings LLC, Jack Cooper Ventures Inc., and RGN National Business Centers, LLC.

## Canadian Proceeding

6.      On March 24, 2026, (the "**CCAA Commencement Date**"), the Debtors applied for protection in the Canadian Court pursuant to the CCAA.  On the same day, the Canadian Court entered the initial order (as amended, supplemented, extended, restated, or otherwise modified from time to time, the "**Initial Order**"), granting certain relief in connection with the Canadian Proceeding, including (among other things):

(a)      recognizing that the Debtors are companies to which the CCAA applies;

RLF1 35570836V.1

(b)    appointing FTI Canada to act as the Monitor of the Debtors in the Canadian Proceeding;

(c)    granting the Monitor full and complete access to the Debtors' property, including their premises, books, records, electronic data, and other financial documents;

(d)    ordering a stay of proceedings, for an initial period of ten days in accordance with the CCAA, to protect the Stay Parties;

(e)    ordering the Debtors to indemnify their directors and officers against obligations and liabilities incurred after commencement of the proceedings, except to the extent that the obligation or liability was a result of the director's or officer's gross negligence or willful misconduct;

(f)    authorizing a charge on the Debtors' assets as security for the indemnity provided to the Debtors' directors and officers;

(g)    authorizing a charge on the Debtors' assets as security for the professional fees and disbursements of the Debtors' counsel, the Monitor, and the Monitor's counsel;

(h)    approving the Parent Company to act as the foreign representative of the Debtors; and

(i)    authorizing the Foreign Representative to apply for foreign recognition and approval of the Canadian Proceeding and to seek related relief, as necessary, including, in this Court pursuant to chapter 15 of title 11 of the Bankruptcy Code.

7.    The Debtors are also seeking approval of an amended and restated initial order (the "**Amended and Restated Initial Order**") in the Canadian Proceeding certain additional relief including (among other things):

(a)    approval of SierraConstellation Partners LLC's appointment as Chief Restructuring Officer;

(b)    approval of a key employee retention plan;

(c)    approval of the engagements of Moelis as financial advisor to the Debtors, and Ducera Partners LLC as financial advisor to the Supporting Noteholders;

(d)    approving the execution of the Support Agreement by the Debtors and authorizing and directing the Debtors to take all steps and actions in respect of, and to comply with their obligations under, the Support Agreement; and

3

RLF1 35570836V.1

(e)    relief from certain reporting obligations that may be required by any federal, state, provincial, or other law with respect to securities or capital markets in Canada or the United States.

8.    The Foreign Representative anticipates the Canadian Court will enter the Amended and Restated Initial Order on or around April 2, 2026.

**Overview of CCAA Process**

9.    The CCAA provides for a court-supervised procedure designed to enable financially distressed companies to avoid a forced liquidation while maximizing a company's value as a going concern for the benefit of creditors and other parties in interest.

10.    A CCAA proceeding is a voluntary insolvency proceeding in which a debtor can sell its business as a going concern and distribute proceeds to creditors pursuant to court orders or a plan.  The debtor's assets and affairs are subject to the supervision of the Canadian Court during the pendency of a CCAA proceeding.

11.    Upon the commencement of a CCAA proceeding, the court appoints a qualified monitor, which functions as an independent court officer and observer of the CCAA proceeding and the debtor's business.  The monitor acts as the "eyes and ears of the court." Consent of the monitor is generally not required for the debtor to manage its business, including the sale of assets in the ordinary course, but the monitor will supervise the debtor's affairs and seek court relief to the extent any actions are taken that may prove harmful to the debtor and/or its creditors. The monitor's responsibilities generally include:

(a)    monitoring the debtor's ongoing operations and reporting to the court on any major events affecting the debtors' property or business;

(b)    notifying the debtor's creditors of any meetings in connection with a plan and tabulating votes at these meetings, if held;

(c)    assisting with preparing, filing, and holding meetings for voting on a plan;

(d)    approving disclaimers (i.e., rejection) of contracts and leases;

4

(e)     preparing a report on any plan, which is usually included in the mailing of the plan, if one is filed;

(f)     preparing reports in conjunction with any motions by the debtor or other stakeholders;

(g)     preparing recommendations for the court with respect to relief sought by the debtor or stakeholders;

(h)     assisting the debtor in its dissemination of financial and other information; and

(i)     assisting the debtor in its preparation of cash flow statements and reporting, which are reviewed with the monitor on a periodic basis.

12.     Otherwise, in a CCAA proceeding, absent exceptional circumstances, a debtor's management and board of directors remain in place, and the board maintains its power under applicable law to approve significant actions, including disposing of material assets, borrowing significant amounts, or changing corporate structures, subject to oversight by a court-appointed monitor and approval of the court.

13.     A debtor in a CCAA proceeding may also sell its assets outside of the ordinary course of business with court approval pursuant to Section 36 of the CCAA, similar to sales of assets pursuant to section 363 of the Bankruptcy Code.  Though the monitor need not formally approve significant transactions such as asset sales outside of the ordinary course, the court generally gives weight to the monitor's recommendations concerning such transactions.

14.     Upon the commencement of a CCAA proceeding, all actions against the debtor and its assets are stayed, wherever located, similarly to the function of the Bankruptcy Code's automatic stay.  The stay is first granted for a maximum period of ten (10) days.  The relief granted by the court within such ten-day timeframe is required to be limited to relief that is reasonably necessary for the continued operations of the debtor company in the ordinary course of business.  The CCAA process also allows for extensions of the initial stay period, which are

5

customarily granted where the debtor can show that it continues to act with good faith and due diligence and has sufficient liquidity to operate during the proposed stay period. The CCAA places no limitation on the number or duration of stay period extensions a debtor may receive. As of the date hereof, the stay period in the Canadian Proceedings is valid until April 2, 2026.

15.    The CCAA further allows courts to extend the stay of proceedings to third parties, including an applicant's non-applicant affiliates. Courts have broad discretion under the CCAA to grant such extensions and frequently extend the stay of proceedings to third parties where doing so supports the restructuring process. The relief granted by the Canadian Court in the Initial Order includes extension of the stay of proceedings to certain non-debtor third parties.

16.    As is the case in the U.S. chapter 11 process, the company will usually continue to operate in the ordinary course during the CCAA proceedings.

17.    With respect to contracts and leases, in a CCAA proceeding, subject to limited exceptions, clauses in contracts and leases triggering termination rights upon the debtor's commencement of an insolvency proceeding are not enforceable, so contract counterparties may not terminate contracts solely by virtue of the commencement of the CCAA proceeding.

18.    A company may also avail itself of restructuring measures in the CCAA, such as the "disclaimer" of onerous executory contracts (similar to "rejection" under chapter 11 of the Bankruptcy Code), with a view to enhance the prospects of bringing forward a successful CCAA plan or other value-maximizing transaction. On or after the day on which the CCAA proceedings commence, the debtor may disclaim or "resiliate" (i.e., cancel) any agreement (subject to limited exceptions) to which it is a party by giving a notice of at least 30 days (the "**Disclaimer**

6

**Notice Period**") to disclaim or resiliate the agreement.[2]  A counterparty to the agreement that suffers a loss in relation to the termination resulting from disclaimer or resiliation is considered to have a provable claim.

19.     For a CCAA plan to be binding on each class of creditors, a majority of the proven creditors in that class, by number, together with two-thirds (2/3) of the proven creditors in that class, by dollar value, must approve of said plan presented to them.  If a class of creditors approves the plan, it is binding on all creditors within the class, subject to the court's approval of the plan.  If all of the classes of creditors approve the plan, the final step is court approval of the creditor-approved plan.

20.     Upon court approval, the company continues forward as outlined under the plan until it has satisfied the requirements under the plan.  If creditors do not approve the plan or the court does not approve the plan, the company does not automatically go into bankruptcy (i.e., liquidation), but the stay of proceedings may be lifted.

21.     A CCAA plan is one of the possible outcomes of a process under the CCAA. A variety of other outcomes are possible.  These include notably sales of assets or shares or some other restructuring transaction, each effectuated with court approval, even in the absence of a CCAA plan.

22.     Throughout a CCAA proceeding, the court retains broad discretion to "make any order that it considers appropriate in the circumstances."

23.     In my experience, CCAA proceedings often lead to a value-maximizing result for a debtor's stakeholders because of the tools afforded under the CCAA process, including

---

[2]   In the case of lease agreements, court orders typically require that the debtor pay post-filing rent due under the lease agreement during the Disclaimer Notice Period and until the lease agreement is terminated.  In addition, the monitor must approve the proposed disclaimer or resiliation.

RLF1 35570836V.1

the stay of proceedings to prevent creditor interference, a court-supervised and court-sanctioned sales processes, the ability to disclaim burdensome contracts and leases, the power to impair claims, and the framework for the debtors to propose a CCAA plan or some other value-maximizing transaction. Because of these tools, distressed companies that apply for CCAA protection are able to carry out a fair and orderly administration of the estate, enabling many of them to achieve better outcomes for stakeholders and higher recoveries for creditors than they would have out of court.

### Conclusion

Pursuant to 28 U.S.C. § 1746, I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct to the best of my knowledge, information, and belief.

Executed on this 25th day of March, 2026.

Toronto, Ontario

/s/ Lee Nicholson

Lee Nicholson
Stikeman Elliott LLP

199 Bay Street
Suite 5300, Commerce Court West
Toronto, Ontario M5L 1B9
Canada

8

RLF1 35570836V.1