UNITED STATES BANKRUPTCY COURT
                        DISTRICT OF DELAWARE


IN RE:                            .  Chapter  15
                                  .  Case No. 26-10426 (BLS)
THE CANNABIST COMPANY             .
HOLDINGS INC., *et al.*,          .
                                  .
                                  .  Courtroom No. 1
                                  .  824 North Market Street
                                  .  Wilmington, Delaware 19801
  Debtors in a Foreign            .
  Proceeding.                     .
                                  .  Thursday, March 26, 2026
. . . . . . . . . . . . . . . .   10:30 p.m.

                    TRANSCRIPT OF FIRST DAY HEARING
              BEFORE THE HONORABLE BRENDAN L. SHANNON
                    UNITED STATES BANKRUPTCY JUDGE


For the Foreign
Representative:            Zachary Shapiro, Esquire
                           RICHARDS, LAYTON & FINGER, P.A.
                           920 North King Street
                           Wilmington, Delaware 19801

                           David Cohen, Esquire
                           WEIL, GOTSHAL & MANGES LLP
                           1395 Brickell Avenue
                           Suite 1200
                           Miami, Florida 33131


(APPEARANCES CONTINUED)

Audio Operator:            Ashley Alexander, ECRO

Transcription Company:     Reliable
                           The Nemours Building
                           1007 N. Orange Street, Suite 110
                           Wilmington, Delaware 19801
                           Telephone: (302)654-8080
                           Email:  gmatthews@reliable-co.com

Proceedings recorded by electronic sound recording,
transcript produced by transcription service.

APPEARANCES (CONTINUED):

For the Foreign
Representative:             Alexander Cohen, Esquire
                           WEIL, GOTSHAL & MANGES LLP
                           767 Fifth Avenue
                           New York, New York 10153

For the U.S. Trustee:      Jonathan Lipshie, Esquire
                           UNITED STATES DEPARTMENT OF JUSTICE
                           OFFICE OF THE UNITED STATES TRUSTEE
                           J. Caleb Bogg Federal Building
                           844 King Street
                           Suite 2207, Lockbox 35
                           Wilmington, Delaware 19801

For the Ad Hoc
Noteholder Group:          David Feuerstein, Esquire
                           FEUERSTEIN KULICK LLP
                           420 Lexington Avenue
                           Suite 2024
                           New York, New York 10170

For the Monitor, FTI
Consulting Canada:         Derek Abbott, Esquire
                           MORRIS, NICHOLS, ARSHT
                             & TUNNELL LLP
                           1201 North Market Street, 16th Floor
                           P.O. Box 1347
                           Wilmington, Delaware 19899

INDEX

MOTIONS:                                                           PAGE

Agenda
Item 5:    Motion for Provisional Relief Pursuant to         22
           Section 1519 of Bankruptcy Code [Docket No.
           3 – filed March 25, 2026]

           Court's Ruling:                                   30

Agenda
Item 6:    Motion for Order (I) Directing Joint              32
           Administration of Cases Under Chapter 15 of
           Bankruptcy Code, (II) Authorizing Foreign
           Representative to File Consolidated Lists
           of Information Required by Bankruptcy Rule
           1007(a)(4), and (III) Authorizing Redaction
           of Certain Personal Identifying Information
           Within Consolidated Lists [Docket No. 2 –
           filed March 25, 2026]

           Court's Ruling:                                   33

Agenda
Item 7:    Motion for Order (I) Scheduling Recognition       34
           Hearing, (II) Specifying Form and Manner of
           Service of Notice, and (III) Granting Related
           Relief [Docket No. 4 – filed March 25, 2026]
           (the "Scheduling Motion")

           Court's Ruling:                                   37


DECLARATIONS:                                                      PAGE

1) Curt Kroll                                                21

2) Lee Nicholson                                            22

(Proceedings commenced at 10:31 a.m.)

THE COURTROOM DEPUTY:  All rise.

THE COURT:  Please be seated.  Good morning.

Mr. Shapiro, good morning.  Good to see you.

MR. SHAPIRO:  Good morning.  For the record Zac Shapiro of Richards, Layton & Finger.  I am here today on behalf of the foreign representative.

I will be very brief before I turn over the podium.

First, I wanted to thank Your Honor for scheduling this hearing.

THE COURT:  Happy to oblige.

MR. SHAPIRO:  I speak for everyone when I say it's a pleasure to be here before you.

Second, the last time I was here before Your Honor, your Chambers assisted me with organizing the ear-piercing presentation.

THE COURT:  I'm really looking forward to what it is you brought in today.

(Laughter)

MR. SHAPIRO:  I wanted to assure you there will be no presentation like that today.

THE COURT:  Well then, this hearing is over.

(Laughter)

MR. SHAPIRO:  And then lastly, I just wanted to

introduce you to my friends at Weil Gotshal: David Cohen, Garrett Fail, Alex Cohen, and Robert Niles-Weed.

THE COURT:  Good to see you.

MR. SHAPIRO:  There will be other introductions but I wanted to introduce you to them.

THE COURT:  Great.

MR. SHAPIRO:  With that, I will turn it over to Mr. David Cohen.

THE COURT:  That sounds fine.

Good morning.  Welcome.

MR. DAVID COHEN:  Good morning, Your Honor.  For the record David J. Cohen, Weil Gotshal, on behalf of the Cannabist Company Holdings Inc., which is the proposed lead debtor and foreign representative in this Chapter 15 case, and the Cannabist Company Holdings Canada, which is the only affiliated debtor.

In addition to the individuals Mr. Shapiro noted, in the courtroom we have Mr. Curt Kroll from SierraConstellation Partners, the company's --

THE COURT:  Our affiant today.

MR. DAVID COHEN:  -- chief restructuring officer.

THE COURT:  Very good.  Welcome, sir.

MR. DAVID COHEN:  He's the primary declarant in support of today's relief.

Mr. Lee Nicholson from Stikeman Elliott.  He is

Canadian counsel.

THE COURT:  Our counsel affiant as well.

MR. DAVID COHEN:  I believe you also have representatives from Moelis & Company, the company's investment banker, as well as other members of management on the line.  I also believe we have the monitor in the CCAA proceedings, which is FTI Consulting, who is represented by Mr. Abbott from Morris Nichols who is also in the courtroom.

THE COURT:  Good morning.  Good to see you. Welcome.

MR. DAVID COHEN:  So, I think that rounds up the sort of core group of folks representing the debtors and estates interests on the line and then I want to, obviously, reiterate what Mr. Shapiro said which to thank you, Your Honor, for accommodating the hearing today on shortened notice as well as Mr. Lipshie from the Office of the United States Trustee for working with us in advance of the hearing.

We had been able to work with Mr. Lipshie to resolve, I would say, almost all of his comments with respect to the relief sought today with all rights reserved for the final recognition hearing.  Other then I believe when we get there, after some introductions, I think Mr. Lipshie has a narrow objection as it relates to getting effect to the Canadian order provisions that provide for a stay to non-debtor subsidiaries on a provisional basis.

So, we just wanted to preview for Your Honor that one disagreement; otherwise, I believe we are fully resolved.

THE COURT:  Okay.  Before we go further, I would like to hear from Mr. Lipshie.  Not on the merits of his objection but just on the status of these proceedings.

Good morning, sir.  Welcome.  Good to see you as always.

MR. LIPSHIE:  Good morning, Your Honor.  Jonathan Lipshie, Office of the United States Trustee.

That is true. There is one issue regarding the extension of the automatic stay to the non-debtors.

THE COURT:  And we will deal with that issue when we get to it but, otherwise, your office with rights reserved for the final hearing.

MR. LIPSHIE:  Correct, Your Honor.  And clearly, as to any kind of public policy exception under 1506, that is reserved.

THE COURT:  That was going to be my first question.

MR. LIPSHIE:  For all purposes throughout this case.  So, I will put that out there now.

I believe there were some blacklines.

THE COURT:  I have the blacklines that have been -- they got forwarded this morning and I appreciate getting them.

MR. LIPSHIE:  And there was one representation that I had requested concerning notice.

That is it, Your Honor.

THE COURT:  All right.  Well, just as always, Mr. Lipshie, I very much appreciate the engagement of you and your office with the debtor, I'm sure, in a hurry in order to smooth this process as best as possible.

Mr. Cohen, you may proceed.

MR. DAVID COHEN:  We agree with that.  So, in terms of how we propose to proceed today, again, I'm sure Your Honor has had an opportunity to review the papers.  We would like to provide the Court and folks listening on the line a brief overview of the company.  We don't do demonstratives, as promised by Mr. Shapiro.

THE COURT:  You're killing me.

MR. DAVID COHEN:  I want to explain why we're here and where we would like to go with these cases.  Following which, we can move the declarations into evidence.  We will explain why we think provisional relief today is appropriate, including with respect to the non-debtors.  Then we can open up the podium to others in support or Mr. Lipshie on that issue. Then I think following that we would like to take care of the administrative motions where I think some of the representations will fall in.

So, Your Honor, the lead debtor in this case is

the Cannabist Holding Company.  It's the public parent company of a cross-border group of companies including US non-debtor entities that have operated for years in the state licensed cannabis business and as outlined in our papers, are in the process of either being round down or sold to various buyers following a thorough sale process that was run by Moelis and overseen by an independent committee -- special committee of the board of the parent company.

The debtors themselves, the two debtors, do not grow, sell or, otherwise, handle cannabis or carry licenses to do so.  Rather, it's the non-debtor subsidiaries that have, sort of, operations in the United States where cannabis is legal for medicinal or, you know, adult use, or recreational purposes.

Just as background, because we couldn't keep track, cannabis is legal for medical purposes in 47 states and the District of Columbia, and in 24 states as well as DC have legalized the recreational use.  Its only Idaho, Kansas, and Nebraska that don't have a regulated medicinal or recreational regime at this point.  And our subsidiaries operate in eight states where cannabis is legal in accordance with each state's regulatory regime.

These subsidiaries offer medicinal relief to over 100,000 Americans annually who purchase the products with, you know, a prescription from a doctor.  And approximately 50

percent of our revenue -- I think in 2024 we had over $200 million of revenue comes from the medicinal business.

THE COURT:  And you had about 1,200 employees.  Is that spread across Canada and the Unites States?

MR. DAVID COHEN:  Correct.  Its -- yeah, mostly in the United States with about 1,200 employees.  So, this is a significant company.  We sold the assets off in the last few years but even still today we have over 1,200 employees.  We have 72 licenses to legally operate in retail stores and cultivation facilities.  There is still 54 retail stores, 15 manufacturing and cultivation facilities.  Really this is because it is confined within each state.  So, each state has its own one.

In fact, right here in Delaware the Delaware subsidiaries own three Columbia care branded retail stores. There is one in Rehoboth Beach, one in Smyrna, and then one about 15 minutes away from here in Wilmington on Concord Pike.

THE COURT:  Where on Concord Pike?

MR. DAVID COHEN:  Uh --

THE COURT:  I'm just kidding.

(Laughter)

MR. DAVID COHEN:  Brandywine Shopping Center, I think.

THE COURT:  I know exactly where that is.

Mr. Cohen, I promise I'm going to stop.

MR. DAVID COHEN:  No, I'm glad you opened the floodgates because I got a bunch lined up here.

So, between the cultivation facilities and manufacturing facilities, the retail stores, there is about 70 people in Delaware that are employed by the debtors subsidiaries.

In terms of the debtors themselves, I mentioned there is only two. They are the same two entities that were applicants in the CCAA proceeding. One is the Canadian parent company, it's a Canadian corporation publicly listed on the CBOE, Canada Stock Exchange, in Toronto. Its also traded over the counter here in the US.  Then both debtors have their registered office in Canada. The parent company is in Vancouver. The other debtor is in Toronto where the initial CCAA hearing was held on Tuesday.

The other debtor is a co-insurer of the Canadian company's senior secured notes, along with the parent company. And as you will see in the papers, the debtors owe approximately $180 million to the secured noteholders, which are guaranteed by, sort of, dozens of subsidiaries including all the operating entities which together owe about $40 million of mortgage obligations of the subsidiaries and there is some disputed federal income tax charges --

THE COURT:  I saw that.

MR. DAVID COHEN:  -- against the parent.

THE COURT:  Section 280(e) issue.

MR. DAVID COHEN:  Exactly because of the way that the IRS has asserted tax against the whole industry which, essentially, the whole industry is sort of pushing back on. Those collectively constitute the vast majority of claims against the group.

Just in terms of the industry, there has been a number of challenges that have impacted the company's ability to address liabilities. There has been a lot of saturation in a number of markets from competitors.  You know, its led to oversupply, massive price compression.  There has been, obviously, challenges accessing the capital markets.  You know, the company has had taxes asserted against them.

THE COURT:  Can I ask a question just out of curiosity.  I know that I had read over the years that companies in this industry, even in the United States, even if properly licensed, etc., have had difficulty not just with the capital markets but actually accessing banking services. Does that remain an issue?

MR. DAVID COHEN:  There are a number of banks, typically regional banks that will provide banking services. So, you know, I've been working with these kinds of companies for years.  In the beginning we had people with trucks and armored guards and security. At this point there is pretty

well established banks where we have our banking.  So, this company, for example, is at East West Bank, Western Alliance. So, legitimate regional banks that are doing the company's banking.

THE COURT:  Okay.

MR. DAVID COHEN:  In any event, all of those challenges have sort of led to continuing substantial operating losses over the last few years.  For example, the company incurred about $100 million of losses in 2024.  And at that time was facing an upcoming maturity of its notes and without the ability to access the capital markets to refinance.  So, we engaged with the noteholders to, essentially, kick out those notes.  They did it through a CBCA proceeding, which I know Your Honor is very familiar with.

THE COURT:  I am.

MR. DAVID COHEN:  That CBCA transaction was consummated last year and it kicked the maturity of the notes out to 2028.  So, once that was sort of done the company took a fresh look at its balance sheet and its operations. It had Moelis who, again, really is sort of the leading investment bank in this industry.  They got incredible experience in this area.

THE COURT:  The Court is certainly familiar with Moelis.

MR. DAVID COHEN:  Yes.

THE COURT:  As a matter of fact, as a matter of disclosure, I don't know if its necessary to make it currently but as of a couple of years ago, actually, Moelis was my client. I am the judicial mediator for the Puerto Rico Electric Power Authority and we had been authorized to retain a financial advisor.  That engagement has concluded.  So, I just make that as a matter of disclosure.

MR. DAVID COHEN:  Understood, Your Honor.

THE COURT:  But the Court is certainly familiar with Moelis.

MR. DAVID COHEN:  Understood.  Thank you.

So, Moelis ran a sale process and really what they came to the conclusion was the aggregate value of these assets are not going to exceed the liabilities and even just the senior secured debt.  So, rather than continuing to operate the business and suffer operating losses, pay interest on the secured debt -- I know there is an interest payment due at the end of the year and just run into a wall eventually.  The company proactively engaged with the noteholders to talk about is there another transaction.  So, those were represented as well.  They have retained Ducera as financial advisor who, again, with Moelis is really a leading boutique investment bank in this area, particularly in restructurings.  And then with Feuerstein Kulick.  Mr.

Feuerstein and Ms. Gleit are in the courtroom.  You may not see them as often as some others but they are really a leading firm in the cannabis space with a lot of experience in these restructurings.  They sort of traditionally been done out of court.  As well as Mr. Beach from Young Conaway.

So, through that engagement the company obtained a number of forbearances and we developed a pathway to, one, stabilize the organization through forbearances and consent from the lenders to the company's continued use of cash notwithstanding the payment default on the interest; two, to maximize value for assets by implementing going concern sales on a state by state basis with the approval of the Canadian Court; three, really winddown and liquidate operations in non-profitable states that attracted no interest from our buyers.

So, on Monday we executed a support agreement with lenders holding 60 percent of that debt which provides for just that path.  We commenced the CCAA proceeding on Tuesday before the Honorable Justice Dietrich in the Ontario Superior Court of Justice. That is the commercial list which I know you've seen a lot of CCAA cases.

THE COURT:  I have.

MR. DAVID COHEN:  So, we sought and received relief in the form of the initial order, a certified copy of which was filed as an exhibit to the proposed order here.

That initial provides that the debtors and their subsidiaries, almost all of whom are guarantors of the notes, were provided with a stay and appointed FTI as the monitor, and authorized the debtors to seek recognition before this Court and request this Court's assistance.

So, we also signed purchase agreements for our assets in Delaware and Ohio.  This is in addition to the Virginia sale that is referenced in the papers that closed in February.  We expect to sign multiple purchase agreements in the coming weeks with respect to the remainder of what I will call the, sort of, going concern subsidiaries.

THE COURT:  Okay.

MR. DAVID COHEN:  Closing those sales will take multiple months just given the need for regulatory approval in each state.  Right, this all goes through heavy regulatory scrutiny.  So, some states we expect maybe close in a month or two.  Others might take up to five or six months.

So, I think the headline is the group, the cannabis company is getting out of this business and we're utilizing the Canadian proceeding to implement that.  And we're really here to just recognize that to facilitate the Canadian Court overseeing an orderly process that maximizes value.  So, going forward our objectives are pretty simple.

One, with the stay in favor of the debtors and their subsidiaries already granted in the CCAA obtain

provision relief and ultimately recognition of that stay here in the US so the stay granted in Canada is enforced in the United States.

Two, the debtors are intending to seek authority in the CCAA proceeding to grant, essentially, requisite shareholder approval for its subsidiaries to sell their assets.  Again, that is a public company, so its going to be difficult to obtain shareholder approval.  Its widely held.  So, the CCAA proceeding will provide that corporate authority.  We don't presently intend to come into this Court to seek recognition of those sales because that is really just a Canadian corporate authority matter. The debtors themselves are not selling any assets. The sales are happening below at the non-debtor subsidiary level.

Then I think the third objective, what we expect to do later in the case.  Again, this may not be for a few months but we will want to come back to Your Honor at some point to seek recognition of the CCAA plan of arrangement or either means to really, you know, distribute proceeds and wind up the estates.

THE COURT:  Am I correct that we have given you scheduling for May?

MR. DAVID COHEN:  That's correct.  May 12th, I believe.

THE COURT:  Very good.

MR. DAVID COHEN:  Thank you.

THE COURT:  I knew there had been a request for the date. I wasn't certain if that had been pinned down.

MR. DAVID COHEN:  Thank you, Your Honor.  We appreciate that.

THE COURT:  Happy to oblige.

MR. DAVID COHEN:  So, with that background and roadmap, unless Your Honor has any questions or comments, I'm happy to turn back to the formal agenda.

THE COURT:  I don't have questions at this time. I very much appreciate the context.  Obviously, the regulatory environment that the company is operating in is, you know, complex but we have dealt with lots of companies that have complex and challenging regulatory environments.

I think I'd like to hear from the ad hoc noteholder group.

Mr. Feuerstein.

MR. FEUERSTEIN:  Pronounced Feuerstein.  It's okay, it's a common mistake.  Honestly, I think that's how it used to be pronounced but my parents changed it.

Good morning, Your Honor.  David Feuerstein from Feuerstein Kulick.  Thank you, again, for scheduling the hearing for granting our pro hac motion so quickly.

THE COURT:  Sure thing.  Welcome.

MR. FEUERSTEIN:  I think Mr. Cohen summed up very

neatly the current situation and I would say we are, obviously, in support of extending the stay to the non-debtors for obvious reasons.  We are the senior secured noteholders.  Our debt exceeds what we think we are going to get back in the sale.  And we think that anything that would be going on within the states would simply take away from the assets that are ultimately going to repay our debt.

I think beyond that, Your Honor, if you have specific questions.  Certainly happy to answer cannabis related questions but --

THE COURT:  I promised Mr. Cohen we're stopping that.

No, I do not have questions.  Obviously, your clients figured prominently in both of the -- or in the primary declaration that we have, Mr. Kroll's declaration.  So, I just wanted to give you the opportunity to be heard but, otherwise, at this point I do not have questions.

You do raise though, a point about your *pro hac* admission and I will just note that, as I think folks know, it is my practice at a first day hearing I will hear from any party whether or not they have affiliated with Delaware counsel or not, whether they're in the courtroom or attending remotely. I am certainly not going to stand on ceremony.  If there is a party that wishes to be heard at this hearing that has been scheduled on short notice I will hear from them.

So, I want to make sure that that record is clear but thank you for your appearance and your comments.

MR. FEUERSTEIN:  Thank you, Your Honor.

THE COURT:  Are there any other parties who wish to be heard before we turn to the motions?

Mr. Abbott, good morning.

MR. ABBOTT:  Good morning, Your Honor.  Derek Abbott for FTI Consulting Canada, the monitor that has been appointed in the CCAA proceedings up north.

Your Honor, I rise just to indicate that the monitor has been closely involved with this process all along.  We certainly support the relief that you are going to hear about today and I believe that the evidence that the debtors have provided is adequate to get the provisional relief that we think is critical to the success of this case.

So, we would urge Your Honor to support all that and grant the motions as requested.

THE COURT:  Very good. I appreciate the appearance and input from the monitor.  Thank you.

Any other parties before we turn to the motions?

(No verbal response)

THE COURT:  All right.  Mr. Cohen, ready to proceed?

MR. DAVID COHEN:  Yes.  Thank you, Your Honor.

At this time, we would like to move the two

declarations into evidence.  We have the declaration of Mr. Kroll filed at Docket Number 6 and Mr. Nicholson filed at Docket Number 7.  As I mentioned, they're both in the courtroom and are available.

THE COURT:  We will take them in order.  I would ask if there are any objections to the admission of Mr. Kroll's declaration for purposes of the relief sought at this first day hearing today?

(No verbal response)

THE COURT:  Very well. Mr. Kroll's declaration is admitted.

(Kroll declaration received into evidence)

THE COURT:  Is there any party that intends or expects to cross-examine Mr. Kroll regarding the contents of his declaration?

(No verbal response)

THE COURT:  Very well.  Mr. Kroll's declaration is admitted without contradiction, again, for the limited relief being sought today by the debtor.

The next one is, I think, Mr. Nicholson.  Again, I would ask: Are there any objections to the admission of Mr. Nicholson's declaration, again, as part of the debtors case in chief for the relief sought today?

(No verbal response)

THE COURT:  Hearing no response, Mr. Nicholson's

declaration is admitted.

(Nicholson declaration received into evidence)

THE COURT:  Is there any party that intends or expects to cross-examine Mr. Nicholson regarding the contents of his declaration?

(No verbal response)

THE COURT:  Hearing no response, Mr. Nicholson's declaration is admitted without contradiction.

You may proceed.

MR. DAVID COHEN:  Thank you, Your Honor.

We will start with the provisional relief motion which was filed at Docket Number 3, which seeks authority to give full force and effect to the initial order for a limited period until Your Honor hears us again on May the 12th.

I was an observer at the CCAA hearing on Tuesday in Toronto and Justice Dietrich made clear that the initial order was limited really just to that relief that was reasonably necessary for the continued operation of the group in the ordinary course during the interim period.

So, in addition to the stay the initial order really just appoints the foreign representative, appointed the monitor, authorized the debtor to utilize their existing cash management, pay wages, etc., and authorize certain limited charges that are customary in CCAA proceedings.  The order, of course, also explicitly requested the assistance of

this Court to give effect to the order.

Again, all we're really looking to do today is come away with that order and it gives full force and effect and protects the US assets.  Again, I think the provisional relief is certainly urgently needed to protect the property in the US and ensure the success of the Canadian proceeding at these early stages when things are fragile. We've got newly signed purchase agreements that are going to bring in a lot of money to repay the debtors creditors ultimately.

So, we don't want to leave to chance leaving those assets exposed to potential enforcement actions by various parties who might choose to ignore the Canadian stay that is in place.  We have landlords.  We have mortgagors who might exercise remedies.

THE COURT:  You've got a business.

MR. DAVID COHEN:  We've got a business, exactly. We've got the IRS who has previously, you know, garnished cash out of our accounts. So, that is a real risk.  Then we've also got our senior secured lenders represented by Mr. Feuerstein who we have a support agreement with 60 percent of them but --

THE COURT:  They have all their rights.

MR. DAVID COHEN:  They have all their rights, right.  So, we certainly want to be conscious of that and there's other noteholders that aren't part of the support

agreement who have rights as well.  So, just getting the stay in place really preserves the status quo.  If any of those actions were to materialize it would certainly, you know, cause what Chapter 15 is designed to prevent which is sort of a piecemeal enforcement against valuable assets of the debtors and destruction of value for the debtors creditors even though some of the assets are at non-debtors.  The value is really what is going to come back and pay back the debtors.

So, we think it's clear that the foreign rep meets the requirements for provisional relief which under 1519(e) follows the same standards as injunctive relief.  We think we are likely to succeed on our request to this Court to recognize the Canadian proceeding when we come back in May. Just again, tasking the Third Circuit for likelihood of success on the merits really means only a reasonable probability of success.

I'll quote Veterans Guardian VA Claim Consulting v. Platkin, 133 F.4th 213.  It's a 2025 decision by the Third Circuit.  What does that mean? It means better then negligible -- significantly better then negligible but not necessarily more likely then not.

So, here we've got a *prima facie* case.  We think that we're going to get recognition.  Canadian proceedings like this and the order that they're seeking recognition of

are routinely given recognition under Chapter 15.  Frankly, recognition under 15 is mandatory when the three requirements of 1517 are met.

We also think the narrow public policy exception in 1506 doesn't apply here and, obviously, that issue is not being contested today by the U.S. Trustee for purposes of today's relief with all rights reserved.

THE COURT:  Right are reserved. I understand.

MR. DAVID COHEN:  Second, as discussed earlier, the debtors, as sort of evidenced by the uncontroverted testimony of Mr. Kroll, will suffer irreparable harm to the detriment of their creditors if the provisional relief, including the stay for the non-debtor subs is not granted.

Third, we think that granting provisional relief benefits creditors as in the public interest.  It provides a breathing spell, maintains the status quo.  Again, all we're talking about is that creditors, including the senior secured creditors, who could otherwise attempt to foreclose today, if they wanted to are merely stayed temporarily.  The harm to the debtors and the creditor body of the debtors from denial far outweigh any temporary delay to individual creditors by the stay being in place.

To be clear, there is really nothing in Chapter 15 or Section 1519 that suggests the Court can't recognize a stay of non-debtors that is ordered by a foreign court.  1519

says that when relief is needed to protect the assets of the debtor, here we've got equity in the subs, that is an asset, or interests of creditors of the debtors, right.  Again, same creditors of the debtors and non-debtors.  The court can grant provisional relief.  And then it goes onto list non-exclusive forms of relief.  So, certainly extension of the stay to non-debtors is one and it includes any relief that would be available to a debtor in Chapter 11.

Indeed, there is a wide body of precedent supporting provisional relief, enforcing the foreign courts stay to non-debtors that have been ordered in Canadian cases. We highlighted a couple of cases in our papers --

THE COURT:  I saw it.

MR. DAVID COHEN:  -- that provide some really nice quotes about how there's really nothing unremarkable about this relief and there's clearly jurisdiction to do it.  Judge Goldblatt I think has a nice quote in Pride Group Holdings. There is a Sandvine case and myself and Mr. Nicholson recall being before Your Honor in Essar Steel where we had the same relief to non-debtors about ten years ago.

So, we think there's a lot of precedent.  So, we would submit that in this case granting provisional relief is appropriate and furthers the code's policy of centralized administration and comity with the Canadian Court.

So, absent any questions that Your Honor has, I'm

happy to cede the podium.

THE COURT:  I do not have questions.

Mr. Lipshie, did you wish to be heard?

MR LIPSHIE:  Good morning, again, Your Honor. Jonathan Lipshie, Office of the United States Trustee.

I rise to object to the broad encompasses injunction that the debtors have requested under Section 1517.  The crux of the argument, Your Honor, is that the code itself is very clear that it delineates only the debtor and the debtors assets on all of the applicable sections.

Debtor is defined in Chapter 15, 1502 as an entity that is subject to a foreign proceeding. Here there are only two such entities, the two debtors that have filed here in Delaware.  The stay or the ask here by the debtors is to extend that stay to the creditors of non-debtor subsidiaries throughout the United States.

We haven't' gotten to the scheduling order, Your Honor, but attached to the debtors petition is a list of all those parties. I believe its about 66 pages.  We're talking about a lot of individuals, a lot of entities that would be effected by this injunction.

If Congress had wanted non-debtors to be covered it could have said non-debtors.  The fact that the list doesn't say you can't do it, if -- you know, in this post Purdue world, Your Honor, if there is a catch a mole its

supposed to be the least broad.

In this case what the debtors are trying to do is use the initial order in Canada and, yes, Your Honor, the whole purpose of Chapter 15 is to respect comity; however, I submit the Court is limited by the actual statutory words that are in the code and that are in Chapter 15.  And there is nothing in there that talks about non-debtors.  There is nothing in there that talks about an injunction against creditors of non-debtors which is, essentially, what the debtors are requesting here.

If I am correct, in what counsel said, the only assets they really have are the equity in the debtors and the non-debtor subsidiaries.  To the extent that somebody is trying to execute on those interests that is something else but the actual -- all of the assets, the product, the equipment, all of the operational assets of the non-debtors, there should not be an injunction.  The code is clear, Your Honor.

That is our position. And this is overstepping what the code allows.  It's on a provisional basis, two days' notice, thousands -- I believe thousands, if you count all of those entities, are going to be effected with no notice and that is just not what the code entails.

THE COURT:  Before I hear from the debtor in reply, are there any other parties that wish to be heard?  I

know that the ad hoc group has noted that they're supportive of the relief and I think we've heard the same from the monitor.  But I would ask if there is any other party that wishes to be heard for or against before I hear from Mr. Cohen in response.

(No verbal response)

THE COURT:  All right.  Mr. Cohen.

MR. DAVID COHEN:  I'll be brief, Your Honor.  I think this is really just a simple statutory interpretation exercise.  We're not talking about extending the stay like we would, sort of, under 105 in a Chapter 11 case.  We're really talking about just looking at Section 1519 which says in 1519(a) the court may, at the request of the foreign representative, where relief is urgently needed to protect the assets of the debtor for the interest of the creditors, I think both are implicated here, grant relief of a provisional nature including, and then it goes to list a number of things.

So, if this provision only said the court may stay execution against the debtors assets maybe we would be having a conversation but it says that you can grant any provisional relief where its necessary to protect the interest of creditors or the assets of the debtors.  So, including tells me this is not exhaustive.  You know, we can pull in an injunction under applicable Delaware law but then it also

says any relief referred to in Paragraphs 3, 4 or 7 of 1521(a).  Paragraph 7 of 1521(a) says that you can grant any additional relief that may be available to a trustee.

So, we think its pretty clear that there is broad authority to grant stays. I think the only argument the U.S. Trustee might, you know, have is if this was contrary to public policy, manifested contrary to public policy.

THE COURT:  I don't think that is the argument he made. I think the argument he made is that there is not explicit authority within the statute to accomplish this.

I've heard enough.  I am going to overrule the objection. I would note, as a threshold matter, that I very much appreciate, as I said, the trustee's engagement with the debtor in advance getting through the various issues that are raised in a new filing.  And I also think that Mr. Lipshie's comments or concerns are squarely within the U.S. Trustee's wheelhouse in terms of trying to protect the interest at the outset of a case of folks who may not have had notice or have had an opportunity to get to today's hearing.

That much having been said, I don't agree that there is on statutory authority for this Court to grant this relief and I take a measure of comfort and confidence from the various cases that have been identified particularly in Paragraph 7 -- I'm sorry, footnote 7 of the foreign representatives motion.

Mr. Cohen has gone through the injunction factors and elements and, again, I don't think that they're materially challenged or contradicted here. And I view the relief that the debtor is -- that the foreign representative is seeking to be entirely consistent with the policy and legislative intent embodied in Section 362(a).  And I think that this Court would have little hesitation of extending the stay around subsidiaries if this were simply a Chapter 11 in order to preserve the status quo.

Recognizing that there is also an opportunity for parties down the road to come in and seek relief if its not well-founded or if they have particular circumstances but at the outset I am presented with a CCAA proceeding that has obtained broad but, frankly, very familiar relief from the Canadian court. This Court is certainly very, very familiar with the proceedings up in Canada.

So, I find that this is squarely within well-established practice in this jurisdiction and in others.  So, I find that the relief requested at this stage is appropriate and warranted, again, as Mr. Cohen said, for purposes of preserving the status quo.

Given the trustee's focus, which I think is entirely on the statutory authority here, I'm not going to go through and make additional specific findings with respect to the injunction factors and evidentiary predicate that Mr.

Cohen walked through. I am satisfied with that and I certainly accept it but I think the trustee's construction of the statute is not consistent with, I think, the way that I would view the harmonizing of 1517, 1519, and 1521.

So, with that, I would overrule that objection and I would be prepared to grant the application for provisional relief. I don't know if they have all been uploaded yet but the orders will be entered as soon as we have them. Okay.

MR. DAVID COHEN: Thank you. We will be sure to upload a revised order, I think, addressing some other comments and we appreciate the ruling.

With that, I think I will turn it over to Mr. Alex Cohen to take us through the administrative motion.

THE COURT: Okay. Mr. Cohen.

MR. ALEXANDER COHEN: Good morning, Your Honor. Good to be in front of you again.

THE COURT: Welcome. Good to see you.

MR. ALEXANDER COHEN: Thank you. Alexander Cohen, for the record, Weil, Gotshal & Manges on behalf of the foreign representative.

As the other Mr. Cohen noted, I will be walking through some of the administrative motions and relief that we sought.

THE COURT: That sounds fine.

MR. ALEXANDER COHEN: First, with respect to the

joint administration motion, which is Agenda Item 6, Docket Number 2. I won't belabor and go through the motion and the order as I have seen folks do but I did want to note, as Mr. Cohen noted and the U.S. Trustee noted, we did incorporate some comments to the order which, I believe, Your Honor received.

THE COURT: I have seen the blackline and I recognize Mr. Lipshie's handwriting.

MR. ALEXANDER COHEN: Very well, Your Honor. We will upload the revised order after the hearing and, otherwise, unless Your Honor has any questions --

THE COURT: I don't have any questions. I view the relief requested as largely routine and I would ask if anyone wishes to be heard with respect to the joint administration application?

(No verbal response)

THE COURT: Hearing no response, as I noted, the relief requested is necessary and appropriate and, again, really routine in this jurisdiction. I have had an opportunity to review the modest changes that have been made to the blacklined order that was received by Chambers this morning and, again, in the absence of objection I am not going to burden the record with extensive findings. I am satisfied that the foreign representative has carried its burden with respect to the relief requested.

The motion is granted. The order will issue.

MR. ALEXANDER COHEN:  Thank you, Your Honor.

The final item on today's agenda is Agenda Item 7, which is we filed the scheduling motion at Docket Number 4. There are two pieces of that that I would like to discuss. The first is the administrative piece and then the second is with respect to, as the U.S. Trustee previewed, the representation we will make on the record.

So, first, getting through the administrative pieces, we understand that the Court set May 12th at 2 p.m. as the hearing and that is reflected in the revised form of order that we upload.  We also requested an objection deadline for the recognition hearing of April 27th. So, both of those will be reflected in the revised form of order that we upload for signature.

The second piece that I wanted to touch on was noticing, which we discussed with the U.S. Trustee in response to some comments.  To be clear, we have the exact same goals as the U.S. Trustee which is the broadest notice possible to the largest number of parties possible.  So, before the filing you will see that we listed, as Mr. Lipshie noted, over 60 pages of parties under petitions.

THE COURT:  I saw.

MR. ALEXANDER COHEN:  Its about 2,700 give or take a few.  And we did serve notice of the agenda to all 2,700

plus parties.  We also served or will serve, depending on which party, a letter from Canadian counsel which includes an outline of the CCAA as well as a link to receive CCAA documents and find them on dockets similar to how we do here with a claims agent.  All of those documents have also been uploaded or will be uploaded on the cite for the debtors in the Chapter 15 case with Verita.  That link is also included in each of our motions.

Second, with respect to service following entry of the order we intend to serve the entire matrix, again over 2,700 parties, with four things:

First, the notice of recognition hearing which will include the new hearing date and the objection deadline.

Second, the provisional relief order that Mr. Cohen just walked through and that will be entered after this hearing.

Third, probably the Chapter 15 petitions which includes an exhibit, CCAA initial order, again, so everyone sees what is happening both in Canada and the United States.

Fourth, as I mentioned, a letter from Canadian counsel describing the CCAA and where folks can find the CCAA papers.

In addition, we will also include slip sheets, additional context, and color on where to find documents filed in the United States on Verita website.  That will be

served to the entire matrix and that that more than satisfies Rule 2002(q).

That is the representation and that is reflected both in the motion and then in the order that is attached.

THE COURT:  All that sounds fine.

Mr. Lipshie, is that satisfactory to you?

MR. LIPSHIE:  Yes, Your Honor.

THE COURT:  Very good.  Can I ask you a question, Mr. Cohen, is the foreign representative going to be moving to retain -- Verita used to be KCC, right?

MR. ALEXANDER COHEN:  Correct.  Yes.

THE COURT:  Are they moving to retain Verita in these proceedings or are they retained and dealt with in the Canadian proceedings?

MR. ALEXANDER COHEN:  We weren't planning on moving to retain them formally.

THE COURT:  That's fine with me. I make no comment on that. I just wanted to make sure that you described their services being provided.  That's all fine with me.

MR. ALEXANDER COHEN:  Thank you, Your Honor.

THE COURT:  Then I would ask fi anyone wishes to be heard with the debtors request for an order with respect to scheduling and noticing.

(No verbal response)

THE COURT:  Okay.  I am going to grant this

motion.  Again, Chapter 15 does require that we schedule these hearings and provide the opportunity for parties to respond, object and, obviously, get an understanding of what is going to be proceeding both in this Court as well as in Canada.  I am also satisfied that the timeline that has been laid out by Mr. Cohen this morning is consistent with both this Court's local rules, the applicable bankruptcy rules and the requirements under Chapter 15 of the bankruptcy code.

Again, for purposes of clarity, the Court has scheduled a final recognition hearing for May 12th of 2 o'clock in the afternoon.  And I am satisfied that an objection deadline of the 27th of April is appropriate under the circumstances to afford parties a meaningful opportunity to review what is going on, to make an objection, and provide the debtor or the foreign representative, I'm sorry, the opportunity to evaluate those objections and respond if necessary.

So, based upon the record before me the foreign representative has carried its burden. The motion is granted. The order will issue.

Mr. Cohen, are there any other matters that we have this morning?

MR. ALEXANDER COHEN:  Nothing further from the foreign representative, Your Honor.

THE COURT:  Any other parties.

(No verbal response)

THE COURT:  With that, then we are adjourned.  I thank counsel.  Stand in recess.

(Proceedings concluded at 11:13 a.m.)

CERTIFICATION

I certify that the foregoing is a correct transcript from the electronic sound recording of the proceedings in the above-entitled matter to the best of my knowledge and ability.


/s/ William J. Garling                    March 27, 2026

William J. Garling, CET-543

Certified Court Transcriptionist

For Reliable