**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE DISTRICT OF DELAWARE**

| | |
|---|---|
| In re:<br><br>THE CANNABIST COMPANY HOLDINGS INC., *et al.*<br><br>Debtors in Foreign Proceeding. [1] | Chapter 15<br><br>Case No. 26-10426 (BLS)<br><br>(Jointly Administered)<br><br>**Re: Docket No. 5**<br><br>**Hearing Date: May 12, 2026**<br>**Time: 2:00 PM (prevailing Eastern Time)** |

**OBJECTION TO MOTION FOR RECOGNITION OF FOREIGN PROCEEDING AND REQUEST FOR CERTAIN RELATED RELIEF [DOCKET No. 5]**

East West Bank ("EWB"), by and through their counsel, file this objection (the "Objection") to the Motion for Recognition for Foreign Proceeding and Request for Certain Related Relief [Docket No. 5] (the "Motion") and respectfully state as follows:

**I.      PRELIMINARY STATEMENT**

1.      The Debtors do not seek a routine recognition request under Chapter 15. Instead, the Debtors seek to invoke the powers of this Court to recognize a foreign proceeding with the purpose of monetizing cannabis-related assets and distributing the resulting proceeds. Such conduct remains illegal under federal law, namely the Controlled Substances Act (the "CSA"). The recognition sought would require this Court to affirmatively endorse and facilitate conduct expressly prohibited by the CSA. As such, recognition is manifestly contrary to public policy of the United States under 11 U.S.C. § 1506.

2.      Even if recognition of the foreign proceeding were permissible, which it is not, the Debtors seek extraordinary relief, including the extension of the automatic stay and broad

---

[1] The Debtors in the Chapter 15 Cases, together with the last four digits of their federal tax identification number or Canadian business number, as applicable, are: (i) The Cannabist Company Holdings Inc. (8978) and (ii) The Cannabist Company Holdings (Canada) Inc. (9428). The location of the Parent Company's registered office and the Debtors' service address is: 666 Burrard St #1700, Vancouver, British Columbia V6C 2X8, Canada. Additional information may be obtained on the website of the Debtors' information agent at https://www.veritaglobal.net/CCGroup.

injunctive protections to non-debtor subsidiaries in the United States. Chapter 15 does not authorize such relief under these circumstances.

3.      For these reasons, and as set forth more fully below, the Motion should be denied in its entirety and recognition should not be granted, or, at a minimum, the requested relief as to non-debtor entities should be denied.

## II.      CONSENT TO FINAL ORDER

4.      Pursuant to Rule 9013-1(f) of the Local Rules of the United States District of Delaware, EWB consents to the entry of a final order by the Court in connection with this Motion to the extent it is later determined that the Court, absent consent of the parties, cannot enter final orders or judgments.

## III.      FACTUAL BACKGROUND

### A.  Debtors' Operations

5.      Parent Company in a Canadian holding company and is the parent of its affiliate Debtor, Cannabist Canada Company, and the ultimate parent of non-Debtor subsidiaries (each a "Subsidiary" and collectively with the Debtors, the "CC Group"). Kroll Decl., ¶ 9. Parent Company is also the direct parent of non-debtor Columbia Care LLC, a Delaware Limited Liability Company ("Columbia Care"). *Id.* at ¶ 10.

6.      Certain of Parent Company's direct and indirect subsidiaries, such as Columbia Care, are intermediate holding companies, which own the equity of other subsidiaries or operating companies, and conduct management and administrative functions for the CC Group. *Id.*

7.      Certain of Parent Company's indirect subsidiaries operate cannabis businesses (collectively, the "Cannabis Subsidiaries"). *Id.* Debtors concede that the Cannabis Subsidiaries are not Debtors in the Canadian Proceeding or the Chapter 15 Proceeding. *Id.*

### B.  The EWB Mortgages

*The New York Mortgage*

8.      Columbia Care is the direct parent of non-debtor Columbia Care NY Realty LLC, a New York limited Liability Company ("Columbia NY"). Kroll Decl., Ex. A.

2

9. On or about December 28, 2021, Columbia NY and EWB executed and delivered a Mortgage and Security Agreement and related loan documents in the original principal amount of $20,000,000 (the "NY Mortgage and Loan"). The NY Mortgage and Loan is secured by the real property located at 5784 Sound Avenue, Riverhead, NY 11901 (the "NY Property"). As of December 31, 2025, approximately $18,410,257 remains outstanding on the NY Mortgage and Loan.

10. As additional security on the NY Mortgage and Loan, Columbia NY granted EWB (i) an Assignment of Deposit Account, and (ii) an Assignment of Leases and Rents dated December 28, 2021.

11. The obligations owing under the NY Mortgage and Loan are guaranteed by Parent Company.

12. It is EWB's understanding that Debtors have substantially wound down the New York operations, including operations at the NY Property. *See* Kroll Decl., ¶ 33.

*The New Jersey Mortgage*

13. Columbia Care is the direct parent of non-debtor Columbia Care NJ Realty LLC, a New Jersey limited Liability Company ("Columbia NJ"). Kroll Decl., Ex. A.

14. On or about June 2022, Columbia NJ executed and delivered a Mortgage, Security Agreement, Assignment of Leases and Rents and Fixture Filing and related loan documents to EWB in connection with a loan in original principal amount of $16,500,000 (the "NJ Mortgage and Loan"). The NJ Mortgage and Loan is secured by the real property located at 51 West Park Avenue, Vineland, NJ 08360 (the "NJ Property"). As of December 15, 2025, approximately $15,894,384 was outstanding under the NJ Mortgage and Loan.

15. As additional security on the NJ Mortgage and Loan, Columbia NJ granted EWB (i) an Assignment of Deposit Account dated June 27, 2022; (ii) an Assignment of Rents and Leases dated June 29, 2022; and (iii) a Commercial Security Agreement dated June 27, 2022 granting EWB a security interest in all of Columbia NJ's present and after acquired personal property.

16.    The obligations owing under the NJ Mortgage and Loan are guaranteed by Parent Company.

17.    It is EWB's understanding that another non-debtor subsidiary of the Debtors is Columbia NJ's tenant at the NJ Property.

*The Maryland Mortgage*

18.    Columbia Care is the direct parent of non-debtor Columbia Care MD Realty LLC, a Maryland limited Liability Company ("Columbia MD" and collectively with Columbia NY and Columbia NJ, the "Non-Debtor Borrowers"). Kroll Decl., Ex. A.

19.    On or about August 9, 2023, Columbia MD executed and delivered a Deed of Trust, Assignment and Security Agreement, Promissory Note and related documents to EWB in the original principal amount of $6,250,000 (the "MD Mortgage and Loan" and collectively with the NY Mortgage and Loan and NJ Mortgage and Loan, the "Mortgages").  The MD Mortgage and Loan is secured by the real property located at 6797 Bowmans Crossing, Frederick, MD 21703 (the "MD Property" and collectively with the NY Property and the NJ Property, the "Properties"). As of December 31, 2025, approximately $6,117,966 was outstanding under the MD Mortgage and Loan.

20.    As additional security on the MD Mortgage and Loan, Columbia MD granted EWB (i) a Cash Collateral, Escrow Pledge and Security Agreement dated as of August 9, 2023; (ii) a General Security Agreement dated as of April 9, 2023, granting EWB a first priority security interest over all of Columbia MD's personal property; and (iii) an Assignment of Rents and Leases dated August 9, 2023.

21.    The obligations owing under the MD Mortgage and Loan are guaranteed by Parent Company and Green Leaf Medical, LLC ("Green Leaf"), a non-debtor Delaware limited liability company.

22.    It is EWB's understanding that Green Leaf is Columbia MD's tenant at the MD Property.

23.    The Non-Debtor Borrowers are subsidiaries or corporate affiliates of Debtors. *See* Kroll Decl., Ex. A.

24.    EWB holds several bank accounts in favor of the Non-Debtor Borrowers (the "Bank Accounts").  The Bank Accounts serve as additional collateral for the Mortgages.

**C. The Canadian Proceeding and Chapter 15 Proceeding**

25.    On March 24, 2026, the Debtors commenced a proceeding under the CCAA (the "Canadian Proceeding"). Subsequent thereto, the Ontario Superior Court of Justice (Commercial List) (the "Canadian Court") granted the Debtors and their subsidiaries protection through May 29, 2026.  Those subsidiaries include the Non-Debtor Borrowers.

26.    On March 25, 2026, the Debtors commenced the above-captioned proceeding under Chapter 15 of the United States Bankruptcy Code before the United States Bankruptcy Court for the District of Delaware (the "Bankruptcy Court," and such proceeding, the "Chapter 15 Proceeding").

27.    On March 26, 2026, the Bankruptcy Court entered an order granting provisional relief to the Debtors [Docket No. 32] (the "Provisional Relief Order").  Under the Provisional Relief Order, the Bankruptcy Court imposed the protections of section 362 and 365(e) of the Bankruptcy Code in favor of the Debtors and their non-debtor United States subsidiaries, including the Non-Debtor Borrowers (collectively, the "Non-Debtor Stay Parties").

28.    On or about April 2, 2026, the Canadian Court issued its *Amended and Restated Initial Order* in the Canadian Proceeding (the "Canadian Order").

### IV.    ARGUMENT

**A. Recognition of the Canadian Proceeding Must Be Denied Under 11 U.S.C. § 1506 Because Recognition is Manifestly Contrary to Public Policy**

29.    Granting recognition of the Canadian Proceeding would be in violation of federal law, specifically the CSA, because the stated purpose of the Canadian Proceeding is to monetize cannabis-related assets and distribute the resulting proceeds. Recognizing a Chapter 15 proceeding that is in direct conflict with federal law is a violation of public policy. Section 1506 provides that

5

a court may "refus[e] to take an action governed by [Chapter 15] if the action would be *manifestly contrary to the public policy of the United States*." 11 U.S.C. § 1506 (emphasis added). Section 1506 is a safeguard and remedy "for genuine threats to core U.S. constitutional or statutory rights." *In re Credito Real S.A.B. de C.V., SOFOM, E.N.R.*, -- BR ---, 2026 WL 881444, at \*8 (D. Del. Mar. 31, 2026).

30.     "[P]ublic policy is an integral limitation on a court's authority to grant comity to foreign courts and foreign proceedings," which is codified in section 1506. *In re Toft*, 453 B.R. 186, 193 (Bankr. S.D.N.Y. 2011). "Comity is 'the recognition which one nation allows within its territory to the legislative, executive, or judicial acts of another nation, having due regard both to international duty and convenience, and to the rights of its own citizens, or of other persons who are under the protection of its laws.'" *In re Commodore Int'l*, 242 B.R. 243, 256 (Bankr. S.D.N.Y. 1999) (quoting *Hilton v. Guyot*, 159 U.S. 113, 164 (1895)); *see also Vertiv, Inc. v. Wayne Burt PTE, Ltd.*, No. 22-3305, 2024 U.S. App. LEXIS 2226, at \* 7 (3d Cir. Feb. 1, 2024). "[C]omity does not achieve the force of an imperative or obligation." *Somportex Ltd. v. Philadelphia Chewing Gum Corp.*, 453 F.2d 435, 440 (3d Cir. 1971). Courts should withhold comity "when its acceptance would be contrary or prejudicial to the interest of the nation called upon to give it effect." *Id.*; *see also Diorinou v. Mezitis*, 237 F.3d 133, 143 (2d Cir. 2001) (finding a case by case inquiry to be appropriate in questions of comity) (quoting *Hilton*, 159 U.S. at 139 (inquiry concerning "fraud in procuring the [foreign] judgment or *any other special reasoning* why the comity of this nation should not allow its full effect) (emphasis in *Diorinou*).

31.     In determining whether to apply section 1506, "courts have focused on two factors: (1) whether the foreign proceeding was procedurally unfair; and (2) whether the application of foreign law or the recognition of a foreign main proceeding under Chapter 15 would 'severely impinge the value and import' of a U.S. statutory or constitutional right, such that granting comity would 'severely hinder United States bankruptcy courts' abilities to carry out . . . the most fundamental policies and purposes' of these rights." *Vitro, S.A.B. de C.V. v. ACP Master, Ltd.(In re Vitro, S.A.B. de C.V.)*, 473 B.R. 117, 123 (Bankr. N.D. Tex. 2012), *aff'd* 470 B.R. 408 (N.D.

Tex. 2012), *aff'd* 701 F.3d 1031 (5th Cir. 2012) (declining to rule on the applicability of section 1506 and affirming based on 11 U.S.C. § 1507 and 11 U.S.C. § 1521) (quoting *In re Quimonda AG Bankr. Litig.*, 433 B.R. 547, 568-69 (Bankr. E.D. Va. 2010)). "An action should not be taken in a Chapter 15 proceeding where taking such action would frustrate a U.S. court's ability to administer the Chapter 15 proceeding and/or would impinge severely a U.S. constitutional or statutory right, particularly if a party continues to enjoy the benefits of the Chapter 15 proceeding." *In re Quimonda AG Bankr. Litig.*, 433 B.R. at 570. An explicit violation of federal law is a severe impingement that would frustrate the Court's ability to administer the Chapter 15 Proceeding.

32.     In most, if not all, cases where courts have found relief contrary to public policy, there was a violation of United States federal law. *See, e.g.*, *In re Irish Bank Resolution Corp.*, 559 B.R. 627 (Bankr. D. Del. 2016) (production of information on email accounts was precluded by the Stored Communications Act); *In re Vitro, S.A.B. de C.V.*, 473 B.R. at 132 (holding that a provision discharging non-debtor debts is manifestly against public policy); *In re Toft*, 453 B.R. 186 (Bankr. S.D.N.Y. 2011) (contemplated action was banned under U.S. wire-tapping law and comprehensive scheme of statutory protections); *In re Gold & Honey, Ltd.*, 410 B.R. 357 (Bankr. E.D.N.Y. 2009) (action taken in foreign proceeding were in defiance of the Bankruptcy Code's automatic stay provisions).

33.     The Canadian Proceeding and Chapter 15 Proceeding are designed to facilitate the continued operation, sale, and liquidation of cannabis assets and distribution of the resulting proceeds.  Kroll Decl., ¶ 15. This is a direct violation of federal law. It is undisputed that growing, selling, and operating a cannabis dispensary violates the federal CSA, 21 U.S.C. §§ 801-904. *See In re Johnson*, 532 B.R. 53, 56 (Bankr. W.D. Mich. 2015) ("The Debtor's marijuana business, though presumably authorized as a matter of state law, violates federal criminal law."). While several states have legalized cannabis for both medicinal and recreational use, cannabis "remains a Schedule I drug." *In re Basrah Custom Design, Inc.*, 600 B.R. 368, 379 (Bankr. E.D. Mich. 2019) (citing *Gonzalez v. Raich*, 545 U.S. 1, 14-15 (2005)). It remains a federal crime "to manufacture, distribute, or dispense, or possess with intent to manufacture, distribute, or dispense, a controlled

substance," including cannabis. 21 U.S.C. § 841(a)(1). Similarly, it remains a federal crime to knowingly open, rent, use, or maintain any place "for the purpose of manufacturing, distributing, or using" a controlled substance, or to manage or control any such place and intentionally profit from "the place for the purpose of unlawfully manufacturing, storing, distributing, or using a controlled substance." 21 U.S.C. § 856(a). The legalization of cannabis on the state level does not nullify the provisions of the CSA. *In re Rent-Rite Super Kegs W. Ltd.*, 484 B.R. 799, 804 (Bankr. D. Colo. 2012).

34.     Generally, debtors who operate businesses in violation of the CSA are not entitled to relief under the Bankruptcy Code. *In re Burton*, 610 B.R. 622, 639 (B.A.P. 9th Cir. 2020) (affirming dismissal of chapter 13 case where trustee or court would administer proceeds of marijuana related litigation); In *re Basrah Custom Design, Inc.*, 600 B.R. at 382 ("The actual purpose of filing and prosecuting this bankruptcy case is for the Debtor and its 100% shareholder to use this bankruptcy court, and the Bankruptcy Code, to assist them in obtaining a result that is contrary to federal criminal law under the Controlled Substances Act, and therefore contrary to federal public policy."); *In re Way to Grow, Inc.*, 597 B.R. 111, 131-32 (Bankr. D. Colo. 2018), *aff'd sub nom*, *Way to Grow, Inc. v. Inniss (in re Way to Grow, Inc.)*, 610 B.R. 338 (D. Colo.2019) ("This Court cannot enforce federal law in aid of the Debtors because Debtors' ordinary course activities constitute a continuing federal crime. The Court finds this is, inescapably, cause to dismiss this case under 11 U.S.C. § 1112(b)."); *In re Arenas*, 535 B.R. 845, 849-50 (B.A.P. 10th Cir. 2015) (holding "the debtors cannot obtain bankruptcy relief because their marijuana business activities are federal crimes"); *In re Rent-Rite Super Kegs West Ltd.*, 484 B.R. 799, 802-04 (Bankr. D. Colo. 2012) (finding cause to dismiss Chapter 11 case where 25% of debtor's revenue derived from leasing space to marijuana growers).

35.     While case law regarding the incongruity of the CSA and the Bankruptcy Code focuses on the other chapters of title 11, nothing in Chapter 15 exempts bankruptcy courts from this rule. The analysis often turns on whether in the process of the bankruptcy case the debtor, trustee, or court are implicated in the selling of cannabis assets and the distribution of proceeds of

cannabis assets. *See In re Blumsack*, 657 B.R. 505, 516-17 (B.A.P. 1st Cir. 2024) ("Bankruptcy relief is generally unavailable where the trustee 'will necessarily be required to possess and administer assets which are either illegal under the CSA or constitute proceeds of activity criminalized by the CSA.'") (quoting *In re Way to Grow, Inc.*, 597 B.R. at 120); *In re Arenas*, 535 B.R. at 853 ("[It] would be impossible for the Chapter 7 trustee to administer the Arenases' estate because selling and distributing the proceeds of the marijuana assets would constitute federal offenses."); *In re Johnson*, 532 B.R. at 56 ("First, federal judicial officers take an oath to uphold federal law, and countenancing the Debtor's continued operation of his marijuana business under the court's protection is hardly consistent with that oath."); *In re Rent-Rite Super Kegs West Ltd.*, 484 B.R. at 805 ("[A] federal court cannot be asked to enforce the protections of the Bankruptcy Code in aid of a Debtor whose activities constitute a continuing federal crime."). Courts have also determined that both a trustee and debtor in possession are precluded "from holding contraband or using proceeds of instrumentalities of federal criminal activity." *In re Johnson*, 532 B.R. at 67 (citing 28 U.S.C. § 959(b)).

36.     Recently, the Delaware District Court found that a Mexican proceeding that allowed for nonconsensual third party releases did not violate public policy in light of Supreme Court's holding in *Harrington v. Purdue Pharma LP*, 603 U.S. 204 (2024). *In re Credito Real S.A.B. de C.V., SOFOM, E.N.R.*, -- BR ---, 2026 WL 881444, at *8-9. This decision does not support the Debtors' request. The court noted that *Purdue* focused on statutory interpretation under provisions of Chapter 11. *Id.* at *9. However, Congress has not promulgated a statute explicitly barring nonconsensual third party releases. In contrast, the CSA expressly prohibits the actions being taken by Debtors and the Non-Debtor Stay Parties. This explicit violation of federal law is a violation of public policy under section 1506.

37.     Surprisingly, the Motion fails to address the impact of the CSA at all. Instead, they focus on the fundamental fairness of the CCAA and the Canadian Proceeding. However, the Debtors miss the mark. The fairness of the Canadian Proceeding and the CCAA are not at issue.

Rather, the issue is whether a cannabis business can continue to violate explicit federal law while receiving the benefits through Chapter 15 recognition.

38.     The Debtors attempt to distance themselves from cannabis while simultaneously seeking sweeping injunctive relief regarding the Non-Debtor Stay Parties, who operate cannabis related businesses. Further, the Debtors acknowledge that the assets of non-debtor entities will be sold and liquidated in the Canadian Proceeding, which includes cannabis assets. Motion, ¶ 63. The relief Debtors seek will frustrate the Bankruptcy Court's ability to administer the Chapter 15 proceeding as it requires the countenance of continued violations of the CSA. *See In re Quimonda AG Bankr. Litig.*, 433 B.R. at 570. This is precisely the violation of public policy that section 1506 seeks to avoid.

39.     Accordingly, recognition of the Canadian Proceeding must be denied as a violation of public policy.

**B. Stay and Injunctive Relief Against Non-Debtor Affiliates, Including the Non-Debtor Borrowers, Must Be Denied for Exceeding the Authority of Sections 1520 and 1521**

**i.     The Stay Provisions Do Not Protect Non-Debtor Entities**

40.     Even if the Court were to conclude that recognition is otherwise permissible, the relief sought as to the Non-Debtor Stay Parties must be denied. In providing for relief to a recognized Chapter 15 proceeding, the Bankruptcy Code draws a deliberate line between debtors and non-debtors. Section 1520 automatically applies upon recognition of a foreign main proceeding, including applying sections 361 and 362 "with respect to *the debtor and the property of the debtor* that is within the territorial jurisdiction of the United States." 11 U.S.C. § 1520(a) (emphasis added). Additionally, upon recognition, "where necessary to effectuate the purpose of this chapter and to protect the assets of the debtor or the interests of the creditors, the court may" grant appropriate relief. 11 U.S.C. § 1521(a). Such relief includes "staying the commencement or continuation of an individual action or proceeding concerning the *debtor's assets, rights, obligations or liabilities* to the extent they have not been stayed under section 1520(a)." 11 U.S.C. § 1521(a)(1) (emphasis added). Similarly, a court may also extend the relief granted under 11

U.S.C. § 1519(a) and grant "any additional relief that may be available to a trustee," subject to certain avoidance powers. 11 U.S.C. § 1521(a)(6)-(7). However, "[t]he court may grant relief under section 1519 or 1521, or may modify or terminate relief under section (c), *only if the interests of the creditors and other interested entities, including the debtor, are sufficiently protected.*" 11 U.S.C. § 1522(a) (emphasis added). "The purpose of this section is to ensure a balance between the relief that may be granted to the foreign representative and the interests of persons potentially affected by such relief." 1 Collier Int'l Bus. Insolvency Guide ¶ 9.12[1] (2023).

41.     The intersection of sections 1520, 1521, and 1522 make it abundantly clear that the afforded relief is afforded to the Chapter 15 debtor only. "The automatic stay only protects debtors, not non-debtor parties." *In re Forever 21, Inc.*, 623 B.R. 53, 63 (Bankr. D. Del. 2020) (citing *Brown v. Jevic*, 575 F.3d 322, 328 (3d Cir 2009)). "It is clear that, absent unusual circumstances, the automatic stay does not protect" non-debtor subsidiaries. *In re Qimonda AG*, 482 B.R. 879, 893 (Bankr. E.D. Va. 2012).

42.     The Non-Debtor Stay Parties are not property of the Debtors or assets of the Debtors. "[P]arent and subsidiary corporations are separate entities having separate liabilities." *In re Regency Holdings (Cayman), Inc.*, 216 B.R. 371, 375 (Bankr. S.D.N.Y. 1998) (citing *Mellon Bank, N.A. v Metro Communications, Inc.*, 945 F.2d 635, 643 (3d Cir 1991)). The Debtors are treating their subsidiaries as being under the jurisdiction of the Bankruptcy Court. *In re Winstar Commc'ns. Inc.*, 284 B.R. 40, 51 (Bankr. D. Del. 2002).

43.     The *Winstar* court considered whether it had jurisdiction over a complaint to transfer a non-debtor subsidiary's stock and noted:

> If the court were to find that this action was under the jurisdiction of the Bankruptcy Court, the decision would have the result of bringing every wholly owned subsidiary into every Bankruptcy case regardless of the circumstances and without the safeguards afforded by schedules, statements of financial affairs, notices to creditors, or meetings of creditors. Further, such a decision could result in debtors and others abusing the system by withholding from Bankruptcy or bringing into Bankruptcy subsidiaries in a revolving door fashion. Therefore, the court finds that the ownership of all of

11

the outstanding stock of WBC by the Trustee does not confer jurisdiction on the Bankruptcy Court to decide disputes involving WBC's assets.

*Id.*

### ii.     The Debtors Have Not Met the Burden to Extend Stay Protection to Non-Debtor Entities

44.     Given that the Non-Debtor Stay Parties are not protected by the enumerated relief in sections 1520 and 1521, the Debtors seek to extend the powers of the automatic stay to the Non-Debtor Stay Parties, including the Non-Debtor Borrowers, and enjoin any actions and other collection efforts against them. Section 1521 requires the Debtors to meet the injunction standards for relief sought under paragraphs (1), (2), (3), and (6) of section 1521(a). 11 U.S.C. § 1521(e). Injunctions against non-debtors are only granted in limited circumstances, "including (1) when the non-debtor and debtor enjoy such an identify of interest that the suit against the non-debtor is essentially a suit against the debtor, and (2) when the third party action will have an adverse impact on the debtor's ability to accomplish reorganization." *Vitro v. ACP Master, ltd. (In re Vitro)*, 455 B.R. 571, 580 (Bankr. N.D. Tex. 2011). Interestingly, neither case cited by the Debtors standards for the proposition that injunctions should be applied to non-debtor entities. *See Victrix S.S. Co., S.A. v. Salen Dry Cargo A.B.*, 825 F.2d 709, 711 (2d Cir. 1987) (deferring to Swedish bankruptcy proceeding and vacating the award of attachment against the foreign debtor); *In re Energy Coal S.P.A.*, 582 B.R. 619, 626-27 (Bankr. D. Del. 2018) (approving a plan injunction in favor of Chapter 15 debtor).

45.     Under the injunction standard, the Debtors bear the burden of showing (i) "a substantial likelihood of success on the merits;" (ii) irreparable harm to Debtors; (iii) that harm to Debtors outweighs harm to the non-debtors; and (iv) "injunctive relief would not violate public interest." *In re Forever 21, Inc.*, 623 B.R. at 64. A party seeking a preliminary injunction "has a substantial burden. They are not entered lightly." *In re Parlement Technologies, Inc.*, 661 B.R. 722, 728 (Bankr. D. Del. 2024). The Debtors cannot meet this burden.

*Likelihood of Success on the Merits*

46.     A likelihood for success on the merits turns on whether the Non-Debtor Stay Parties have a good chance of success of defending collection actions, such as collection actions by EWB against the Non-Debtor Borrowers. *In re Qimonda*, 482 B.R. at 894. Nothing in the Motion, nor in any pleading by the Debtors, indicates that the Non-Debtor Borrowers have a defense to any potential collection action by EWB. The Debtors acknowledge that the Non-Debtor Borrowers are indebted in an aggregate amount of approximately $40.4 million and that the Mortgages are secured by the Properties. Motion, ¶ 28. There is no evidence that the Non-Debtor Borrowers have a defense to EWB's potential enforcement of its rights under the Mortgages.

47.     A recent decision found that while the Supreme Court recently found that "bankruptcy courts lack the authority to grant *permanent* injunctive relief that bars creditors from asserting claims against non-debtor third parties," bankruptcy courts retain the authority to enter preliminary injunctions against third-party claims. *In re Parlement Technologies, Inc.* 661 B.R. at 727-28 (emphasis in the original). The *Parlement Technologies* court reframed the 'likelihood for success on the merits' prong as "the debtor's successful confirmation of a plan of reorganization." *Id.* at 727. Even utilizing this test, the Debtors have not met their burden. While the Debtors have expressed their intention to utilize a sale process in the Canadian Proceeding, the Debtors have not provided evidence that there is a likelihood that the reorganization plan will be confirmed. However, even if the Bankruptcy Court finds a likelihood of success on the merits as to confirmation of a plan in the Canadian Proceeding, the three remaining prongs weigh heavily in favor of EWB.

*Irreparable Harm*

48.     The Debtors have failed to meet their burden as to irreparable harm. "A key aspect in illustrating irreparable harm is demonstrating that the movant has no other adequate remedy at law." *In re Vitro*, 455 B.R at 581. Here, Debtors have other remedies at law, including defending any action on behalf of the Non-Debtor Stay Parties. *In re Qimonda AG*, 482 B.R. at 894-95. Moreover, the Non-Debtor Stay Parties can seek state court relief, such as through a receivership

or an assignment for the benefit of creditors, without invoking bankruptcy jurisdiction. Further, the NY Property is no longer operating. The Debtors have provided no evidence to show how the NY Property will be irreparably harmed by a foreclosure action.

*Balance of Harms*

49.     Any harm to the Debtors is substantially outweighed by the harm to EWB. Important, EWB's collateral is at risk of forfeiture due to the ongoing violations of the CSA. "All real property ... which is used, or intended to be used, in any manner or part, to commit, or to facilitate the commission of, a violation of [the CSA] punishable by more than one year's imprisonment" is subject to forfeiture. 21 U.S.C. § 881(a)(7). The Properties have been used, and in the case of the NJ Property and MD Property continue to be used, to facilitate violations of the CSA. Thus, EWB is being forced to bear the risk of total loss of its collateral in support of the ongoing violations of federal criminal law. *In re Rent-Rite Super Kegs W. Ltd.*, 484 B.R. at 805-06.

50.     Additionally, the NY Property no longer has operations. EWB's collateral has been removed from the NY Property. Moreover, it is unclear if the NY Property is properly insured at this time. Thus, EWB's collateral remains at risk. Finally, EWB is not receiving any payments or other form of adequate protection. These risks substantially outweigh any risks to the Debtors and Non-Debtor Stay Parties who have other available remedies.

*Public Interest*

51.     Finally, the relief sought violates the public interest. *See In re Vitro*, 455 B.R at 581-82 ("Extending the automatic stay or issuing an injunction for non-debtors contravenes a basic and compelling principle of federal bankruptcy law . . . If granted, precedent will be set that any foreign debtor can initiate insolvency proceedings solely for a parent holding company in a foreign jurisdiction get an injunction protecting non-debtor subsidiaries in the United States, and confirm a plan through insider votes leaving creditors in the United States with little recourse."); *In re Qimonda AG*, 482 B.R. at 896 (finding that the Foreign Administrator "has failed to overcome the fundamental principal that the automatic stay does not apply to a non-debtor."). The relief sought

14

by the Debtors does not seek the balance required by section 1522(a). The Debtors seek sweeping protections for non-debtor entities, but do not provide any protections to the non-debtor creditors The Debtors simply have not met their burden to force creditors to bear the burden of bankruptcy protections against non-debtor entities with none of the creditor protections provided by the Bankruptcy Code.

### iii. The Requested Relief Cannot Be Broader Than the Canadian Order

52. The Canadian Order provides that "until a real property lease is disclaimed in accordance with the CCAA, the Applications shall pay all amounts constitution rent or payable as rent under real property leases . . . or as otherwise may be negotiated between the Applicants and the landlord from time to time ("**Rent**"), for the period commencing from and including the date of this Order." Canadian Order, ¶ 11.

53. As to the Properties, the Non-Debtor Borrowers have assigned the respective leases and rents to EWB. At the Properties, the Non-Debtor Borrowers have leased the Properties to other Non-Debtor Stay Parties. Accordingly, such lessees are required to continue paying rent, which is property of EWB.

54. Section 1521 cannot protect those non-debtor tenants from their lease obligations. Such relief would be broader than the Canadian Order that the Debtors seek to recognize. Moreover, this would be in violation of section 1522, as it would not balance the protections to EWB.

### iv. The Non-Debtor Stay Parties Could Not Qualify for Hypothetical Chapter 15 Recognition

55. Essentially, the Debtors appear to want Chapter 15 protections for the entirety of the enterprise. If the Debtors want protection for the Non-Debtor Stay Parties, then they must filed Chapter 15 protection for them. Of course, such recognition could not be granted to the Non-Debtor Stay Parties.

56. A court's recognition determination is granted on an individual debtor by debtor basis even though a group of debtors may be a group entity. *In re Servicos de Petroleo*

15

*Constellation S.A.*, 600 B.R. 237, 244 (Bankr. S.D.N.Y. 2019). A "foreign main proceeding," which is defined in § 1502(4) as "a foreign proceeding pending in the country where the debtor has the center of its main interests" ("COMI"). 11 U.S.C. § 1502(4) (emphasis added). The COMI is presumed to be the place of registered offices unless evidence rebuts such presumption. *In re Bear Stearns*, 389 B.R. at 334-336. Importantly, "[t]he legislative history also indicates that the statutory presumption of section 1516(c) may be of less weight in the event of a serious dispute." *In re SPhinX, Ltd.*, 351 B.R. 103, 117 (Bankr. S.D.N.Y. 2006). "The presumption that place of the registered office is also the center of the debtor's main interest is included for speed and convenience where there is no serious controversy." H.R. Rep. 109-31, pt. 1, 109th Cong. 1st Sess. A 112-113 (2005). The "relevant principle . . . is that the COMI lies where the debtor conducts its regular business, so that the place is ascertainable by third parties." *Morning Mist Holdings Ltd. v. Kyrs* (*In re Fairfield Sentry Ltd.*), 714 F.3d 127, 130 (2d Cir. 2013); *see also In re SPhinX, Ltd.*, 351 B.R. at 119 ("[I]f third parties would objectively locate the administration of such a debtor's interests elsewhere, the presumption would be rebutted.").

57.    The Non-Debtor Stay Parties could not be recognized as hypothetical Chapter 15 debtors. The Non-Debtor Stay Parties were incorporated or formed in the United States. *See* Kroll Decl., Ex. A. The Non-Debtor Stay Parties operate in the United States, own property in the United States, operate under United States regulatory regimes, and incur debts through United States lenders. Entities that do not qualify for Chapter 15 in their own right cannot receive the functional benefits indirectly through section 1521. Granting the sweeping relief sought herein would amount to treating the Non-Debtor Stay Parties as Chapter 15 debtors without meeting the necessary requirements.

### C.  Section 1507(a) Does Not Allow for the Requested Relief

58.    Section 1507 does not provide an alternative route for the Debtors. Section 1507(a) provides that the court, "may provide additional assistance to a foreign representative under this title or other laws of the United States." 11 U.S.C. § 1507(a). If the relief is not "explicitly provided for" in those sections, courts "should then consider whether the requested relief falls more

generally under § 1521's grant of any appropriate relief." *In re Vitro S.A.B. de C.V.*, 701 F.3d 1031, 1054 (5th Cir. 2012) *cert dismissed*, 133 S. Ct. 1862 (2013). "Only if a court determines that the requested relief was not formerly available under § 304 should a court consider whether relief would be appropriate" under § 1507, "*consistent with the principles of comity.*" *Id.* at 1054-55 (emphasis added); *see also* 11 U.S.C. § 1509(b)(3).

59.    As discussed thoroughly herein, comity requires courts to "consider public policy and the prejudice to United States citizens." *In re BanCredit Cayman Ltd. (In Liquidation)*, No. 06-11026(SMB), 2007 Bankr LEXIS 3805, at *5-6 (Bankr. S.D.N.Y. Nov. 2, 2007) (citing *In re Treco*, 240 F.3d 148, 157 (2d Cir. 2001) ("It is implicit in the concept that deference should be withheld where appropriate to avoid the violation of the laws, public policies, or rights of the citizens of the United States.")); *see also SEC v. TCA Fund Mgmt. Grp. Corp.*, No. 20-21964-CIV-ALTONAGA/Goodman, 2022 WL 3334488, at *8-9 (S.D. Fla. Aug. 4, 2022), *appeal dismissed* 2024 WL 448385 (11th Cir. Feb. 6, 2024) ("[R]ecognition of foreign proceedings under Chapter 15 does not strip the Court of discretion as to which law applies . . . especially when doing so would compel a result not 'comparable' to that reached by federal law."). It is not uncommon for courts to deny relief in proceedings where recognition is inappropriate or such relief is inconsistent with United States law. *In re Glob. Cord Blood Corp.*, No. 22-11347 (DSJ), 2022 WL 17478530, at *1 (Bankr. S.D.N.Y. Dec. 5, 2022); *In re Basis Yield Alpha Fund*, 381 B.R. at 40; *In re BanCredit Cayman Ltd. (In Liquidation)*, 2007 Bankr LEXIS 3805, at *5.

60.    "Additional assistance" must be consistent with public policy and the protection of creditors. As discussed herein, the relief sought in this case violates federal law and therefore, is contrary to public policy and the rights of creditors of the Non-Debtor Stay Parties. Comity does not require bankruptcy courts to enforce foreign proceedings at the expense of federal law or creditors' rights.

## V.    CONCLUSION

WHEREFORE, for the reasons discussed herein and on the record in these proceedings, the Court should deny recognition of the Petition and deny any request to grant relief related to

17

non-debtor entities, including extension of the protections of the automatic stay and related injunctions, and provide EWB all other relief as is appropriate under law and equity.

DATED:  May 1, 2026

By:/s/*Jason C. Powell* (No. 3768)_____
JASON C. POWELL (NO. 3768)
THE POWELL FIRM, LLC
1813 N. Franklin St.
P.O. Box 289
Wilmington, DE 19899
Telephone: 302-650-1572
Email: jpowell@delawarefirm.com

and

By: */s/ Jeffrey K. Garfinkle*_____
Jeffrey K. Garfinkle (CA State Bar No. 153496)
Rebecca M. Wicks (CA State Bar No. 313608)
Buchalter LLP
18400 Von Karman Ave., #800
Irvine, CA 92612-0514
Telephone: (949) 760-1121
Email:  jgarfinkle@buchalter.com

*Attorneys for East West Bank, a California banking corporation*