# **Exhibit A**

**Execution Version**

**STIPULATION BETWEEN DEBTORS, CC GROUP, AND EAST WEST BANK**

The Cannabist Company Holdings, Inc. ("Parent Company") and the Cannabist Company Holdings (Canada) Inc. (the "Co-Issuer" and collectively with the Parent Company, the "Debtors"), and their subsidiaries, including the non-debtor affiliates expressly defined herein (each a "Subsidiary" and collectively with the Debtors, and such non-debtor affiliates, the "CC Group") and East West Bank ("EWB" and together with Debtors and the CC Group, the "Parties"), by and through their counsel, enter into the following stipulation (the "Stipulation"):

**RECITALS**

A.      Parent Company is a Canadian holding company and is the parent of its affiliate Debtor, the Co-Issuer, and the ultimate parent of the Subsidiaries. Parent Company is also the direct parent of non-debtor Subsidiary Columbia Care LLC, a Delaware limited liability company ("Columbia Care").

B.      EWB maintains a lender-borrower relationship with certain of the Subsidiaries pursuant to three separate loan facilities, as follows:

   a.  Columbia Care NY Realty LLC

       i.  Columbia Care is the direct parent of non-debtor Columbia Care NY Realty LLC, a New York limited liability company ("CC NY").

       ii.  On or about December 20, 2021, CC NY and EWB executed and delivered a Mortgage and Security Agreement and related loan documents in the original principal amount of $20,000,000 (the "NY Mortgage and Loan"). The NY Mortgage and Loan is secured by the real property located at 5784 Sound Avenue, Riverhead, NY 11901 (the "NY Property"). As of December 31, 2025, approximately $18,410,257 remains outstanding on the NY Mortgage and Loan.

       iii.  As additional security on the NY Mortgage and Loan, CC NY granted EWB (i) an Assignment of Deposit Account in respect of the deposit account

1

bearing the account number 8420007448, maintained by CC NY with EWB, which has a balance of $825,465 as of May 28, 2026; and (ii) an Assignment of Leases and Rents dated December 28, 2021.

iv. The obligations owing under the NY Mortgage and Loan are guaranteed by Parent Company.

b. <u>Columbia Care NJ Realty LLC</u>

i. Columbia Care is the direct parent of non-debtor Columbia Care NJ Realty LLC, a New Jersey limited liability company ("CC NJ").

ii. On or about June 2022, CC NJ executed and delivered a Mortgage, Security Agreement, Assignment of Leases and Rents and Fixture Filing and related loan documents to EWB in connection with a loan in original principal amount of $16,500,000 (the "NJ Mortgage and Loan"). The NJ Mortgage and Loan is secured by the real property located at 51 West Park Avenue, Vineland, NJ 08360 (the "NJ Property"). As of December 15, 2025, approximately $15,894,384 was outstanding under the NJ Mortgage and Loan.

iii. As additional security on the NJ Mortgage and Loan, CC NJ granted EWB (i) an Assignment of Deposit Account dated June 27, 2022 in respect of the deposit account bearing the account number 8420010210, maintained by CC NJ with EWB, which has a balance of $700,000 as of May 28, 2026; (ii) an Assignment of Rents and Leases dated June 29, 2022; and (iii) a Commercial Security Agreement dated June 27, 2022 granting EWB a security interest in all of CC NJ's present and after acquired personal property.

iv. The obligations owing under the NJ Mortgage and Loan are guaranteed by Parent Company.

**Execution Version**

    c. <u>Columbia Care MD Realty LLC</u>

        i. Columbia Care is the direct parent of non-debtor Columbia Care MD Realty LLC, a Maryland limited liability company ("CC MD" and collectively with CC NY and CC NJ, the "Non-Debtor Borrowers").

        ii. On or about August 9, 2023, CC MD executed and delivered a Deed of Trust, Assignment and Security Agreement, Promissory Note and related documents to EWB in the original principal amount of $6,250,000 (the "MD Mortgage and Loan" and collectively with the NY Mortgage and Loan and NJ Mortgage and Loan, the "Mortgages").  The MD Mortgage and Loan is secured by the real property located at 6797 Bowmans Crossing, Frederick, MD 21703 (the "MD Property" and collectively with the NY Property and the NJ Property, the "Properties"). As of December 31, 2025, approximately $6,117,966 was outstanding under the MD Mortgage and Loan.

        iii. As additional security on the MD Mortgage and Loan, CC MD granted EWB (i) a Cash Collateral, Escrow Pledge and Security Agreement dated as of August 9, 2023, in respect to the deposit account bearing the account number 8420012927, maintained by CC MD with EWB, which has a balance of $355,000 as of May 28, 2026; (ii) a General Security Agreement dated as of August 9, 2023, granting EWB a first priority security interest over all of CC MD's personal property; and (iii) an Assignment of Rents and Leases dated August 9, 2023.

        iv. The obligations owing under the MD Mortgage and Loan are guaranteed by Parent Company and Green Leaf Medical, LLC ("Green Leaf"), a non-debtor Delaware limited liability company.

C.    The Mortgages each require monthly payments to EWB.

D.      EWB holds several bank accounts in favor of the Non-Debtor Borrowers. Such accounts serve as additional collateral for the Mortgages.

E.      On March 24, 2026 (the "Commencement Date"), the Debtors commenced a proceeding under the CCAA (the "Canadian Proceeding"). Subsequent thereto, the Ontario Superior Court of Justice (Commercial List) (the "Canadian Court") granted a stay of proceedings in favor of the CC Group, subject to further extensions.  The CC Group includes the Non-Debtor Borrowers.

F.      On March 25, 2026, the Debtors commenced the proceeding under Chapter 15 of the United States Bankruptcy Code before the United States Bankruptcy Court for the District of Delaware (the "U.S. Court," and such proceeding, the "Chapter 15 Proceeding").

G.      On March 26, 2026, the U.S. Court entered an order enforcing the stay of proceedings against the CC Group granted by the Canadian Court.  Under that order, the US Court imposed the protections of section 362 and 365(e) of the Bankruptcy Code in favor of the Debtors and their Subsidiaries, including the Non-Debtor Borrowers.

H.      On or about April 2, 2026, the Canadian Court issued its *Amended and Restated Initial Order* in the Canadian Proceeding (the "Canadian Order"), which extended the stay of proceedings in favor of the CC Group, including the Non-Debtor Borrowers.

I.      On May 1, 2026, EWB filed its *Objection to Motion for Recognition of Foreign Proceeding and Request for Certain Related Relief* (the "Recognition Objection").

J.      On May 9, 2026, the U.S. Court entered an order granting final recognition of the Canadian Proceeding (the "Recognition Order"), subject to the reservation of EWB's rights set forth in paragraph 10 of the Recognition Order.

K.      The Parties have engaged in discussions and seek to resolve all outstanding disputes between them.

**STIPULATION**

Based upon the foregoing, the Parties stipulate and agree as follows:

1.      The Recitals are incorporated herein as though set forth fully.

The Reserve Accounts

2.      EWB shall be permitted to withdraw and apply funds from the EWB bank accounts bearing the account numbers 8420007448, 8420010210, 8420012927 (collectively, the "Reserve Accounts") to satisfy the accrued and outstanding monthly principal and interest payments owed to EWB as and when due under the Mortgages.

3.      Subject to the terms of this Stipulation, the Parties agree to permit EWB's right to withdraw and apply monthly principal and interest payments to be retroactive to March 31, 2026, including any amounts previously auto debited from the Operating Accounts (as defined herein) prior to the date of this Stipulation.

4.      Nothing herein shall limit EWB's rights with respect to the Reserve Accounts or other collateral under the applicable loan documents.

The Operating Accounts

5.      Within 10 days of the execution of this Stipulation (the "Execution Date"), the Debtors and Non-Debtor Borrowers shall provide a 13-week rolling budget for each of the Properties with weekly rolling updates (the "Budgets"). The Budgets shall include all property level expenses expected to be incurred or disbursed during this 13-week period and the revenue sources that will be used to pay these expenses (including any third party rental income). The Budgets shall be subject to the approval of EWB, which shall not be unreasonably withheld, conditioned, or delayed. The Debtors and Non-Debtor Borrowers are required to circulate new budgets no later than 14 days prior to the expiration of the Budgets, which shall be subject to EWB's approval that will not be unreasonably withheld, conditioned, or delayed. If EWB does not approve or disapprove a proposed Budget within five (5) business days of receipt, the prior approved Budget shall remain in effect until a new Budget is approved.

6.     The Debtors and the Non-Debtor Borrowers shall use the EWB bank accounts, bearing account numbers 8420007430, 8420010228, and 8420012950 (collectively, the "Operating Accounts") solely to pay operating expenses necessary to preserve the Properties as listed in the Budgets.  The Reserve Accounts shall not be used to fund the Operating Accounts. Subject to paragraph 7, the Operating Accounts shall be funded at the beginning of each month to cover the approved expenses on the Budgets.

7.     Until the CC Group has ceased occupying a Property and the stay has lifted in favor of EWB with respect to such Property, the CC Group shall fund all post-Commencement Date property expenses to the extent that revenue sources from such Property are insufficient. Following such period, the CC Group shall not be obligated to fund (directly or indirectly) such expenses, pursuant to this Stipulation. The Budgets should indicate revenue sources or monthly advances to pay property level expenses.

The Parent Accounts

8.     EWB is entitled to apply up to US$145,448.39 held in the EWB bank accounts bearing account numbers 8420015730 and 8420007919 (collectively, the "Parent Accounts") against any amounts owed and outstanding under the Mortgages. Entry of the Order approving this Stipulation constitutes authorization of such application.

9.     Subject to the Canadian Order, the Recognition Order, and the terms herein, nothing shall limit EWB's rights, including any applicable lien rights on the CC Group's accounts, including the Parent Accounts, Reserve Accounts, and Operating Accounts, or EWB's rights as to any other collateral, that existed prior to the Commencement Date under the loan documents.

10.     Except as set forth in paragraph 8, EWB is not entitled to set off any additional amounts held in the Parent Accounts.

The NY Property

11.     On July 1, 2026, or a date upon which the Parties agree, the CC Group and CC NY shall turn over the NY Property to EWB through an executed and notarized deed in lieu of foreclosure, substantially in the form attached as **Exhibit A**.

12.     The CC Group and CC NY shall cooperate in that turnover process, including executing and delivering all necessary documents.

13.     Any and all fixtures in the NY Property are the collateral of EWB. All equipment remaining in the NY Property at the time of turnover shall be conveyed to EWB (or its designee) and a bill of sale shall be executed, in the form attached as **Exhibit B**.

14.     For the avoidance of doubt, as of the Effective Date (as defined herein), EWB shall be permitted to apply funds in the Reserve Account affiliated with the NY Property to pay principal and interest payments, as and when due, under the NY Mortgage and Loan, any operating expenses for the NY Property, and any expenses needed to transition the NY Property to EWB, at EWB's discretion.

15.     At the time EWB disposes of the NY Property by way of conveyance to a third party, to the extent there are any excess funds in the NY Reserve Account at the time of such conveyance, EWB may utilize such excess funds in the NY Reserve Account to fund the principal and interest owed under the NJ Mortgage and Loan or the MD Mortgage and Loan or operating expenses for the NJ Property or the MD Property in the event the applicable Reserve Accounts for the Properties are depleted.

16.     The CC Group and CC NY shall ensure that property insurance shall remain in place on the NY Property, including by paying any necessary premiums, until the earlier of (i) the date it ceases to hold an insurable interest in NY Property such that it cannot maintain the current insurance policy; and (ii) the end of the current insurance term, provided that if EWB requests the CC Group and CC NY maintain the insurance following such date, the CC Group and CC NY shall use commercially reasonable efforts to maintain such insurance at EWB's sole cost and

expense.  The insurance premiums and/or insurance financing payments payable following June 1, 2026, shall be made using funds from the Reserve Accounts or EWB's separate funds.

17.    For the avoidance of doubt, the CC Group has ceased occupying the NY Property and has offered to turn such Property over to EWB and accordingly, shall not fund property expenses in respect to the NY Property for the period following June 1, 2026.

18.    Upon ultimate disposition of the NY Property, EWB agrees that it will not pursue a deficiency judgment against the Parent Company for any shortfall remaining after application of the net proceeds of such disposition and any available funds from the Reserve Accounts to the NY Mortgage and Loan secured by the NY Property.

The NJ Property

19.    The CC Group and CC NJ shall have until August 15, 2026, to sell the NJ Property or notify EWB that it intends to cease occupying the NJ Property (including as extended in accordance with the terms herein, the "NJ Deadline"). EWB and CC NJ shall have the discretion to extend the NJ Deadline by written agreement, including by email.

20.    EWB shall be permitted to immediately commence and serve a foreclosure action regarding the NJ Property. EWB agrees that it will forbear from seeking a judgment of foreclosure prior to the occurrence of the NJ Deadline, as set forth herein. Fifteen days prior to the occurrence of the NJ Deadline, EWB shall indicate how the NJ Property shall be turned over to EWB, either through a deed in lieu of foreclosure, substantially in the form attached as **Exhibit C**, or through a consensual judicial foreclosure.

21.    The CC Group and CC NJ acknowledge and agree that any sale, transfer, or other disposition of the NJ Property by the CC Group or CC NJ (a "NJ Sale") that does not result in payment in full of all amounts outstanding under the NJ Mortgage and Loan, including all accrued and unpaid principal, interest, fees, costs, and other obligations owing thereunder (collectively, the "NJ Payoff Amount"), from the proceeds of such NJ Sale or from other available funds shall

require EWB's consent prior to the closing of the NJ Sale and no such consent shall be implied from any course of dealing or delay by EWB.

22.    The CC Group and CC NJ shall cooperate in that turnover process, including executing and delivering all necessary documents, provided that EWB shall provide the CC Group and CC NJ up to (i) sixty days after the NJ Deadline if the NJ Property is sold, or (ii) 30 days after the NJ Deadline if the NJ Property is abandoned or foreclosed, to transition out of the NJ Property.

23.    If the CC Group and CC NJ wish to extend the NJ Deadline for additional one-month periods, the CC Group and CC NJ are required to (i) notify EWB in writing of their intent to extend the NJ Deadline, (ii) remit the monthly principal and interest payments for that particular month, including by utilizing any remaining amounts in the applicable Reserve Account to the NJ Property; and (iii) pay all operating expenses related to the NJ Property, including funding a tax reserve and maintaining property insurance. Once the NJ Deadline has occurred and no further extensions have been obtained, EWB shall be permitted to obtain a judgment for the NJ Property and conduct a foreclosure sale.

24.    For the avoidance of doubt, as of the Effective Date of this Stipulation, EWB shall be permitted to apply funds in the Reserve Account affiliated with the NJ Property to pay principal and interest payments, as and when due, under the NJ Mortgage and Loan, any operating expenses for the NJ Property, and any expenses needed to transition the NJ Property to EWB, at EWB's discretion.

25.    At the time EWB disposes of the NJ Property by way of conveyance to a third party, to the extent there are any excess funds in the NJ Reserve Account at the time of such conveyance, EWB may utilize such excess funds in the NJ Reserve Account to fund the principal and interest owed under the NY Mortgage and Loan or the MD Mortgage and Loan or operating expenses for the NY Property or the MD Property in the event the applicable Reserve Accounts for such Properties are depleted.

9

26. Any and all fixtures in the NJ Property are the collateral of EWB. All equipment remaining in the NJ Property at the time of turnover shall be conveyed to EWB (or its designee) and a bill of sale shall be executed, in the form attached hereto as **Exhibit D**.

27. The third party leases in the NJ Property are the collateral of EWB and, and at the election of EWB, shall be assigned to EWB (or its designee) pursuant to the form of Assignment of Leases attached hereto as **Exhibit E**.

28. Within fifteen (15) business days of the Effective Date, CC NJ must deliver an offer notice (the "Offer Notice") to Cumberland County Improvement Authority ("CCIA"), in accordance with Article 11 of the Ground Lease Agreement between CC NJ and CCIA dated May 4, 2022 (the "CCIA Lease").

29. The Offer Notice must be an irrevocable offering to sell the NJ Property to CCIA for an offer price totaling the balance owed under the NJ Mortgage and Loan, including all fees and interest, and closing costs.

30. If CCIA exercises its right of first refusal within 30 days of the Offer Notice, as contemplated by the CCIA Lease, the CC Group and CC NJ must inform EWB within one (1) business day of such acceptance, and thereafter CC NJ shall proceed to sell the NJ Property to CCIA pursuant to the terms of the Offer Notice and the CCIA Lease. The NJ Deadline shall be extended to the extent needed to allow CCIA to close its acquisition of the NJ Property pursuant to the terms of the Offer notice and the CCIA Lease. CC NJ shall not terminate modify or amend any terms or conditions of the sale transaction with CCIA without EWB's express written consent, which may be withheld in EWB's sole and absolute discretion. Provided that CCIA and CC NJ perform their respective obligations to purchase and sell the NJ Property as described in the CCIA Lease, EWB shall release its lien against the NJ Property in exchange for payment in full of the NJ Mortgage and Loan at the closing of such transaction.

31. If CCIA does not exercise its right of first refusal within 30 days of the Offer Notice, then EWB shall proceed as otherwise described in Paragraph 19 et seq. of this Stipulation.

32.     The CC Group and CC NJ shall ensure that property insurance shall remain in place on the NJ Property, including by paying any necessary premiums, until the earlier of (i) the date it ceases to hold an insurable interest in NJ Property such that it cannot maintain the current insurance policy; and (ii) the end of the current insurance term, provided that if EWB requests the CC Group and CC NJ maintain the insurance following such dates, the CC Group and CC NJ shall use commercially reasonable efforts to maintain such insurance at EWB's sole cost and expense. After the CC Group has ceased occupying the NJ Property and the stay has lifted in favor of EWB with respect to the NJ Property, the applicable insurance premiums and/or insurance financing payments shall be made using funds from the Reserve Accounts or EWB's separate funds.

33.     Upon ultimate disposition of the NJ Property, EWB agrees that it will not pursue a deficiency judgment against the Parent Company for any shortfall remaining after application of the net proceeds of such disposition and any available funds from the Reserve Accounts to the NJ Mortgage and Loan secured by the NJ Property.

The MD Property

34.     The CC Group and CC MD shall have 150 days from the Execution Date to sell the MD Property (including as extended in accordance with the terms herein, the "MD Sale Deadline"). EWB and CC MD shall have the discretion to extend the MD Sale Deadline by written agreement, including by email.

35.     EWB shall be permitted to immediately commence and serve a foreclosure action. EWB agrees that it will forbear from seeking a judgment of foreclosure prior to the occurrence of the MD Sale Deadline, as set forth herein. Fifteen days prior to the occurrence of the MD Sale Deadline, EWB shall indicate how the MD Property shall be turned over to EWB, either through a deed in lieu of foreclosure, substantially in the form attached as **Exhibit F**, or through a consensual judicial foreclosure.

36.     The CC Group and CC MD acknowledge and agree that any sale, transfer, or other disposition of the MD Property by the CC Group or CC MD (a "MD Sale") that does not result in

11

payment in full of all amounts outstanding under the MD Mortgage and Loan, including all accrued and unpaid principal, interest, fees, costs, and other obligations owing thereunder (collectively, the "MD Payoff Amount"), from the proceeds of such MD Sale or from other available funds shall require EWB's consent prior to the closing of the MD Sale and no such consent shall be implied from any course of dealing or delay by EWB.

37.     If the CC Group and CC MD wish to continue with their marketing and sale of the MD Property after the MD Sale Deadline, for additional one-month periods, the CC Group and CC MD are required to (i) notify EWB in writing of their intent to extend the MD Sale Deadline, and (ii) remit the monthly principal and interest payments for that particular month, including by utilizing any remaining amounts in the applicable Reserve Account to the MD Property; and (iii) pay all operating expenses related to the MD Property, including funding a tax reserve. Once the MD Sale Deadline has occurred and no further extensions have been obtained, EWB shall be permitted to obtain a judgment for the MD Property and conduct a foreclosure sale.

38.     For the avoidance of doubt, as of the Effective Date of this Stipulation, EWB shall be permitted to apply the funds in the Reserve Account affiliated with the MD Property to pay principal and interest payments, as and when due, under the MD Mortgage and Loan, any operating expenses for the MD Property, and any expenses needed to transition the MD Property to EWB, at EWB's discretion.

39.     At the time EWB disposes of the MD Property by way of conveyance to a third party, to the extent there are any excess funds in the MD Reserve Account at the time of such conveyance, EWB may utilize such excess funds in the MD Reserve Account to fund the principal and interest owed under the NY Mortgage and Loan or the NJ Mortgage and Loan or operating expenses for the NY Property or the NJ Property in the event the applicable Reserve Accounts for the Properties are depleted.

40.      Any and all fixtures in the MD Property are the collateral of EWB.   All equipment remaining in the MD Property at the time of turnover shall be conveyed to EWB (or its designee) and a bill of sale shall be executed, in the form attached hereto as **Exhibit G**.

41.      The CC Group and CC MD shall ensure that property insurance shall remain in place on the MD Property, including by paying any necessary premiums, until the earlier of (i) the date it ceases to hold an insurable interest in MD Property such that it cannot maintain the current insurance policy; and (ii) the end of the current insurance term, provided that if EWB requests the CC Group and CC MD maintain the insurance following such dates, the CC Group and CC MD shall use commercially reasonable efforts to maintain such insurance at EWB's sole cost and expense. After the CC Group has ceased occupying the MD Property and the stay has lifted in favor of EWB with respect to the MD Property, the applicable insurance premiums and/or insurance financing payments shall be made using funds from the Reserve Accounts or EWB's separate funds.

42.      Upon ultimate disposition of the MD Property, EWB agrees that it will not pursue a deficiency judgment against the Parent Company or Green Leaf for any shortfall remaining after application of the net proceeds of such disposition and any available funds from the Reserve Accounts to the MD Mortgage and Loan secured by the MD Property.

Withdrawal of Recognition Objection and Default Remedies

43.      Within five days of the Effective Date of this Stipulation, EWB shall file a notice of withdrawal of the Recognition Objection with the U.S. Court.

44.      Provided that Debtors and the CC Group comply with all terms of this Stipulation, EWB will not object to or seek to modify or lift the stay in the Canadian Proceeding and Chapter 15 Proceeding, other than as contemplated herein.

45.      To the extent the Debtors or the CC Group default under any term of this Stipulation (a "Default"), including, without limitation, failing to pay any amounts when due under the Mortgages or to fund operating expenses for the Properties to the extent required herein, EWB

13

shall provide written notice of such Default (a "Default Notice"), with a copy to the undersigned counsel to the CC Group via email. Upon receipt of a Default Notice, the Debtors and the CC Group shall have a period of five (5) business days to cure the Default (the "Cure Period"); provided, however, that no Cure Period shall apply to (i) failure to timely make any payment when due after the occurrence of two prior payment Defaults, or (ii) any Default that, by its nature, is not capable of cure.

46.     If a Default is not cured within the applicable Cure Period, the automatic stay provisions of section 362 of the Bankruptcy Code and any stay, injunction, or similar relief imposed by the U.S. Court or the Canadian Court shall, without further notice, application, motion, hearing, or order, be deemed automatically lifted and vacated to the extent necessary to permit EWB to exercise all rights and remedies with respect to the applicable Property and related collateral, including foreclosure and enforcement of its liens.

47.     If the Debtors or any member of the CC Group fails to timely execute and deliver any deed in lieu of foreclosure or other conveyance document required under this Stipulation with respect to any Property, EWB may apply to the U.S. Court for entry of an order directing the conveyance of such Property to EWB (or its designee).

48.     The CC Group agrees that monetary damages are not an adequate remedy to the failure to timely execute and deliver any deed in lieu of foreclosure or other conveyance document required herein and acknowledge that EWB shall be entitled to seek specific performance as a remedy.

49.     Upon such application, the CC Group agrees that it will not object on the basis that the U.S. Court does not have authority to (i) divest title to such Property from the applicable member of the CC Group and vest such title in EWB (or its designee), and (ii) direct that any act required to effectuate such transfer be performed by the U.S. Court or a person appointed by the U.S. Court, including the execution, acknowledgment, and delivery of any deed or other conveyance document.

14

Termination of All Affiliated Leases

50.     On the date that any Property is turned over to EWB or abandoned, all leases with respect to such Property between the owner of such Property and an affiliate of the Debtors are terminated and such affiliates shall vacate the Property.

Limited Stay Relief to Effectuate Stipulation

51.     The automatic stay provisions of section 362 and any other restriction or injunction imposed by an order of the U.S. Court or Canadian Court or by law shall be modified and vacated without further notice, application, motion, hearing, or order of the Court to the extent necessary to permit EWB to perform any act authorized or permitted under this Stipulation. If a court order is necessary to lift the stay or injunction, the Debtors shall immediately obtain the necessary court orders, and any approval orders entered by the U.S. Court and Canadian Court shall expressly authorize and implement the relief contemplated herein.

Reservation of Rights

52.     Except as expressly set forth herein, nothing in this Stipulation shall be deemed to waive, modify, impair, or limit any rights, remedies, claims, liens, defenses, or causes of action of EWB under the loan documents, applicable law, or otherwise, all of which are expressly reserved.

Transfer Taxes

53.     EWB shall be solely responsible for the cost and payment of any real property transfer tax, whether payable to the State of New York, the State of New Jersey, the State of Maryland, or any county or other municipality, arising in connection with the conveyance of the Properties; provided that EWB shall be entitled to utilize the Reserve Account for the applicable property for the payment of such real property transfer taxes.

Covenant Not to Sue

54.     Provided that the Debtors and the CC Group comply with all terms of this Stipulation, EWB on behalf of itself and its successors and assigns, hereby covenants and agrees (the "Covenant Not to Sue") not to directly or indirectly sue, commence, assert, bring, pursue,

**Execution Version**

prosecute or file in any court or other tribunal or forum, in any jurisdiction, any suit, action, litigation, complaint, counterclaim, cross claim, cross complaint, third party complaint, demand for arbitration or mediation, objection, or other pleading (collectively, a "Suit") against any member of the CC Group and its managers, directors and officers, including with respect to the Mortgages, the Properties and/or the transactions contemplated by this Stipulation, including in the Canadian Proceeding or Chapter 15 Proceeding, except for the individual foreclosure proceedings expressly contemplated in paragraphs 20 and 35 herein and for specific performance of this Stipulation (collectively, the "Claims"). EWB on behalf of itself and its successors and assigns hereby covenants and agrees not to join or participate in any Suit brought by third parties with respect to any Claims.

55.     EWB represents that it has not assigned any Claims EWB may have against CC Group to any other party or affiliate of EWB.

56.     The Covenant Not to Sue shall inure to the benefit of and be binding upon EWB, EWB's successors and assigns and CC Group and their respective successors and assigns, including, without limitation, any assignee or transferee of the Mortgages.

57.     If any provisions of the Covenant Not to Sue are determined by a court of competent jurisdiction to be invalid or unenforceable, in whole or in part, the remaining provisions, and any partially invalid or unenforceable provisions, to the extent valid and enforceable, shall nevertheless be binding and valid and enforceable.

Releases

58.     In connection with the turnover of each of the Properties (either through a deed in lieu of foreclosure or consensual judicial foreclosure, as applicable), the CC Group and the respective Non-Debtor Borrower shall deliver to EWB for the Mortgage applicable to the

respective Property, an executed release (each, a "Lender Release"), substantially in the form attached as **Exhibit H**.

59.     In connection with the turnover of each of the Properties (either through a deed in lieu of foreclosure or consensual judicial foreclosure, as applicable), EWB shall deliver to the CC Group and the respective Non-Debtor Borrower for the Mortgage applicable to the respective Property, an executed release (each, a "Guarantor Release," and together with the Lender Release, the "Releases"), substantially in the form attached as **Exhibit I**.

60.     In the event the Properties are turned over to EWB or EWB's designee as contemplated herein, subject to the applicable Release and Covenant Not to Sue, the Mortgages shall remain in full force and effect on each of the Properties.

Other Rights and Matters

61.     The Stipulation shall be subject to the approval of the U.S Court and the Canadian Court. This Stipulation shall become effective subject to approval of the U.S. Court and the Canadian Court (the "Effective Date").

62.     Both the U.S. Court and Canadian Court shall have jurisdiction to enforce the terms of this Stipulation.

63.     This Stipulation may be executed in counterparts, all of which taken together shall constitute one and the same instrument. The Parties may execute this Stipulation by signing any such counterpart and delivering such counterpart by facsimile, electronically or otherwise.

64.     Each of the undersigned represents and warrants that it has full and requisite power and authority to execute and deliver this Stipulation. The Parties are authorized, empowered and directed to execute and deliver all other agreements, instruments and documents and take any and all other actions in order to effectuate this Stipulation.

17

DATED:  June 12, 2026                    By: */s/ Jason C. Powell*
                                         JASON C. POWELL (NO. 3768)
                                         THE POWELL FIRM, LLC
                                         1813 N. Franklin St.
                                         P.O. Box 289
                                         Wilmington, DE 19899
                                         Telephone: 302-650-1572
                                         Email: jpowell@delawarefirm.com

      and

By: */s/ Jeffrey K. Garfinkle*
Jeffrey K. Garfinkle (CA State Bar No. 153496)
Rebecca M. Wicks (CA State Bar No. 313608)
Buchalter LLP
18400 Von Karman Ave., #800
Irvine, CA 92612-0514
Telephone: (949) 760-1121
Email:  jgarfinkle@buchalter.com

*Attorneys for East West Bank, a California banking corporation*

**Execution Version**

DATED:  June 12, 2026

By: */s/ Zachary I. Shapiro*
RICHARDS, LAYTON & FINGER,
P.A. Zachary I. Shapiro (No. 5103)
Brendan J. Schlauch (No. 6115) Zachary
J. Javorsky (No. 7069)
920 North King Street
Wilmington, DE 19801
Telephone: 302-651-7700
Email: shapiro@rlf.com
schlauch@rlf.com
javorsky@rlf.com

and

WEIL, GOTSHAL & MANGES LLP
David J. Cohen (admitted *pro hac vice*)
1395 Brickell Avenue, Suite 1200
Miami, Florida 33131
Telephone: 305-577-3100
Email:  davidj.cohen@weil.com

and

WEIL GOTSHAL & MANGES LLP
Garrett A. Fail (admitted *pro hac vice*)
Alexander P. Cohen (admitted *pro hac vice*)
Andrew J. Clarke (admitted *pro hac vice*)
767 Fifth Avenue
New York, New York 10153
Telephone: 212-310-8000
Email:  garrett.fail@weil.com
Alexander.cohen@weil.com
Andrew.clarke@weil.com

*Attorneys for the Debtors and the CC Group*

## <u>Exhibit A</u>

**New York Deed in Lieu of Foreclosure**

<u>RECORDING REQUESTED BY AND WHEN
RECORDED RETURN TO:</u>

Buchalter LLP
1000 Wilshire, 15th Floor
Los Angeles, California 90017
Attention:  J. David Hitchcock, Esq.

<u>MAIL ALL TAX STATEMENTS TO:</u>

EWB-III, LLC
c/o East West Bank
135 N. Los Robles Ave., 8th Floor
Pasadena, CA 91101.
Attention: Bo Zoubeidi

APN: [_____]                    SPACE ABOVE THIS LINE FOR
                                                RECORDER'S USE

**[BARGAIN AND SALE DEED / DEED IN LIEU OF FORECLOSURE]**

THIS [BARGAIN AND SALE DEED / DEED IN LIEU OF FORECLOSURE] (this "**Deed**"), made the
_____ day of _____, 2026, between Columbia Care NY Realty LLC, a New York limited
liability company ("**Grantor**"), whose address is 321 Billerica Road, Suite 204, Chelmsford,
Massachusetts 01824 and EWB-III, LLC a California limited liability company ("**Grantee**"), whose
address is c/o 135 N. Los Robles Ave., 8th Floor, Pasadena, CA 91101.

WITNESSETH, that Grantor in consideration of Ten and 00/100 Dollars ($10.00) paid by Grantee, does
hereby grant and release unto Grantee, the heirs or successors and assigns of Grantee forever,

ALL that certain plot, piece of parcel of land, with the buildings and improvements thereon erected,
situate, lying and being as described in the attached <u>Exhibit A</u> (the "**Premises**").

SUBJECT TO current real property taxes and all unpaid non-delinquent general and special taxes, bonds
and assessments; all liens, covenants, conditions, reservations, rights, easements, interests, rights of way,
and restrictions of public record; all leases and any other occupancy agreements in effect; all zoning
ordinances and regulations and any other laws, ordinances or governmental regulations restricting or
regulating the use, occupancy or enjoyment of the Premises; and all matters visible upon or about the
Premises or that would be disclosed by an accurate survey of the Premises (the "**Permitted Exceptions**").

TOGETHER with all right, title and interest, if any, of Grantor in and to any streets and roads abutting the
Premises to the center lines thereof;

TOGETHER with the appurtenances and all the estate and rights of Grantor in and to said Premises;

TO HAVE AND TO HOLD the Premises herein granted unto Grantee the heirs or successors and assigns of Grantee forever subject to the Permitted Exceptions.

AND Grantor, in compliance with Section 13 of the Lien Law, covenants that Grantor will receive the consideration for this conveyance and will hold the right to receive such consideration as a trust fund to be applied first for the purpose of paying the costs of the improvement and will apply the same first to the payment of the cost of the improvement before using any part of the total of the same for any other purpose.  The word "party" shall be construed as if it read "parties" whenever the sense of this Indenture so requires.

Grantor declares that this Deed is an absolute conveyance, and not a mortgage, deed of trust or security device of any kind; that possession of the real property has been or will be surrendered to Grantee in connection with this transaction; that this Deed is freely and fairly given for a fair and adequate consideration.

Grantee is the current beneficiary of that certain Mortgage and Security Agreement dated as of December 28, 2021, executed by Grantor to East West Bank, an affiliate of Grantee, recorded April 27, 2022 in the Official Records of Suffolk County in Liber 23411 Page 216 (as amended, modified, restated, assigned or in effect from time to time, "**Security Instrument**"), encumbering the Premises.

The true consideration for this conveyance is set forth in the terms of the agreement between Grantee, Grantor, and Grantor's related parent companies and affiliates, The Cannabist Company Holdings, Inc. and the Cannabist Company Holdings (Canada, Inc) (collectively with The Cannabist Company Holdings, Inc. the "Debtors") as reflected in the Stipulation Between Debtors, CC Group, and East West Bank which was approved on ___, 2026 by the Ontario Superior Court of Justice (Commercial List) in the proceeding commenced by the Debtors under the Companies' Creditors Arrangement Act (CCAA); provided, however, that Grantee will not be deemed to have accepted this Deed unless and until this Deed is recorded at the request of Grantee or Grantee's attorneys.

Grantor waives, surrenders, and relinquishes any equity of redemption and statutory rights of redemption that Grantor may have in connection with the Premises and the Security Instrument (defined above). Grantor and Grantor's heirs, successors, and assigns will be forever estopped from asserting that Grantor had, on the date of the Security Instrument, an estate or interest in the Premises less than a fee-simple interest in the whole of the Premises, and this Deed will pass any and all after-acquired title.

This Deed does not effect a merger of the fee ownership and the lien of the Security Instrument. The fee and the lien will hereafter remain separate and distinct. Grantee reserves its right to foreclose its Security Instrument at any time as to any party with any claim, interest, or lien on the Premises. The debt secured by the Security Instrument will not be deemed satisfied by this Deed.

Executed as of this ____ day of _____, 2026.

*[Remainder of Page Intentionally Blank*; *Grantor Signature Page Follows]*

**GRANTOR:**

Columbia Care NY Realty LLC,
a New York limited liability company

By: _____
Name:
Its:

[Signature Page to Grand Deed / Deed in Lieu of Foreclosure]

STATE OF _____ ]

                       ] ss.

COUNTY OF _____ ]

       On the _____ day of _____ in the year of 2026 before me, the undersigned, personally appeared _____, the _____ of Columbia Care NY Realty LLC, a New York limited liability company, personally known to me or proved to me on the basis of satisfactory evidence to be the individual whose name is subscribed to the within instrument and acknowledged to me that he/she executed the same in his/her capacity, and that by his/her signature on the instrument, the limited liability company on behalf of which the individual acted, executed the instrument, and that such individual made such appearance before the undersigned in the City of _____ in the State of _____.

                                     _____

                                     Notary Public

My Commission Expires:

_____

[Acknowledgment Page to Grand Deed / Deed in Lieu of Foreclosure]

## Exhibit A

### Real Property Legal Description

ALL that certain plot, piece or parcel of land, situate, lying and being at Jamesport, Town of Riverhead, County of Suffolk and State of New York, more particularly bounded and described as follows:

BEGINNING at a point on the northerly side of Sound Avenue, which said point is 1,810 feet more or less East from the intersection of the northerly side of Sound Avenue with the easterly side of Pier Avenue;

RUNNING THENCE from said point or place of beginning North 19 degrees 20 minutes 09 seconds West 1147.82 feet to a point;

RUNNING THENCE North 20 degrees 49 minutes 09 seconds West 1477.36 feet to a point;

RUNNING THENCE North 21 degrees 03 minutes 49 seconds West 901.08 feet to a point;

RUNNING THENCE North 69 degrees 20 minutes 00 seconds East 421.76 feet to a point;

RUNNING THENCE South 20 degrees 40 minutes 00 seconds East 3554.86 feet to a point and the northerly side of Sound Avenue;

RUNNING THENCE South 73 degrees 06 minutes 40 seconds West 439.20 feet to the point or place of BEGINNING.

TOGETHER with the right of way described in a Deed dated March 24, 1986 and recorded on April 3, 1986 at Liber 10010 Page 321 in the Suffolk County Clerk's Office.

**<u>Exhibit B</u>**

**New York Assignment and Bill of Sale**

## ASSIGNMENT AND BILL OF SALE

**THIS ASSIGNMENT AND BILL OF SALE** (hereinafter referred to as this "**Assignment**") is given this _th day of __, 2026, by Columbia Care NY Realty LLC, a New York limited liability company ("**Assignor**") to EWB-III, LLC a California limited liability company (hereinafter referred to as the "**Assignee**").

## R E C I T A L S:

**WHEREAS**, the Assignor and the Assignee are parties to a certain Stipulation between Debtors, CC Group and East West Bank approved by the Ontario Superior Court of Justice (Commercial List) on ____, 2026 (hereinafter referred to as the "**Stipulation**"), which provides, among other things, for the conveyance by the Assignor to the Assignee of that certain land described on Exhibit "A-1" attached hereto and made a part hereof (hereinafter referred to as the "**Land**" and hereinafter the Land, together with all real and personal property appurtenant thereto or associated therewith, and all improvements thereon, shall be collectively referred to as the "**Property**") pursuant to that certain [Bargain and Sale Deed/Deed in Lieu of Foreclosure] dated concurrently herewith; and

**WHEREAS**, it is the desire of the Assignor hereby to sell, assign, transfer, and convey to the Assignee all of the Assignor's rights, title, and interests in and to the below described items related to the Property.

**NOW, THEREFORE,** in consideration of the premises, and other good and valuable consideration, the receipt and sufficiency of which are hereby acknowledged, and intending to be legally bound hereby, the Assignor does hereby assign, transfer, set over, and deliver to the Assignee all of the Assignor's rights, title, and interests in and to the following (hereinafter collectively referred to as the "**Assigned Properties**"), in each case free and clear of any and all liens, encumbrances, and other interests of third parties (other than security interests in favor of Assignee):

all materials, machinery, apparatus, equipment, fittings, fixtures, goods, chattels, and articles of personal property, which is attached to, located on or used in connection with the Property;

general intangibles used in the operation of the Property;

all the reversion or reversions, remainder or remainders, rents, revenues, issues, income and profits of all or any part of the Property;

all books and records (including, without limitation, accounting records, operating statements, files, reports, surveys or budgets) relating to the operation of the Property; and

all site plans, surveys, soil and substrata studies, architectural renderings, plans and specifications, engineering plans and studies, floor plans, landscape plans and all other plans, diagrams and studies of any kind, if any, in the Assignor's possession or available to the Assignor and which relate to the Property.

**TO HAVE AND TO HOLD** the Assigned Properties unto the Assignee and the Assignee's successors and assigns forever.

The Assignor and the Assignee hereby further agree as follows:

1.      All of the terms, agreements, covenants and conditions set forth herein shall be binding upon and shall inure to the benefit of the parties and their respective successors and assigns.

2.      Words and phrases defined in the Stipulation shall have the same meanings herein.

3.      Nothing herein contained shall be deemed to limit or restrict the properties, assets or rights conveyed, assigned or transferred to or acquired by the Assignee from the Assignor under or by virtue of any other conveyance or deed respecting the Property.

4.      If any term, covenant or condition of this Assignment shall be held to be invalid, illegal or unenforceable in any respect, this Assignment shall be construed without such provision.

5.      This Assignment shall be governed by and construed and enforced in accordance with the laws of the State of New York.

**[REMAINDER OF PAGE INTENTIONALLY LEFT BLANK]**

Assignment and Bill of Sale

**IN WITNESS WHEREOF**, the Assignor has executed this Assignment and such Assignment has been accepted by the Assignee, all as of the date first above written.

**<u>ASSIGNOR:</u>**

Columbia Care NY Realty LLC,
a New York limited liability company

By: _____
Name:
Its:

**<u>ACCEPTED BY ASSIGNEE:</u>**

EWB-III, LLC,
a California limited liability company

By: _____
Name: _____
Title: _____

Assignment and Bill of Sale

## EXHIBIT "A-1"

## LEGAL DESCRIPTION -- LAND

ALL that certain plot, piece or parcel of land, situate, lying and being at Jamesport, Town of Riverhead, County of Suffolk and State of New York, more particularly bounded and described as follows:

BEGINNING at a point on the northerly side of Sound Avenue, which said point is 1,810 feet more or less East from the intersection of the northerly side of Sound Avenue with the easterly side of Pier Avenue;

RUNNING THENCE from said point or place of beginning North 19 degrees 20 minutes 09 seconds West 1147.82 feet to a point;

RUNNING THENCE North 20 degrees 49 minutes 09 seconds West 1477.36 feet to a point;

RUNNING THENCE North 21 degrees 03 minutes 49 seconds West 901.08 feet to a point;

RUNNING THENCE North 69 degrees 20 minutes 00 seconds East 421.76 feet to a point;

RUNNING THENCE South 20 degrees 40 minutes 00 seconds East 3554.86 feet to a point and the northerly side of Sound Avenue;

RUNNING THENCE South 73 degrees 06 minutes 40 seconds West 439.20 feet to the point or place of BEGINNING.

TOGETHER with the right of way described in a Deed dated March 24, 1986 and recorded on April 3, 1986 at Liber 10010 Page 321 in the Suffolk County Clerk's Office.

## Exhibit C

**New Jersey Deed in Lieu of Foreclosure**

NEW CONSTRUCTION

Prepared by:

Buchalter LLP
1000 Wilshire, 15th Floor
Los Angeles, California 90017
Attention:  J. David Hitchcock, Esq.

Record and Return to:

Buchalter LLP
1000 Wilshire, 15th Floor
Los Angeles, California 90017
Attention:  J. David Hitchcock, Esq.


**[SPECIAL WARRANTY DEED/DEED IN LIEU OF FORECLOSURE]**

THIS [SPECIAL WARRANTY DEED/DEED IN LIEU OF FORECLOSURE] (this "**Deed**") is made the __th day of ___, 2026, between:

Columbia Care NJ Realty LLC, a New Jersey limited liability company ("**Grantor**"), whose address is 321 Billerica Road, Suite 204, Chelmsford, Massachusetts 01824;

AND

EWB-III, LLC a California limited liability company ("**Grantee**"), whose address is c/o 135 N. Los Robles Ave., 8th Floor, Pasadena, CA 91101.

    1.    **Transfer of Ownership**.  Grantor hereby grants and conveys the property described on Exhibit A attached hereto (the "**Property**") to Grantee.  The Property is being conveyed subject to (a) all current real property taxes and all unpaid non-delinquent general and special taxes, bonds and assessments; (b) all liens, covenants, conditions, reservations, rights, easements, interests, rights of way, and restrictions of public record; (c) all leases and any other occupancy agreements in effect; (d) all zoning ordinances and regulations and any other laws, ordinances or governmental regulations restricting or regulating the use, occupancy or enjoyment of the Property; and (e) all matters visible upon or about the Property or that would be disclosed by an accurate survey of the Property. This transfer is made for the sum of [**].  Grantor acknowledges this consideration.

    2.    **Tax Map Reference**.  City of Vineland, in the County of Cumberland, New Jersey: Block No. 2803, Lot No. [11.01].

    3.    **Promises by Grantor**.  Grantor hereby covenants that Grantor will warrant specially the Property hereby conveyed, and Grantor further warrants that Grantor, its heirs and personal representatives, will forever warrant and defend the Property unto Grantee, its heirs, personal representatives and assigns, against the claims and demands of Grantor and all persons claiming by, through, or under Grantor.

    4.    Grantor declares that this deed is an absolute conveyance, and not a mortgage, deed of trust or security device of any kind; that possession of the real property has been or will be surrendered to Grantee

in connection with this transaction; that this deed is freely and fairly given for a fair and adequate consideration.

5.    Grantee is the current beneficiary of that certain Mortgage, Security Agreement, Assignment of Leases and Rents and Fixture Filing dated as of June __, 2022, executed by Grantor to Grantee, recorded [\*\*] (as amended, modified, restated, assigned or in effect from time to time, "**Security Instrument**"), encumbering the Property.

6.    The true consideration for this conveyance is set forth in the terms of the agreement between Grantee, Grantor, and Grantor's related parent companies and affiliates, The Cannabist Company Holdings, Inc. and the Cannabist Company Holdings (Canada, Inc) (collectively with The Cannabist Company Holdings, Inc. the "Debtors") as reflected in the Stipulation Between Debtors, CC Group, and East West Bank which was approved on ___, 2026 by the Ontario Superior Court of Justice (Commercial List) in the proceeding commenced by the Debtors under the Companies' Creditors Arrangement Act (CCAA); provided, however, that Grantee will not be deemed to have accepted this Deed unless and until this Deed is recorded at the request of Grantee or Grantee's attorneys.

7.    Grantor waives, surrenders, and relinquishes any equity of redemption and statutory rights of redemption that Grantor may have in connection with the Property and the Security Instrument (defined above). Grantor and Grantor's heirs, successors, and assigns will be forever estopped from asserting that Grantor had, on the date of the Security Instrument, an estate or interest in the Property less than a fee-simple interest in the whole of the Property, and this Deed will pass any and all after-acquired title.

8.    This Deed does not effect a merger of the fee ownership and the lien of the Security Instrument. The fee and the lien will hereafter remain separate and distinct. Grantee reserves its right to foreclose its Security Instrument at any time as to any party with any claim, interest, or lien on the Property. The debt secured by the Security Instrument will not be deemed satisfied by this Deed.

*[Signature Page Follows]*

IN WITNESS WHEREOF, this Deed is signed by Grantor's authorized representative as of the date first written above.

**GRANTOR:**

Columbia Care NJ Realty LLC,
a New Jersey limited liability company

By: _____
Name:
Its:

STATE OF _____          )
                                                                       ) ss:
COUNTY OF _____          )

I CERTIFY that on _____ ___, 2026, _____ personally appeared before me and stated to my satisfaction that each person: (a) made the attached instrument; (b) was authorized to and did execute this instrument as _____ of Columbia Care NJ Realty LLC, a New Jersey limited liability company (the "**Company**"), the entity named in this instrument; (c) executed this instrument as the voluntary act of the Company; and (d) made this Deed for $[**] as the full and actual consideration paid or to be paid for the transfer of title.

In witness whereof, I hereunto set my hand and official seals.


(SEAL)                                                          Name: _____
                                                                      Title: _____

**EXHIBIT A – LEGAL DESCRIPTION**

ALL OF THE FOLLOWING TRACT OR PARCEL of land and premises situate in the City of Vineland, County of Cumberland and State of New Jersey, bounded and described as follows:

BEGINNING at an iron bar set for a comer in the westerly line of West Avenue (100 feet wide), said point being the northeast comer of land of Conrail (Block 2803, Lot\); thence

(I)      along the northerly line of said land of Conrail, North 81 degrees 49 minutes 07 seconds West, 1,417.02 feet to an iron bar found for a corner; thence

(2)      along the easterly line of land of Cumberland County Improvement Authority (Block 280 I, Lot I), North 08 degrees 05 minutes 16 seconds East, 216.25 feet to a nail set for a comer; thence

(3)      along a new line, and along New Lot 5.0 I of Block 2801, South 81 degrees 49 minutes 17 seconds East, 173.00 feet to a nail set for a comer; thence

(4)      along a new line, and still along same, North 08 degrees 10 minutes 53 seconds East, 103.00 feet to a nail set for a corner; thence

(5)      along a new line, still along same, and along New Lot 90 I, South 81 degrees 49 minutes 07 seconds East, 825.83 feet to a nail set for a comer; thence

(6)      along a new line, and along New Lot 9.01, North 03 degrees 50 minutes 14 seconds East, 67.26 feet to a nail set for a corner; thence

(7)      along a new line, and along New Lots 9.01 and 10.01, South 86 degrees 09 minutes 46 seconds East, 201.35 feet to an iron bar set for a corner, passing over a nail set in line and 77.14 feet from the beginning of this course; thence

(8)      along a new line and along New Lot 10.01, South 03 degrees 50 minutes 14 seconds West, 90.91 feet to an iron bar set for a comer; thence

(9)      along a new line, and still along same, South 86 degrees 09 minutes 46 seconds East, 191.80 feet to an iron bar set for a corner in said westerly line of West Avenue; thence

( I 0)      along said westerly line, South 03 degrees 50 minutes 14 seconds West, 326.39 feet to the Place of Beginning.

BEING a portion of Lots 5, 9 and 11, to be known as New Lot 11.0 I of Block 280 I, as shown on the City of Vineland Tax Assessment Map.

SUBJECT to variable width Access Easement, bounded and described as follows:

BEGINNING at a point for a corner in the westerly line of West Avenue (100 feet wide), said point being North 03 degrees 50 minutes 14 seconds East, 246.39 feet from the northeast corner of land of now or formerly of Conrail (Block 2803, Lot I); thence

(I) over land of the Grantor, North 86 degrees 09 minutes 46 seconds West, 191.80 feet to a point for a corner; thence

(10)    still over the same, North 03 degrees 50 minutes 14 seconds East, 80.00 feet to an iron bar set for a corner; thence

(11)    along a new line and New Lot 10.01, South 86 degrees 09 minutes 46 seconds East, I 91.80 feet to an iron bar set for a corner in said westerly line of West Avenue; thence

(12)    along said westerly line, South 03 degrees 50 minutes 14 seconds West, 80.00 feet to the Place of Beginning.

ALSO SUBJECT to an existing 15 foot wide Landis Sewerage Authority Easement as shown on the plan referenced below.

THE ABOVE DESCRIPTION was written pursuant to "Proposed Redvision prepared for Columbia Care", prepared by Fralinger Engineering, PA 629 Shiloh Pike, Bridgeton, New Jersey, 08302, dated September 10, 2021, revised December 9, 2021, and is marked as Commission No. 29242.03.

**Exhibit D**

**New Jersey Assignment and Bill of Sale**

<u>**ASSIGNMENT AND BILL OF SALE**</u>

**THIS ASSIGNMENT AND BILL OF SALE** (hereinafter referred to as this "**Assignment**") is given this _th day of __, 2026, by Columbia Care NJ Realty LLC, a New Jersey limited liability company ("**Assignor**") to EWB-III, LLC a California limited liability company (hereinafter referred to as the "**Assignee**").

## R E C I T A L S:

**WHEREAS**, the Assignor and the Assignee are parties to a certain Stipulation between Debtors, CC Group and East West Bank approved by the Ontario Superior Court of Justice (Commercial List) on ____, 2026 (hereinafter referred to as the "**Stipulation**"), which provides, among other things, for the conveyance by the Assignor to the Assignee of that certain land described on <u>Exhibit "A-1"</u> attached hereto and made a part hereof (hereinafter referred to as the "**Land**" and hereinafter the Land, together with all real and personal property appurtenant thereto or associated therewith, and all improvements thereon, shall be collectively referred to as the "**Property**") pursuant to that certain [Special Warranty Deed/Deed in Lieu of Foreclosure] dated concurrently herewith; and

**WHEREAS**, it is the desire of the Assignor hereby to sell, assign, transfer, and convey to the Assignee all of the Assignor's rights, title, and interests in and to the below described items related to the Property.

**NOW, THEREFORE,** in consideration of the premises, and other good and valuable consideration, the receipt and sufficiency of which are hereby acknowledged, and intending to be legally bound hereby, the Assignor does hereby assign, transfer, set over, and deliver to the Assignee all of the Assignor's rights, title, and interests in and to the following (hereinafter collectively referred to as the "**Assigned Properties**"), in each case free and clear of any and all liens, encumbrances, and other interests of third parties (other than security interests in favor of Assignee):

all materials, machinery, apparatus, equipment, fittings, fixtures, goods, chattels, and articles of personal property, which is attached to, located on or used in connection with the Property;

general intangibles used in the operation of the Property;

all the reversion or reversions, remainder or remainders, rents, revenues, issues, income and profits of all or any part of the Property;

all books and records (including, without limitation, accounting records, operating statements, files, reports, surveys or budgets) relating to the operation of the Property; and

all site plans, surveys, soil and substrata studies, architectural renderings, plans and specifications, engineering plans and studies, floor plans, landscape plans and all other plans, diagrams and studies of any kind, if any, in the Assignor's possession or available to the Assignor and which relate to the Property.

Assignment and Bill of Sale

**TO HAVE AND TO HOLD** the Assigned Properties unto the Assignee and the Assignee's successors and assigns forever.

The Assignor and the Assignee hereby further agree as follows:

1.      All of the terms, agreements, covenants and conditions set forth herein shall be binding upon and shall inure to the benefit of the parties and their respective successors and assigns.

2.      Words and phrases defined in the Stipulation shall have the same meanings herein.

3.      Nothing herein contained shall be deemed to limit or restrict the properties, assets or rights conveyed, assigned or transferred to or acquired by the Assignee from the Assignor under or by virtue of any other conveyance or deed respecting the Property.

4.      If any term, covenant or condition of this Assignment shall be held to be invalid, illegal or unenforceable in any respect, this Assignment shall be construed without such provision.

5.      This Assignment shall be governed by and construed and enforced in accordance with the laws of the State of New Jersey.

**[REMAINDER OF PAGE INTENTIONALLY LEFT BLANK]**

**IN WITNESS WHEREOF**, the Assignor has executed this Assignment and such Assignment has been accepted by the Assignee, all as of the date first above written.

**ASSIGNOR:**

Columbia Care NJ Realty LLC,
a New Jersey limited liability company


By: _____
Name:
Its:

**<u>ACCEPTED BY ASSIGNEE:</u>**

EWB-III, LLC,
a California limited liability company


By: _____
Name: _____
Title: _____

Assignment and Bill of Sale

## EXHIBIT "A-1"

## LEGAL DESCRIPTION -- LAND

ALL OF THE FOLLOWING TRACT OR PARCEL of land and premises situate in the City of Vineland, County of Cumberland and State of New Jersey, bounded and described as follows:

BEGINNING at an iron bar set for a comer in the westerly line of West Avenue (100 feet wide), said point being the northeast comer of land of Conrail (Block 2803, Lot\); thence

(I)      along the northerly line of said land of Conrail, North 81 degrees 49 minutes 07 seconds West, 1,417.02 feet to an iron bar found for a corner; thence

(2)      along the easterly line of land of Cumberland County Improvement Authority (Block 280 I, Lot I), North 08 degrees 05 minutes 16 seconds East, 216.25 feet to a nail set for a comer; thence

(3)      along a new line, and along New Lot 5.0 I of Block 2801, South 81 degrees 49 minutes 17 seconds East, 173.00 feet to a nail set for a comer; thence

(4)      along a new line, and still along same, North 08 degrees 10 minutes 53 seconds East, 103.00 feet to a nail set for a corner; thence

(5)      along a new line, still along same, and along New Lot 90 I, South 81 degrees 49 minutes 07 seconds East, 825.83 feet to a nail set for a comer; thence

(6)      along a new line, and along New Lot 9.01, North 03 degrees 50 minutes 14 seconds East, 67.26 feet to a nail set for a corner; thence

(7)      along a new line, and along New Lots 9.01 and 10.01, South 86 degrees 09 minutes 46 seconds East, 201.35 feet to an iron bar set for a corner, passing over a nail set in line and 77.14 feet from the beginning of this course; thence

(8)      along a new line and along New Lot 10.01, South 03 degrees 50 minutes 14 seconds West, 90.91 feet to an iron bar set for a comer; thence

(9)      along a new line, and still along same, South 86 degrees 09 minutes 46 seconds East, 191.80 feet to an iron bar set for a corner in said westerly line of West Avenue; thence

( I 0)      along said westerly line, South 03 degrees 50 minutes 14 seconds West, 326.39 feet to the Place of Beginning.

BEING a portion of Lots 5, 9 and 11, to be known as New Lot 11.0 I of Block 280 I, as shown on the City of Vineland Tax Assessment Map.

SUBJECT to variable width Access Easement, bounded and described as follows:

BEGINNING at a point for a corner in the westerly line of West Avenue (100 feet wide), said point being North 03 degrees 50 minutes 14 seconds East, 246.39 feet from the northeast corner of land of now or formerly of Conrail (Block 2803, Lot I); thence

(I) over land of the Grantor, North 86 degrees 09 minutes 46 seconds West, 191.80 feet to a point for a corner; thence

(10)    still over the same, North 03 degrees 50 minutes 14 seconds East, 80.00 feet to an iron bar set for a corner; thence

(11)    along a new line and New Lot 10.01, South 86 degrees 09 minutes 46 seconds East, I 91.80 feet to an iron bar set for a corner in said westerly line of West Avenue; thence

(12)    along said westerly line, South 03 degrees 50 minutes 14 seconds West, 80.00 feet to the Place of Beginning.

ALSO SUBJECT to an existing 15 foot wide Landis Sewerage Authority Easement as shown on the plan referenced below.

THE ABOVE DESCRIPTION was written pursuant to "Proposed Redvision prepared for Columbia Care", prepared by Fralinger Engineering, PA 629 Shiloh Pike, Bridgeton, New Jersey, 08302, dated September I0, 2021, revised December 9, 2021, and is marked as Commission No. 29242.03.

**Exhibit E**

**New Jersey Assignment of Leases**

## ASSIGNMENT OF LEASES

**THIS ASSIGNMENT OF LEASES** (hereinafter referred to as this "**Assignment**") is given this _th day of __, 2026, by Columbia Care NJ Realty LLC, a New Jersey limited liability company ("**Assignor**") to EWB-III, LLC a California limited liability company (hereinafter referred to as the "**Assignee**").

## R E C I T A L S:

**WHEREAS**, the Assignor and the Assignee are parties to a certain Stipulation between Debtors, CC Group and East West Bank approved by the Ontario Superior Court of Justice (Commercial List) on ____, 2026 (hereinafter referred to as the "**Stipulation**"), which provides, among other things, for the conveyance by the Assignor to the Assignee of that certain land described on Exhibit "A-1" attached hereto and made a part hereof (hereinafter referred to as the "**Land**" and hereinafter the Land, together with all real and personal property appurtenant thereto or associated therewith, and all improvements thereon, shall be collectively referred to as the "**Property**") pursuant to that certain [Special Warranty Deed/Deed in Lieu of Foreclosure] dated concurrently herewith; and

**WHEREAS**, the Assignor has heretofore entered into certain leases (hereinafter, as they may have been amended and/or modified from time to time, and are listed and described in the on Exhibit "A-2" attached hereto and made a part hereof (collectively referred to as the "**Leases**") with respect to the Property; and

**WHEREAS**, it is the desire of the Assignor hereby to sell, assign, transfer, and convey to the Assignee all of the Assignor's rights, title, and interests in and to the Leases.

**NOW, THEREFORE**, in consideration of the premises, and other good and valuable consideration, the receipt and sufficiency of which are hereby acknowledged, and intending to be legally bound hereby, the Assignor does hereby assign, transfer, set over, and deliver to the Assignee all of the Assignor's right, title and interest in and to the Leases, in each case free and clear of any and all liens, encumbrances, and other interests of third parties.

**TO HAVE AND TO HOLD** the Assignor's rights, title, and interests in and to the Leases unto the Assignee and the Assignee's successors and assigns, forever, subject to the terms of the Stipulation.

The Assignor and the Assignee hereby further agree as follows:

1.      The Assignee hereby assumes and agrees to perform all of the terms, covenants, and conditions of the Leases on the part of the Assignor therein required to be performed arising from and after the effective date hereof, and the Assignee covenants and agrees to indemnify, save, and hold harmless the Assignor from and against any and all liability, claims, or causes of action existing in favor of or asserted by any party to the Leases or by any third party, arising out of or relating to the Assignee's failure to perform any of the obligations of the Assignor under the Leases arising subsequent to the effective date hereof.

2.      Assignor represents and warrants to Assignee:

Assignment of Leases

(i)      Exhibit "A-2"  attached hereto and made a part hereof contains a listing of the Leases affecting or encumbering all or a portion of the Property, together with all amendments, modifications, and supplements thereof or thereto.

(ii)      Except for the Leases: (A) there are no other leases (or other agreements with respect to the use or occupancy of the Property or any portion thereof) in force or outstanding (or executed but not yet effective) with respect to the Property; and (B) there are no other assignments, amendments, modifications, supplements or other agreements outstanding with respect to, or comprising, the Leases.

(iii)      There are no persons occupying space in the Property as tenants, subtenants, or occupants other than the tenants specifically named in the Leases.

(iv)      Except as set forth in Exhibit "A-2" attached hereto and made a part hereof, Assignor has not assigned to any person any of Assignor's rights, title, or interests in the Leases or any rights thereunder.

(v)      Assignor has paid all commissions, fees, charges, and other amounts previously due and owing to real estate brokers or other persons with respect to the Leases.

3.      All of the terms, agreements, covenants and conditions set forth herein shall be binding upon and shall inure to the benefit of the parties and their respective successors and assigns.

4.      Words and phrases defined in the Stipulation shall have the same meanings herein.

5.      Nothing herein contained shall be deemed to limit or restrict the properties, assets or rights conveyed, assigned or transferred to or acquired by the Assignee from the Assignor under or by virtue of any other conveyance or deed respecting the Property.

6.      If any term, covenant or condition of this Assignment shall be held to be invalid, illegal or unenforceable in any respect, this Assignment shall be construed without such provision.

7.      This Assignment shall be governed by and construed and enforced in accordance with the laws of the State of New Jersey.

**[REMAINDER OF PAGE INTENTIONALLY LEFT BLANK]**

**IN WITNESS WHEREOF**, the Assignor has executed this Assignment and such Assignment has been accepted by the Assignee, all as of the date first above written.

**ASSIGNOR:**

Columbia Care NJ Realty LLC,
a New Jersey limited liability company

By: _____
Name:
Its:

**<u>ACCEPTED BY ASSIGNEE:</u>**

EWB-III, LLC,
a California limited liability company


By: _____
Name: _____
Title: _____

## EXHIBIT "A-1"

## LEGAL DESCRIPTION -- LAND

ALL OF THE FOLLOWING TRACT OR PARCEL of land and premises situate in the City of Vineland, County of Cumberland and State of New Jersey, bounded and described as follows:

BEGINNING at an iron bar set for a comer in the westerly line of West Avenue (100 feet wide), said point being the northeast comer of land of Conrail (Block 2803, Lot\); thence

(I)    along the northerly line of said land of Conrail, North 81 degrees 49 minutes 07 seconds West, 1,417.02 feet to an iron bar found for a corner; thence

(2)    along the easterly line of land of Cumberland County Improvement Authority (Block 280 I, Lot I), North 08 degrees 05 minutes 16 seconds East, 216.25 feet to a nail set for a comer; thence

(3)    along a new line, and along New Lot 5.0 I of Block 2801, South 81 degrees 49 minutes 17 seconds East, 173.00 feet to a nail set for a comer; thence

(4)    along a new line, and still along same, North 08 degrees 10 minutes 53 seconds East, 103.00 feet to a nail set for a corner; thence

(5)    along a new line, still along same, and along New Lot 90 I, South 81 degrees 49 minutes 07 seconds East, 825.83 feet to a nail set for a comer; thence

(6)    along a new line, and along New Lot 9.01, North 03 degrees 50 minutes 14 seconds East, 67.26 feet to a nail set for a corner; thence

(7)    along a new line, and along New Lots 9.01 and 10.01, South 86 degrees 09 minutes 46 seconds East, 201.35 feet to an iron bar set for a corner, passing over a nail set in line and 77.14 feet from the beginning of this course; thence

(8)    along a new line and along New Lot 10.01, South 03 degrees 50 minutes 14 seconds West, 90.91 feet to an iron bar set for a comer; thence

(9)    along a new line, and still along same, South 86 degrees 09 minutes 46 seconds East, 191.80 feet to an iron bar set for a corner in said westerly line of West Avenue; thence

( I 0)    along said westerly line, South 03 degrees 50 minutes 14 seconds West, 326.39 feet to the Place of Beginning.

BEING a portion of Lots 5, 9 and 11, to be known as New Lot 11.0 I of Block 280 I, as shown on the City of Vineland Tax Assessment Map.

SUBJECT to variable width Access Easement, bounded and described as follows:

BEGINNING at a point for a corner in the westerly line of West Avenue (100 feet wide), said point being North 03 degrees 50 minutes 14 seconds East, 246.39 feet from the northeast corner of land of now or formerly of Conrail (Block 2803, Lot I); thence

(I)  over land of the Grantor, North 86 degrees 09 minutes 46 seconds West, 191.80 feet to a point for a corner; thence

(10)    still over the same, North 03 degrees 50 minutes 14 seconds East, 80.00 feet to an iron bar set for a corner; thence

(11)    along a new line and New Lot I0.0I, South 86 degrees 09 minutes 46 seconds East, I 91.80 feet to an iron bar set for a corner in said westerly line of West Avenue; thence

(12)    along said westerly line, South 03 degrees 50 minutes 14 seconds West, 80.00 feet to the Place of Beginning.

ALSO SUBJECT to an existing 15 foot wide Landis Sewerage Authority Easement as shown on the plan referenced below.

THE ABOVE DESCRIPTION was written pursuant to "Proposed Redvision prepared for Columbia Care", prepared by Fralinger Engineering, PA 629 Shiloh Pike, Bridgeton, New Jersey, 08302, dated September I0, 2021, revised December 9, 2021, and is marked as Commission No. 29242.03.

**EXHIBIT "A-2"**

**LIST OF LEASES**

**<u>Exhibit F</u>**

**Maryland Deed in Lieu of Foreclosure**

<u>Upon Recording Return to</u>:

Buchalter LLP
1000 Wilshire, 15th Floor
Los Angeles, California 90017
Attention:  J. David Hitchcock, Esq.


*Property Tax Account No.: 01-021443*
*Premise Address: 6797 Bowmans Crossing, Frederick, MD  21703*


### SPECIAL WARRANTY DEED IN LIEU OF FORECLOSURE

**THIS SPECIAL WARRANTY DEED** IN LIEU OF FORECLOSURE (this "**Deed**") is executed as of the _____ day of _____, 2026, by and between Columbia Care MD Realty, LLC, a Maryland limited liability company ("**Grantor**"), whose address is 321 Billerica Rd., Suite 204, Chelmsford, MA 01824, and EWB-III, LLC a California limited liability company ("**Grantee**"), whose address is c/o 135 N. Los Robles Ave., 8th Floor, Pasadena, CA 91101.

**W I T N E S S E T H**, in consideration of the sum of Ten and 00/100 Dollars ($10.00) paid by Grantee and other good and valuable consideration, the receipt and sufficiency of which is hereby acknowledged, the said Grantor does grant and convey unto the said Grantee, in fee simple, the real property located in Buckeystown Election District, Frederick County, Maryland, and as more particularly described in <u>Exhibit A</u> attached hereto and incorporated by this reference (the "**Property**").

**TOGETHER WITH** the buildings and improvements thereupon erected, made or being, and all rights, easements, alleys, ways, waters, privileges, appurtenances and advantages, to the same belonging or in anywise appertaining, including, without limitation, Grantor's estate and interest as lessor in and to any leases and guarantees of leases appertaining to said parcel of land and premises.

**SUBJECT TO** current real property taxes and all unpaid non-delinquent general and special taxes, bonds and assessments; all liens, covenants, conditions, reservations, rights, easements, interests, rights of way, and restrictions of public record; all leases and any other occupancy agreements in effect; all zoning ordinances and regulations and any other laws, ordinances or governmental regulations restricting or regulating the use, occupancy or enjoyment

of the Property; and all matters visible upon or about the Property or that would be disclosed by an accurate survey of the Property (the "**Permitted Exceptions**").

**TO HAVE AND TO HOLD** said parcel of land and premises above-described or mentioned, and hereby intended to be conveyed, together with the rights, privileges, appurtenances and advantages thereto belonging or appertaining unto and to the only proper use and benefit forever of the Grantee, its successors and assigns, in fee simple.

**AND** Grantor hereby covenants that it has not done or suffered to be done any act, matter or thing whatsoever to encumber the property hereby conveyed (other than the Permitted Exceptions), that it will warrant specially the property hereby granted, and that it will execute such further assurances of said land as may be requisite.

Grantor declares that this deed is an absolute conveyance, and not a mortgage, deed of trust or security device of any kind; that possession of the real property has been or will be surrendered to Grantee in connection with this transaction; that this deed is freely and fairly given for a fair and adequate consideration.

Grantee is the current beneficiary of that certain Deed of Trust, Assignment and Security Agreement dated as of August 9, 2023, executed by Grantor to Grantee, recorded August 14, 2023 in the Official Records of Fredrick County in Book 16557, Page 271-305 (as amended, modified, restated, assigned or in effect from time to time, "**Security Instrument**"), encumbering the Property.

The true consideration for this conveyance is set forth in the terms of the agreement between Grantee, Grantor, and Grantor's related parent companies and affiliates, The Cannabist Company Holdings, Inc. and the Cannabist Company Holdings (Canada, Inc) (collectively with The Cannabist Company Holdings, Inc. the "Debtors") as reflected in the Stipulation Between Debtors, CC Group, and East West Bank which was approved on ___, 2026 by the Ontario Superior court of Justice (Commercial List) in the proceeding commenced by the Debtors under the Companies' Creditors Arrangement Act (CCAA); provided, however, that Grantee will not be deemed to have accepted this Deed unless and until this Deed is recorded at the request of Grantee or Grantee's attorneys.

Grantor waives, surrenders, and relinquishes any equity of redemption and statutory rights of redemption that Grantor may have in connection with the Property and the Security Instrument (defined above). Grantor and Grantor's heirs, successors, and assigns will be forever estopped from asserting that Grantor had, on the date of the Security Instrument, an estate or interest in the Property less than a fee-simple interest in the whole of the Property, and this Deed will pass any and all after-acquired title.

This Deed does not effect a merger of the fee ownership and the lien of the Security Instrument. The fee and the lien will hereafter remain separate and distinct. Grantee reserves its right to foreclose its Security Instrument at any time as to any party with any claim, interest, or lien on the Property. The debt secured by the Security Instrument will not be deemed satisfied by this Deed.

[SIGNATURES APPEAR ON FOLLOWING PAGE]

Dated this _____ day of _____, 2026.

**IN WITNESS WHEREOF**, the Grantor has executed this Deed or caused it to be executed on its behalf by its duly authorized representative, the day and year first hereinbefore written.

<u>**GRANTOR:**</u>

Columbia    Care    MD    Realty    LLC,
a Maryland limited liability company


By: _____
Name:
Its:

[Signature Page to Special Warranty Deed in Lieu of Foreclosure]

STATE OF _____ ]

                                                                  ] ss.

COUNTY OF  _____ ]

On the \_\_\_\_\_ day of _____ in the year of 2026 before me, the undersigned, personally appeared _____, the _____ of Columbia Care MD Realty LLC, a Maryland limited liability company, personally known to me or proved to me on the basis of satisfactory evidence to be the individual whose name is subscribed to the within instrument and acknowledged to me that he/she executed the same in his/her capacity, and that by his/her signature on the instrument, the limited liability company on behalf of which the individual acted, executed the instrument, and that such individual made such appearance before the undersigned in the City of _____ in the State of _____.

                                                                  _____

                                                                  Notary Public

My Commission Expires:

_____

## CERTIFICATE

**THIS IS TO CERTIFY** that the within instrument was prepared by Grantor's [**legal department**], who is a party to the instrument.

_____

Mailing Address for Tax Bills:

## EXHIBIT A

## LEGAL DESCRIPTION

All that lot or parcel of land, lying and being in the Buckeystown Election District, Frederick County, Maryland, and more particularly described as follows:

New Area Lot 9, as shown on a plat entitled "Correction/Addition Plat, Lot 9, JOHNSON'S ADDITION TO JOHNSON, Bowman's Plains Lot 9 Previously Recorded at P. B. 51, PG 152, Bowman's Plains Lot 7 Previously Recorded at P.B. 57, PG 173" and recorded in Plat Book 71, page 125 among the Land Records of Frederick County, Maryland.

Being all and the same real estate that was conveyed unto Columbia Care MD Realty LLC, a Maryland Limited Liability Company, by Green Leaf Management, LLC, a Maryland Limited Liability Company, by Deed dated June 20, 2023  and recorded on July 27, 2023, among the Land Records of Frederick County, Maryland in Liber 16535, folio 7.

## Exhibit G

**Maryland Assignment and Bill of Sale**

## ASSIGNMENT AND BILL OF SALE

**THIS ASSIGNMENT AND BILL OF SALE** (hereinafter referred to as this "**Assignment**") is given this _th day of __, 2026, by Columbia Care MD Realty LLC, a Maryland limited liability company ("**Assignor**") to EWB-III, LLC a California limited liability company (hereinafter referred to as the "**Assignee**").

## R E C I T A L S:

**WHEREAS**, the Assignor and the Assignee are parties to a certain Stipulation between Debtors, CC Group and East West Bank approved by the Ontario Superior Court of Justice (Commercial List) on ____, 2026 (hereinafter referred to as the "**Stipulation**"), which provides, among other things, for the conveyance by the Assignor to the Assignee of that certain land described on Exhibit "A-1" attached hereto and made a part hereof (hereinafter referred to as the "**Land**" and hereinafter the Land, together with all real and personal property appurtenant thereto or associated therewith, and all improvements thereon, shall be collectively referred to as the "**Property**") pursuant to that certain [Special Warranty Deed/Deed in Lieu of Foreclosure] dated concurrently herewith; and

**WHEREAS**, it is the desire of the Assignor hereby to sell, assign, transfer, and convey to the Assignee all of the Assignor's rights, title, and interests in and to the below described items related to the Property.

**NOW, THEREFORE,** in consideration of the premises, and other good and valuable consideration, the receipt and sufficiency of which are hereby acknowledged, and intending to be legally bound hereby, the Assignor does hereby assign, transfer, set over, and deliver to the Assignee all of the Assignor's rights, title, and interests in and to the following (hereinafter collectively referred to as the "**Assigned Properties**"), in each case free and clear of any and all liens, encumbrances, and other interests of third parties (other than security interests in favor of Assignee):

all materials, machinery, apparatus, equipment, fittings, fixtures, goods, chattels, and articles of personal property, which is attached to, located on or used in connection with the Property;

general intangibles used in the operation of the Property;

all the reversion or reversions, remainder or remainders, rents, revenues, issues, income and profits of all or any part of the Property;

all books and records (including, without limitation, accounting records, operating statements, files, reports, surveys or budgets) relating to the operation of the Property; and

all site plans, surveys, soil and substrata studies, architectural renderings, plans and specifications, engineering plans and studies, floor plans, landscape plans and all other plans, diagrams and studies of any kind, if any, in the Assignor's possession or available to the Assignor and which relate to the Property.

Assignment and Bill of Sale

**TO HAVE AND TO HOLD** the Assigned Properties unto the Assignee and the Assignee's successors and assigns forever.

The Assignor and the Assignee hereby further agree as follows:

1.      All of the terms, agreements, covenants and conditions set forth herein shall be binding upon and shall inure to the benefit of the parties and their respective successors and assigns.

2.      Words and phrases defined in the Stipulation shall have the same meanings herein.

3.      Nothing herein contained shall be deemed to limit or restrict the properties, assets or rights conveyed, assigned or transferred to or acquired by the Assignee from the Assignor under or by virtue of any other conveyance or deed respecting the Property.

4.      If any term, covenant or condition of this Assignment shall be held to be invalid, illegal or unenforceable in any respect, this Assignment shall be construed without such provision.

5.      This Assignment shall be governed by and construed and enforced in accordance with the laws of the State of Maryland.

**[REMAINDER OF PAGE INTENTIONALLY LEFT BLANK]**

Assignment and Bill of Sale

**IN WITNESS WHEREOF**, the Assignor has executed this Assignment and such Assignment has been accepted by the Assignee, all as of the date first above written.

**ASSIGNOR:**

Columbia Care MD Realty LLC,
a Maryland limited liability company


By: _____
Name:
Its:

**<u>ACCEPTED BY ASSIGNEE:</u>**

EWB-III, LLC,
 a California limited liability company


By: _____
Name: _____
Title: _____

Assignment and Bill of Sale

## EXHIBIT "A-1"

## LEGAL DESCRIPTION -- LAND

All that lot or parcel of land, lying and being in the Buckeystown Election District, Frederick County, Maryland, and more particularly described as follows:

New Area Lot 9, as shown on a plat entitled "Correction/Addition Plat, Lot 9, JOHNSON'S ADDITION TO JOHNSON, Bowman's Plains Lot 9 Previously Recorded at P. B. 51, PG 152, Bowman's Plains Lot 7 Previously Recorded at P.B. 57, PG 173" and recorded in Plat Book 71, page 125 among the Land Records of Frederick County, Maryland.

Being all and the same real estate that was conveyed unto Columbia Care MD Realty LLC, a Maryland Limited Liability Company, by Green Leaf Management, LLC, a Maryland Limited Liability Company, by Deed dated June 20, 2023  and recorded on July 27, 2023, among the Land Records of Frederick County, Maryland in Liber 16535, folio 7.

**Exhibit H**

**Form of Lender Release**

## RELEASE OF EAST WEST BANK

**IN CONSIDERATION** of the execution and delivery of that certain Deed in Lieu of Foreclosure dated [___] ___, 2026 (hereinafter referred to as the "**Deed**") and the Stipulation Between Debtors, CC Group and East West Bank dated ____ __, 2026 (hereinafter referred to as the "**Stipulation**"; capitalized terms used herein and not defined herein shall have the meanings assigned to such terms in the Stipulation) **COLUMBIA CARE MD REALTY LLC,** a Maryland limited liability company (hereinafter referred to collectively with its successors and/or assigns as the "**Grantor**"), and/or **CANNABIST COMPANY HOLDINGS, INC.** ("**Guarantor 1**") and **GREEN LEAF MEDICAL, LLC**, a Delaware limited liability company ("**Guarantor 2**", and together with Guarantor 1, collectively, "**Guarantor**" and together with Grantor, the "**Grantor Parties**") for themselves and their respective heirs, legal representatives, administrators, successors, and assigns, hereby release **EAST WEST BANK** (hereinafter referred to collectively with its successors and or assigns as the "**Grantee**") and each of their respective officers, directors, subsidiaries, affiliated and related persons or entities, agents, servicers, trustees, investors, participants, attorneys, servants, employees, shareholders, representatives, successors and assigns, and designees, (hereinafter collectively referred to as the "**Released Parties**") of and from any and all claims, debts, causes of actions, and rights which Grantor Parties may have against the Released Parties arising under the MD Mortgage and Loan or arising pursuant to any claim, demand or action, promise, debt, or agreement arising from or attributable to the MD Mortgage and Loan, regardless of whether same arises in law or equity; **PROVIDED, HOWEVER,** that Grantor Parties hereby expressly reserve and retain any rights, claims, demands, and causes of action against the Released Parties arising under the Stipulation and/or the other documents to be delivered pursuant to the Stipulation, including without limitation any rights, claims, demands, and causes of action resulting from (and in each case subject to any exclusions set forth in the Stipulation), (i) the failure of any of the representations and warranties of the Released Parties made under or pursuant to the Stipulation or any related Document to have been true and correct when made or reaffirmed or (ii) any breach by the Released Parties of any of the covenants set forth in the Stipulation or any Related Document.

Grantor Parties specifically waive the provision of California Civil Code Section 1542, which provides as follows:

> "A GENERAL RELEASE DOES NOT EXTEND TO CLAIMS THAT THE CREDITOR OR RELEASING PARTY DOES NOT KNOW OR SUSPECT TO EXIST IN HIS OR HER FAVOR AT THE TIME OF EXECUTING THE RELEASE AND THAT, IF KNOWN BY HIM OR HER, WOULD HAVE MATERIALLY AFFECTED HIS OR HER SETTLEMENT WITH THE DEBTOR OR RELEASED PARTY."

All notices and other communications given to or made upon any party hereto under this Release shall be given or made as prescribed in the Stipulation.

All of the terms, agreements, covenants and conditions set forth herein shall be binding upon and shall inure to the benefit of the parties hereto and their respective heirs, legal representatives, administrators, successors, and assigns.

BUCHALTER 110822440v1

If any term, covenant or condition of this Release shall be held to be invalid, illegal or unenforceable in any respect, this Release shall be construed without such provision.

This Release shall be governed by and construed and enforced in accordance with the laws of the State of California.

This Release may be executed in counterparts, each of which when so executed shall be deemed an original, and all such counterparts shall constitute one and the same instrument.

**[REMAINDER OF PAGE INTENTIONALLY LEFT BLANK]**

BUCHALTER 110822440v1

**IN WITNESS WHEREOF,** this Release has been executed, all as of the ____ day of [____], 2026.

**GRANTOR:**

**COLUMBIA CARE MD REALTY, LLC**,
a Maryland limited liability company

By:    _____
Name:
Title:

**[SIGNATURES CONTINUED ON NEXT PAGE]**

**GUARANTOR**:

_____

**THE CANNABIST COMPANY HOLDINGS INC.**

By:
Name:
Title:

_____

**GREEN LEAF MEDICAL, LLC**
a Delaware limited liability company

By:
Name:
Title:

**GRANTEE:**

**EAST WEST BANK**,
A California banking corporation


By: _____
Name:
Title:


**[END OF SIGNATURES]**

BUCHALTER 110822440v1

**Exhibit I**

**Form of Guarantor Release**

# RELEASE OF GUARANTORS[1]

This RELEASE OF GUARANTORS (this "**Release**") is made as of _____, 2026 (the "**Effective Date**") by EAST WEST BANK, a California banking corporation (the "**Releasing Party**") in favor of GREEN LEAF MEDICAL, LLC, a Delaware limited liability company (the "**LLC Guarantor**"), THE CANNABIST COMPANY HOLDINGS INC. (F/K/A COLUMBIA CARE, INC.), a British Columbia corporation (the "**Corporate Guarantor**") (the LLC Guarantor and the Corporate Guarantor being hereafter referred to individually as the "**Guarantor**" and collectively as the "**Guarantors**").

**WHEREAS**, the Releasing Party is the holder of that certain loan ("**Loan**"), as evidenced by that certain Loan Agreement, dated as of August 9, 2023, by and among Columbia Care MD Realty LLC, a Maryland limited liability company ("**Borrower**") and the Releasing Party, the Guarantors (together with Borrower, individually, jointly and severally, and/or collectively, as the context may require, a "**Borrower Party**" or the "**Borrower Parties**") (as amended, restated, replaced, supplemented or otherwise modified from time to time, the "**Loan Agreement**"), which Loan is evidenced by that certain Promissory Note dated as of August 9, 2023, in favor of the Releasing Party in the principal amount of Six Million Two Hundred Fifty Thousand and 00/100 Dollars ($6,250,000.00) (the "**Note**").

**WHEREAS**, the Loan is secured, *inter alia*, by (i) that certain Deed of Trust, Assignment and Security Agreement made by Borrower to Stewart Title and Escrow, Inc., as trustee ("**Trustee**"), for the benefit of the Releasing Party, dated as of August 9, 2023, (ii) that certain Assignment of Rents and Leases, made by Borrower to the Releasing Party, dated as of August 9, 2023, and (iii) the other Loan Documents.

**WHEREAS**, the LLC Guarantor executed in favor of the Releasing Party that certain Guaranty and Indemnification Agreement dated August 9, 2023 (as amended, restated, replaced, supplemented or otherwise modified from time to time, the "**LLC Guaranty**").

**WHEREAS**, the Corporate Guarantor executed in favor of the Releasing Party that certain Guaranty and Indemnification Agreement dated August 9, 2023 (as amended, restated, replaced, supplemented or otherwise modified from time to time, the "**Corporate Guaranty**") (the LLC Guaranty and the Corporate Guaranty being hereinafter referred to individually as a "**Guaranty**" and collectively as the "**Guaranties**").

**WHEREAS**, the Guarantors and Borrower executed that certain Environmental Indemnity Agreement dated as of August 9, 2023 in favor of the Releasing Party (as the same may be amended, modified, supplemented or extended, the "**Environmental Indemnity**").

**WHEREAS**, The Corporate Guarantor, the subsidiaries of the Corporate Guarantor, and the Releasing Party entered into that certain Stipulation Between Debtors, CC Group, and East West Bank, dated as of the date hereof (the "**Agreement**").

---

[1] Form to be duplicated for each of the NJ and NY DILs.

**NOW, THEREFORE**, for good and valuable consideration, the sufficiency and receipt of which are hereby acknowledged, the Releasing Party agrees as follows:

1. Capitalized terms used but not defined herein shall have the meanings ascribed to such terms in the Loan Agreement.

2. The Releasing Party, for and in consideration of the execution and delivery of the deed-in-lieu of foreclosure of the Property (the "**Deed-in-Lieu**"), hereby forever releases, waives, remises, acquits and discharges the Guarantors, any and all of their affiliates, and any and all of the Guarantors' and their affiliates' divisions, subsidiaries, parents, affiliates and other direct or indirect related entities (whether or not such entities are wholly-owned), directors, trustees, administrators, officers, agents, employees, servants, shareholders, members, partners, master and special servicers (as well as their successors and assigns) (the Guarantors and all such other releasees (other than the Borrower), individually and/or collectively as the context may require, a "**Released Party**" or the "**Released Parties**") of and from all causes of action, claims, suits, damages, judgments, objections, executions, demands, indebtedness (either as principal obligor or as surety or other accommodation party), liabilities, obligations, costs, expenses, including attorneys' fees, losses and liens of every kind and nature whatsoever, whether fixed or contingent, liquidated or unliquidated, known or unknown, suspected or unsuspected, foreseen or unforeseen at the present time and whether based on contract, tort, statute or other legal or equitable theory of recovery (collectively, "**Claims**") which the Releasing Party now has or ever had or may ever have against one or more of the Released Parties for or by reason of any Claims arising or accruing at any time on or prior to the Effective Date out of or under, or in any way relating, directly or indirectly, to: (a) the Loan Agreement, the Guaranties, or any other Loan Document, (b) the Deed-in-Lieu, (c) the Property, including without limitation any matters relating to the construction, development, renovation, alteration or conversion of any portion of the Property, (d) any rents, revenues, security deposits or other income from any portion of the Property, (e) any matters pertaining to any of the discussions, communications, correspondence, negotiations or dealings among the Releasing Party and any of the Released Parties relating to the Loan, the Agreement, the Deed-in-Lieu, the Property, or this Release, (f) the lender-borrower relationship evidenced by the Loan, (g) any previous pursuit of remedies by any of the Released Parties against the Releasing Party with respect to the Loan, the Agreement or the Deed-in-Lieu, (h) any enforcement of the rights of the Borrower Parties under the Loan Documents or any failure by any of the Borrower Parties to enforce their rights under the Loan Documents, and/or (i) any matters arising out of or in any way relating to any of the foregoing arising or accruing at any time on or prior to the Effective Date (collectively, the "**Released Claims**").  Without limiting the generality of the foregoing, the Released Claims shall include, without limitation, any Claim or Claims related to or arising out of or in connection with any breach of contract, breach of fiduciary duty, breach of any duty of fair dealing, any cause of action or defenses based on the negligence of any of the Released Parties, or in connection with the Property, the Agreement, the Deed-in-Lieu and/or the Loan, or any negligence, bad faith, violations of the Racketeer Influenced and Corrupt Organizations Act, tortious interference with contractual relations, tortious interference with prospective business advantage, fraud, mistake, deceptive trade practices, libel, slander, conspiracy, fraudulent conveyance, or any claim for wrongfully taking any action in connection with any of the foregoing.

3.      The Releasing Party agrees that it will not assert any claims or defenses against any of the Released Parties arising out of or relating to any of the Released Claims.

4.      Without limiting the generality of Section 2 and except as provided herein, the Releasing Party expressly releases any and all past and present Released Claims, including those which the Releasing Party does not know of or suspect to exist in its favor, whether through ignorance, oversight, error, negligence or otherwise, and which, if known, would materially affect the Releasing Party's decision to enter into this Release and, to this end, the Releasing Party, to the extent permitted by law, waives all rights under any statutory provision purporting to limit the scope or effect of a general release, whether due to lack of knowledge or otherwise.

5.      Releasing Party expressly acknowledges and waives any and all rights under Section 1542 of the California Civil Code, which provides as follows: "**A general release** does not extend to claims that the creditor or releasing party does not know or suspect to exist in his or her favor at the time of executing the release and that, if known by him or her, would have materially affected his or her settlement with the debtor or released party." (Emphasis added.)

6.      The Releasing Party further expressly warrants and represents that neither the Released Claims nor any part of any interest in any claim, contention, demand or cause of action relating to any Released Claim or any portion of any recovery or settlement has been sold, granted, transferred, assigned or encumbered.

7.      The Releasing Party expressly warrants and represents that in executing and entering into this Release, the Releasing Party is not relying upon and has not relied upon any representation, promise or statement made by anyone which is not recited, contained or embodied in this Release or any of the Loan Documents or the Agreement.

8.      The Releasing Party hereby agrees not to bring, or assist in bringing, any Released Claims, and the Releasing Parties further agree that this Release is, will constitute, and may be pleaded as, a bar to any such Released Claims.  Neither the execution nor delivery of this Release by any party nor the payment of any consideration by any person incident to this Release is an admission of any wrongdoing whatsoever on the part of any party.

9.      The Releasing Party has received all consents required for the execution and delivery of this Release and have full power and authority to enter into and deliver this Release. This Release constitutes the Releasing Party's legal, valid and binding obligation, enforceable against them in accordance with its terms, subject to applicable bankruptcy, insolvency and similar laws affecting creditors' rights generally, and subject, as to enforceability, to general principles of equity (regardless of whether enforcement is sought in a proceeding in equity or at law.

10.      This Release shall inure to the benefit of and be binding upon the Releasing Party, the Guarantors and the other Released Parties, and their respective successors and assigns.

11.      This Release constitutes and is intended to constitute the entire agreement of the parties concerning the subject matter hereof.  No covenants, agreements, representations or warranties of any kind whatsoever have been made by any party except as specifically set forth

herein.   All prior discussions and negotiations with respect to the subject matter hereof are superseded by this Release.

12.     If any provisions of this Release are determined by a court of competent jurisdiction to be invalid or unenforceable, in whole or in part, the remaining provisions, and any partially invalid or unenforceable provisions, to the extent valid and enforceable, shall nevertheless be binding, valid and enforceable.

13.     When necessary herein, all terms used in the singular shall apply to the plural, and vice versa, and all terms used in the masculine shall apply to the neuter and feminine genders, and vice versa.

14.     This Release shall be construed according to and governed by the laws of the State of Maryland without regard to the principles of conflicts of law.

15.     This Release may be executed electronically and in any number of counterparts, provided each of the parties hereto executes at least one (1) counterpart.  Each such counterpart hereof shall be deemed to be an original instrument, but all such counterparts together shall constitute but one agreement.  It is the express intent of the parties hereto to be bound by the exchange of signatures on this Release or electronic mail via the portable document format (PDF), DocuSign or other similar e-signature service.  An electronic signature, a facsimile, PDF, DocuSign or other e-signature copy of a signature shall be deemed an original.

[Remainder of Page Intentionally Left Blank]

IN WITNESS WHEREOF, the undersigned has delivered this Release as of the date first written above.

**RELEASING PARTY:**

**EAST WEST BANK**, a California banking corporation

By: _____
         Name:
         Title: